# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles on 04/08/2021 09:26 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez, Deputy Clerk

Case 2:21-cv-04322-SB-MRW   Document 1-1   Filed 05/24/21   Page 2 of 40   Page ID #:15

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Yolanda Orozco

Nancy B. Anfanger [SBN 225421]
THE ANFANGER LAW OFFICE
9440 Santa Monica Boulevard
Suite 301
Beverly Hills, California 90210
Telephone: (310) 402-8937

Attorney for Plaintiffs Brittney Shaw and
　　　　　Edgar Hernandez

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| Brittney Shaw, an individual, and Edgar Hernandez, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> Nike Retail Services, Inc., an Oregon corporation, Wendy Magee, an individual, and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.:　21STCV13349 <br><br> Assigned to the Hon. <br> Department <br><br> **PLAINTIFFS BRITTNEY SHAW AND EDGAR HERNANDEZ'S COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE RELIEF** <br><br> 1. Violation of the FEHA (discrimination based on race and/or sexual preference) <br> 2. Violation of the FEHA (harassment) <br> 3. Violation of the FEHA (retaliation) <br> 4. Violation of the FEHA (failure to prevent discrimination, harassment, retaliation) <br> 5. Failure to Pay Wages (Violation of Labor Code § 1194/1197 *et seq.*) <br> 6. Failure to Indemnify (Violation of Labor Code § 2802) <br> 7. Failure to Provide an Accurate, Itemized Wage Statement/Keep Accurate Records (Violation of Labor Code § 226) <br> 8. Wrongful Constructive Termination in Violation of Public Policy <br> 9. Negligent Supervision <br> 10. Unfair Business Practices (Violation of California Business and Professions Code § 17200 *et seq.*) |

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE
RELIEF
-1-

)
) **DEMAND FOR A JURY TRIAL**
)
)

Come now Plaintiffs Brittney Shaw and Edgar Hernandez who allege and complain against Defendants Nike Retail Services, Inc., (hereinafter "NIKE"), and Wendy Magee, ((hereinafter "MAGEE"), and DOES 1 through 100, inclusive (hereinafter collectively "Defendants"):

**I.**

**JURISDICTION AND VENUE**

1.     Jurisdiction and venue are proper in this Court because some or all of the claims alleged herein arose in Los Angeles County and some or all of the parties were and/or are residents of Los Angeles County or are doing or did business in Los Angeles County at all times relevant herein.

2.     The amount in controversy in this matter exceeds the sum of $25,000.00 exclusive of costs and interest.

**II.**

**PARTIES**

3.     At all times herein mentioned Plaintiffs Brittney Shaw and Edgar Hernandez were and are individuals conducting business, in the County of Los Angeles, State of California.

**PLAINTIFF BRITTNEY SHAW**

4.     Brittney Shaw ("Plaintiff Shaw") began working for NIKE in or around 2007 as a part-time employee, while she was in college.   She eventually became a full-time employee and the full-time manager at NIKE'S Santa Monica retail store.  She was a manager for seven years prior to her constructive termination. She was successful in her tenure and received numerous accolades for her work by NIKE, and in addition to her other managerial duties, she was chosen to be a trainer in NIKE'S pilot program called District Service Captain wherein she was responsible for the training of hundreds of new NIKE employees over an approximately 2-year period at approximately 8

---

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE
RELIEF
-2-

different NIKE stores for which she was not paid, and for which she incurred expenses, other than for mileage.  Plaintiff Shaw is an African-American female, who is a lesbian.

5.      During the entirety of her tenure with NIKE, Plaintiff Shaw fully and satisfactorily performed her career agent duties, except as to those duties, which were waived, excused, prevented by Defendants, or any of them, until she was forced out of the company in or around July, 2019. Plaintiff Shaw exhausted her administrative remedies for her FEHA claims by timely making complaints to the DFEH and obtaining right to sue letters.  Defendants NIKE and MAGEE were considered Plaintiff Shaw's employers pursuant to Labor Code Section 18 and I.W.C. wage order 4-2001, as periodically amended.

**PLAINTIFF EDGAR HERNANDEZ**

6.      Plaintiff Edgar Hernandez began working for NIKE in or around 1996, and eventually became a manager at NIKE'S Santa Monica retail store.  During the course of his tenure with NIKE Plaintiff Hernandez worked with approximately 10 different supervisors and got along with all of them as well as with his co-workers and customers, until MAGEE became his supervisor. Plaintiff Hernandez is Latino.

7.      During the entirety of his tenure with NIKE, Plaintiff Shaw fully and satisfactorily performed his career agent duties, except as to those duties, which were waived, excused, prevented by Defendants, or any of them, until he was forced out of the company in or around April 9, 2019 or after.  Defendants NIKE and MAGEE were considered Plaintiff Hernandez's employers pursuant to Labor Code Section 18 and I.W.C. wage order 4-2001, as periodically amended.

**CORPORATE DEFENDANT:**

8.      NIKE, a retail establishment, is an Oregon Corporation, whose principal place of business, Plaintiffs are informed and believe and thereupon allege, is California, and who, Plaintiffs are

---

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE
RELIEF
-3-

informed and believe and thereupon allege, employs hundreds of workers as employees and/or representatives, and is and was doing business in the State of California, County of Los Angeles, at all relevant times.

9.      Defendants NIKE and MAGEE were considered Plaintiff Hernandez's employers pursuant to Labor Code Section 18 and I.W.C. wage order 4-2001, as periodically amended, and were at all relevant times subject to the California Labor Code and California Fair Employment and housing Act, (hereinafter the "FEHA"), among California's other laws.

**INDIVIDUAL DEFENDANT**

10.     MAGEE is an individual who worked for NIKE for a number of year and eventually became a Head Coach at NIKE'S Santa Monica store, and the supervisor of Plaintiffs Shaw and Hernandez. From the time she became the Head Coach, over a period of a few months, Plaintiffs allege she was responsible for the departure of approximately 80-90% of the NIKE Santa Monica store's management, by creating a such pervasively hostile and abusive work environment that the managers were forced to resign or were actually fired. Almost all of those managers were forced out or fired during her tenure were people of color, and the majority of whom were replaced by white women.

11.     Plaintiffs are informed and believe and thereupon allege that MAGEE was fired for racially profiling an African American couple, and their young son, who she followed out of the Santa Monica store and accused of theft of a basketball, getting the police involved, causing a spectacle only to find out after the fact that the couple had a receipt for the basketball as they had purchased it earlier in the day prior to going to the beach. They later had returned to the store to look at other NIKE products.

---

**DOE DEFENDANTS:**

12.     The true names and capacities, whether individual, official, corporate, associate, or otherwise, or precise participation of Defendant DOES 1 through 100, inclusive, are not known to the Plaintiff herein at the time of the filing of this complaint and, therefore, these Defendants are being sued by such fictitious names, and Plaintiff will seek leave of court to amend this complaint to show their true names and/or capacities and precise participation when the same have been ascertained.  Plaintiff is informed and believes and thereupon alleges, that each Defendant designated herein as a DOE was intentionally, negligently, or in some other actionable manner, responsible or liable for the acts, occurrences, omissions and damages alleged in this complaint.

**AGENCY/CO-CONSPIRATOR STATUS OF EACH DEFENDANT**

13.     Plaintiff is informed and believes and based thereon alleges that at all times herein, Defendants, and each of them, were the agents, servants, employees, partners, successors in interest, predecessors in interest, co-venturers, co-conspirators or alter egos of every other Defendant, and that all acts and omissions herein complained of were performed within the course and scope of said relationships.  In addition, each of the acts and omissions of the Defendants, and clearly each of them, was engaged in with the full authorization and satisfaction of each of them.  All Defendants were acting as co-conspirators, and/or individually, regarding each of the acts, occurrences, omissions, damages, and causes of action alleged in this complaint.

14.     At all times herein, mentioned Defendants were and are subject to the laws of the State of California, and were considered employers pursuant to, *inter alia*, Labor Code § 18 and I.W.C. Wage Order 4-2001, as periodically amended.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

15.     From the beginning of MAGEE'S tenure at NIKE'S Santa Monica store where Plaintiffs worked, she began treating the managers of color, including Plaintiffs differently, and less well.

16.     Early in MAGEE'S tenure MAGEE was faced with racist language from an employee. In that instance two employees were a stockroom; one employee was African American and the other was not. The one who was not African American used the "N" word, which caused the African American employee to report the incident to his manager and then to MAGEE. Manager Ernesto documented the incident in NIKE'S PAR system. In response this outrageous comment MAGEE took no action whatsoever against the employee who used that word.

17.     MAGEE took every opportunity to disparage Plaintiff Shaw, who was the only African American manager at that store. She critiqued her performance negatively as District Service Captain, despite the work not being under her purview.

18.     MAGEE took it upon herself to study Plaintiff Shaw's social media and personal life, having nothing to do with her work for NIKE, and counseled her because in her spare time she sold Herbalife products for extra money, which she had done for years and which Plaintiff Shaw's prior manager Christine, among others were well aware of.

19.     Despite the fact that Plaintiff Shaw was hand-picked as District Service Captain, for large NIKE stores such as the ones at the Grove and Fashion Island, and despite the fact Plaintiff Shaw was not compensated for that work by NIKE, MAGEE began harassing her stating that between Herbalife and NIKE trainer, she was not dedicated enough to her job to be a successful manager.

20.     MAGEE also harassed Plaintiff Shaw about her other non-managerial work activities concerning her creative endeavors. Plaintiff Shaw had approached NIKE, prior to MAGEE becoming her boss about marketing tops and hats whose design, including words, were intended to

---

empowered woman, which NIKE considered, but after which MAGEE became involved never came to fruition.

21.     At one point Plaintiff Shaw was permitted to lead a five-day NIKE training session at the NIKE Culver City office, away from the Santa Monica NIKE store.  Plaintiff Shaw only had access to NIKE email when she was at the Santa Monica NIKE store, and not while she was participating in the five-day training.  During her absence the Head Coach at NIKE'S Orange Factory emailed her, copying MAGEE, stating that they would like to interview her for an assistant manager position.  Despite speaking with MAGEE multiple times during her training absence, MAGEE never mentioned it.  Upon her return to the Santa Monica store, she found out about the opportunity but the window had passed. MAGEE intentionally sabotaged her chances for promotion.

22.     Out of the blue, without having spoken with her first, MAGEE called Plaintiff Shaw into her office and got Human Resources on the phone, which was not in keeping with the protocols of management, wherein MAGEE raised another extra-work, private activity that had occurred two years before and was never flagged as a problem, involving attending the birthday celebration of a person she had known since middle school who subsequently became a NIKE employee.

23.     That person, whose name was Kris, was a former school friend.  When he interviewed for the NIKE position, she recused herself from the hiring process because of their former friendship.

24.     MAGEE accused her of having an inappropriate sexual relationship with Kris, a male, even though Plaintiff Shaw is a lesbian, and other store employees had met her girlfriend many times. While they were flirtatious with each other it was just their relationship over many years, and was in jest.

25.     Kris also utilized the services of Plaintiff Shaw's mother for his son as her mother ran a day care.  Accordingly, Kris and Plaintiff Shaw had a preexisting relationship, and she attended his

birthday party, not knowing no other NIKE manager would be there – and, again, that took place two years before MAGEE forced the human resources meeting out of the blue. Everyone knew about it before, it wasn't a secret, and it only became an issue when MAGEE made it one, and misrepresented it.

26.     Subsequently, Plaintiff Shaw is informed and believes and thereupon alleges another NIKE employee who was managed by MAGEE entered into a romantic relationship with another NIKE employee, which MAGEE knew about, and which she did not condemn.

27.     Throughout this time period Plaintiff Shaw became increasingly anxious, depressed and upset due the abusive and intolerable way MAGEE treated her, and others, which progressed to such an extent that she was forced to go on disability leave.  Plaintiff Shaw raised the romantic relationship, that was against company policy, with Human Resources while she was on disability leave.  Eventually she was forced out of the company she had successfully worked at for over 11 years. During her exit interview with Human Resources, Plaintiff Shaw asked if she could be relocated to a different store so she did not have to work with MAGEE.  H.R. told her no but asked if she would like to have a sit down with MAGEE to talk to her (again) about how she was being treated.  Plaintiff Shaw declined because MAGEE was far too abusive and would never change, having tried that before.

28.     Rather than view Plaintiff Shaw as the dynamic, inspirational and dedicated NIKE employee that she was, MAGEE sabotaged and diminished her at every turn, nitpicked her performance and sabotaged her likely promotions.

29. Meanwhile, MAGEE had not limited herself to only harassing Plaintiff Shaw, she also harassed another long-term NIKE manager, Roberto, a Latino male. He was similarly maligned and harassed,

and critiqued by MAGEE, and became so upset that he left NIKE after approximately 24 years and relocated to San Francisco.

30.     Another manager Cindy, Latina, became so harassed by MAGEE that she wanted to leave the store for another NIKE location also.  She went to NIKE'S District Manager to complain about MAGEE but rather than find any support in upper management she too was forced out of the store and asked for a transfer, which she was given.

31.     Next, Ernesto, Filipino gay male manager met with his demise as a long-term NIKE manager due to MAGEE, as Plaintiffs are informed and believe and thereupon allege.  As was her pattern, MAGEE involved herself in his personal life and questioned his dedication to NIKE because he too had a side interest in creating hats.  He eventually established a relationship with NIKE regarding those hats, as Plaintiffs are informed and believe, but was made to leave his managerial position and NIKE. MAGEE nitpicked his performance, created opportunities for failure based on the work of other people, and made his life at NIKE so unbearable he suffered undue emotional distress.

32.     Another Latino manager was also run out of the NIKE store by MAGEE, whose name was Nohan.  He tried to get another job at NIKE which he eventually did, but when MAGEE found out, as Plaintiffs are informed and believe and thereupon allege, she tried to sabotage him and prevent him from getting it, but failed.

33. Over the course of months form her arrival at the Santa Monica NIKE store, MAGEE did her best to divide what had been a well-oiled management team for the most part, and set most of them up for termination. She became cliquish and would not let many into her management life.  Instead, she would spend time laughing and joking with primarily three others – two while woman and one

woman who appeared white but who was not of European descent, as Plaintiffs are informed and believe and thereupon allege.  Their names were Molly, Monica and Rebecca.

34.  Molly, Monica and Rebecca were permitted to work in MAGEE'S office while she was there, whereas the other managers weren't.  They bought Starbuck's coffee and sandwiches for each other but excluded the managers of color.  Even after the three would clock out for the day, the remained frequently remain in MAGEE'S office.  MAGEE held them out as role models for dedication to NIKE.

35.     From the beginning of MAGEE'S tenure at the Santa Monica NIKE store Plaintiff Hernandez was able to see what was going on and how the people of color were being treated.  He too was excluded from socializing or even speaking with MAGEE for months.

36.     Plaintiff Hernandez's experience with new managers was that they would sit down and get to know the subordinate managers in a short time period, tell them their expectations, let them know their management style, which Plaintiff was always open to. Over the course of about 20 years with NIKE he never had a problem with other managers or co-workers.

37.     When he would go to her office, she would not have eye contact with him even when he spoke to her – EVER.  Instead, she would look at her computer or anywhere else, essentially treating him like a non-human and dismissing him.  Even at management meeting s wherein the managers all took turns talking about different topics, MAGEE would not acknowledge him or look him in the eyes.

38.     Moreover, for months MAGEE refused to meet with him officially.  Observing her demeanor and conduct he did his best to avoid her wrath.  Eventually he decided that he should make the first contact and set up a meeting with her, to discuss the issues and try to resolve them.

---

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE RELIEF
-10-

She apologized and said she had just not had time to get to him and that he was doing his job so she didn't need to meet with him before that.

39. Shortly thereafter, she began the slide into abuse and harassment. She repeatedly criticized his work thereafter, kept moving the goal posts about performance and duties, and lied about him. She wrote him up.

40. Then she looked into his private life as well, wherein she felt the need to meet with him, disparage him and question his commitment to NIKE because of his extra-circular activities while not at his hourly-paying, managerial job. Plaintiff Hernandez had worked for NIKE for over 20 years. He loved it so much, and was so inspired by the brand, (which turned out to be superficial and false), that he used his private time to coach High School Basketball part time and mentored in a youth basketball program. None of that ever conflicted with his managerial work, and prior supervisors were happy to work his schedule around game days. She wasn't. MAGEE scheduled him to work on days he asked to have off, as part of his two days off per week, including game days. She held him to a higher standard than her white-woman clique, for example. He stopped posting on social media about his personal activities he had been proud of, because he knew she was trolling him and looking for anything she could find to hurt him professionally.

41. Finally, she told Ernesto, to write Plaintiff Hernandez up for some concocted performance issue and threatened to reach out to the District Manager for termination. But Ernesto, as stated, had his own harassment from her, and he left before he had written Plaintiff up unjustly.

42. Once Plaintiff Shaw was out on disability the NIKE Santa Monica store assistant manager position that she had applied for went to Molly, a white woman. It turned out that an African American woman from a New York NIKE store had also interviewed for the assistant manager

position but didn't get it. – because the white woman got it.  Instead, she was given a management

position under MAGEE, which was as Plaintiff Hernandez's supervisor.  Her name was Ernia.

43.     Plaintiff Hernandez immediately went to Ernia and told him of his abusive experiences at

the hands of MAGEE.  He asked her to please correct him if he did something wrong so he could

fix it rather than going to MAGEE to complain, because he believed he too was being set up to be

fired.  She agreed and appeared to be supportive.  Instead, she turned on him and the tow called him

into MAGEE's office wherein they reprimanded him over things he had not done and threatened to

fire him.

44.     By this time Plaintiff Hernandez had been experiencing deep anxiety, due to all the stress

produced by the hostile work environment.  He started feeling sick and he developed intense

stomach issues and eventually kidney stones.  When he had to go to the doctor, he would bring notes

to ensure he was not accused of faking illness.  Eventually the abuse became so bad that he went out

on medical leave.  When he was able to come back the abuse continued so he was forced to give

two weeks' notice to corporate for the sake of his health.  When asked why, he said it was because

of MAGEE and the hostile work environment she created and told them to ask others.  They

apparently didn't care and refused to investigate all the allegations of racism and discrimination.

45.     It was not until months later when the video of her harassing, and publicly falsely accusing a

Black family of theft at Santa Monica Pier went public, and then went viral, was she fired.

46.     By then MAGEE had managed to abuse and remove 80-90% of her store's managerial staff,

most of whom were replaced by white women.  NIKE did not care at all about her discrimination,

harassment or retaliation of their store until it threatened to affect their reputation due to the

recording.

**FIRST CAUSE OF ACTION**

## VIOLATION OF FEHA FOR RACIAL AND/OR SEXUAL PREFERENCE DISCRIMINATION,

### GOVERNMENT CODE § 12940 (a) *et seq.*

**(By Plaintiff Shaw Against NIKE, and Doe Defendants, 1-100)**

47.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 46 of this complaint as though fully set forth herein.

48.     Plaintiff Shaw claims that Defendants wrongfully discriminated against her.

49.     Defendants, including NIKE were Plaintiff Shaw's employer.  Plaintiff Shaw was a managerial employee of Defendants and NIKE;

50.     Defendants, including NIKE, refused to promote Plaintiff Shaw twice and then constructively discharged her.

51.     Plaintiff Shaw's race and/or sexual preference was a substantial motivating reason for Defendants' constructive termination and refusal to hire.

52.     As a proximate cause of Defendants' willful, knowing, and intentional conduct Plaintiff Shaw has sustained and continues to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

53.     As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional conduct toward Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach, depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

54.     Plaintiff Shaw has incurred and continues to incur attorneys' fees and costs as a proximate cause of Defendants' discrimination against Plaintiff, in amount to be proven and seeks attorneys' fees pursuant to the FEHA.

55.     As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff Shaw, Plaintiff Shaw seeks declaratory relief that she was discriminated against by Defendants, including NIKE, to reaffirm Plaintiff Shaw's standing among her coworkers, the NIKE community, and the public, and to condemn NIKE'S discriminatory, and abusive employment policies and/or practices.

56.     As a proximate result of NIKE'S willful, knowing, and intentional discrimination against Plaintiff Shaw, she seeks injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, and made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

57.     Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff Shaw with an improper and intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiff Shaw's rights.  Accordingly, she requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## SECOND CAUSE OF ACTION
## VIOLATION OF FEHA FOR WORK ENVIRONMENT HARASSMENT,
## GOVERNMENT CODE §§ 12923, 12940, *et seq.*
## (By Plaintiff Against all Defendants)

58.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 57 of this complaint as though fully set forth herein.

59.     Plaintiff Shaw was a person providing service under an implied in fact contract with Defendants.

---

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE RELIEF
-14-

60.     Plaintiff Shaw alleges that Defendants subjected her to harassment based on her race and/or sexual preference while she worked for Defendants, and that this harassment created a work environment that was hostile, intimidating, offensive, oppressive and abusive.

61.     Plaintiff Shaw was subjected to harassing conduct because of her race and/or sexual preference. The harassing conduct was severe and pervasive.

62.     Plaintiff alleges that as reasonable African American woman or lesbian in Plaintiff Shaw's circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive and abusive.

63.     Plaintiff Shaw considered the work environment to be hostile, intimidating, offensive, oppressive, and abusive.

64.     NIKE and MAGEE participated in the harassing conduct.

65.     As a proximate cause of Defendants' willful, knowing, and intentional harassment, Plaintiff Shaw has sustained and continues to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

66.     As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional harassing conduct toward Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach, depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

67.     Plaintiff Shaw has incurred and continues to incur attorneys' fees and costs as a proximate cause of Defendants' harassment of Plaintiff, in amount to be proven and seeks attorneys' fees pursuant to the FEHA.

68.     As a proximate result of Defendants' willful, knowing, and intentional harassment Plaintiff Shaw, Plaintiff Shaw seeks declaratory relief that she was unlawfully harassed by Defendants,

including NIKE and MAGEE, to reaffirm Plaintiff Shaw's standing among her coworkers, the NIKE community, and the public, and to condemn NIKE'S and MAGEE'S harassing and abusive employment policies and/or practices.

69.     As a proximate result of Defendants', including NIKE'S and MAGEE'S willful, knowing, and intentional harassment of Plaintiff Shaw, she seeks injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, and made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

70.     Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff Shaw with an improper and intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiff Shaw's rights.  Accordingly, she requests the assessment of punitive damages against Defendants, including NIKE and MAGEE, in an amount appropriate to punish and make an example of them.

### THIRD CAUSE OF ACTION
### VIOLATION OF FEHA FOR RETALIATION,
### GOVERNMENT CODE § 12940 (h) *et seq.*
### (By Plaintiff Shaw Against NIKE, and Doe Defendants, 1-100)

71.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 70 of this complaint as though fully set forth herein.

72.     Plaintiff Shaw alleges that Defendants retaliated against her.

73.     Plaintiff Shaw complained to her supervisors about unlawful discriminatory conduct against her.

74.     Defendants then twice refused to promote her and then constructively discharged her.

75.     Plaintiff's complaints regarding the discriminatory conduct were a substantially motivating factor in Defendants' decisions to retaliate against her, by refusing to promote her twice, and then constructively discharging her.

76.     As a proximate cause of Defendants' willful, knowing, and intentional retaliatory decisions Plaintiff Shaw has sustained and continues to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

77.     As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional retaliation against Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach, depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

78.     Plaintiff Shaw has incurred and continues to incur attorneys' fees and costs as a proximate cause of Defendants' discrimination against Plaintiff, in amount to be proven and seeks attorneys' fees pursuant to the FEHA.

79.     As a proximate result of Defendants' willful, knowing, and intentional retaliation against Plaintiff Shaw, Plaintiff Shaw seeks declaratory relief that she was unlawfully retaliated against by Defendants, including NIKE, to reaffirm Plaintiff Shaw's standing among her coworkers, the NIKE community, and the public, and to condemn NIKE'S unlaw retaliatory employment policies and/or practices.

80.     As a proximate result of NIKE'S willful, knowing, and intentional retaliation against Plaintiff Shaw, she seeks injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, and made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

81.     Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff Shaw with an improper and

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE
RELIEF
-17-

intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiff Shaw's rights. Accordingly, she requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF FEHA FOR FAILURE TO PREVENT DISCRIMINATION,**

**HARASSSMENT AND RETALIATION,**

**GOVERNMENT CODE § 12940 (k)** *et seq.*

**(By Plaintiff Shaw Against NIKE, and Doe Defendants, 1-100)**

82.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 81 of this complaint as though fully set forth herein.

83.     Plaintiff Shaw alleges that Defendants failed to take all reasonable steps to prevent discrimination, harassment, and retaliation based on her race and/or sexual preference.

84.     Plaintiff Shaw was an employee of Defendants providing services under an implied in fact contract. She also applied for two promotions there, but was rejected.

85.     She was subjected to discrimination, harassment and retaliation in the course of that employment.

86.     Defendants failed to all reasonable steps to prevent the discrimination, harassment and retaliation.

87.     As a proximate cause of Defendants' willful, knowing, and intentional decision Plaintiff Shaw has sustained and continues to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

88.     As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional conduct toward Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach,

depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

89.     Plaintiff Shaw has incurred and continues to incur attorneys' fees and costs as a proximate cause of Defendants' failure to prevent discrimination, harassment and retaliation against Plaintiff, in amount to be proven and seeks attorneys' fees pursuant to the FEHA.

90.     As a proximate result of Defendants' willful, knowing, and intentional failure to prevent discrimination, harassment and retaliation against Plaintiff Shaw, Plaintiff Shaw seeks declaratory relief that Defendants failed to take reasonable steps to prevent discrimination, harassment and retaliation against Plaintiff, including NIKE and MAGEE, to reaffirm Plaintiff Shaw's standing among her coworkers, the NIKE community, and the public, and to condemn NIKE'S and MAGEE'S discriminatory, and abusive employment policies and/or practices.

91.     As a proximate result of Defendants willful, knowing, and intentional failure to prevent discrimination, harassment and retaliation against Plaintiff Shaw, she seeks injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, and made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

92.     Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff Shaw with an improper and intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiff Shaw's rights.  Accordingly, she requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

### FIFTH CAUSE OF ACTION

**FAILURE TO PAY WAGES – VIOLATION OF LABOR CODE §§ 200, *et seq.*, and/or 1194/1197 *et seq*.**

**(Plaintiff Shaw Against NIKE and Doe Defendants, 1-100)**

93.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 92, as though fully set forth herein.

94.     Defendants and each of them were employers of Plaintiff Shaw pursuant to, *inter alia*, Labor Code § 18 and I.W.C. Wage Order 4-2001, which defines an employer for *wage claim* purposes. *Martinez v. Combs*, 49 Cal. 4th 35 (2010), and Labor Code section 2750.5.

95.     Each Defendant was an "employer" of Plaintiff under Labor Code section 18 and IWC Wage Order 4-2001, as periodically amended, as defined in Section 2 (H), because each was a "person" who controlled the wages, hours or working conditions of Plaintiff Shaw.  Defendants controlled Plaintiff Shaw's compensation by retaining the right to pay the compensation, up to and including complete forfeiture of all compensation, at their *sole* discretion, at any time. In addition to maintaining the right to control these wages, they actually controlled them by changing the compensation structure at their sole discretion and depriving Plaintiff of her compensation. Defendants also controlled the hours and place Plaintiff Shaw would conduct NIKE's training.

96.     Defendants intentionally failed to pay Plaintiff compensation, though they suffered and permitted her to work as their District Service Captain for approximately two years without pay, in violation of California Labor Code sections 203, 200, 1194, 1197.

97.     California Labor Code § 200 states in pertinent part that wages include all amounts for labor performed by employees of every description, while Labor Code § 201 states that wages for a discharged employee are due immediately.

98.     Defendants, and each of them, failed to pay Plaintiff all of her wages while she worked for Defendants, as well as upon her termination.

99.     No accounting was provided to Plaintiff upon his departure, nor during her tenure and she was not paid all compensation that was due her.

100.    As a direct and proximate result of Defendants' failure to pay Plaintiff for her work as a trainer, and to do so timely, Plaintiff Shaw has been damaged in an amount to be determined at trial.

101.    As a proximate result of Defendants' willful, knowing, and intentional failure to pay her proper wages, and to do so timely, Plaintiff seeks declaratory relief that she was wrongfully was not.

paid all wages timely due her, to reaffirm Plaintiff's standing among her coworkers, the NIKE community, and the public, and to condemn unlawful employment policies and/or practices of failure to pay wages.

102.    As a proximate result of Defendants' willful, knowing, and intentional failure to pay Plaintiff all wages due or and to do so timely, Plaintiff seeks injunctive relief to stop the practices, especially because the same and Managers and Executives and made or supported these practices, remain at NIKE. Therefore, the injunction will also have a favorable impact on the interests of the other employees and the public.

103.    Plaintiff has incurred and continues to incur legal expenses, costs of suit and attorneys' fees in a sum according to proof at trial, which he seeks pursuant to Labor Code sections 218.5 and interest pursuant to Labor Code section 218.6, as well as sections 1194 and 1197.

104.    Plaintiff additionally seeks liquidated damages pursuant to the Labor Code section 1194.2.

### SIXTH CAUSE OF ACTION
### FAILURE TO INDEMNIFY –
### VIOLATION OF LABOR CODE § 2802
### (Plaintiff Shaw Against NIKE and Doe Defendants, 1-100)

105.    Plaintiff hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 104, as though fully set forth herein.

106.    Pursuant to California Law, as set forth in Labor Code § 2802(a):

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or his obedience to directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Cal. Lab. Code § 2802

107. Plaintiff Shaw paid all necessary expenses and incurred necessary losses for her employment as a District Service Captain in obedience to the directions of Defendants, and in direct consequence of the discharge of her duties, believing the directions lawful, including but not limited to gas, cell phone use and computer use.

108. Plaintiff Shaw obeyed the directions of Defendants, to pay for all necessary expenses.

109. As a direct and proximate result of Defendants' failure to indemnify Plaintiff Shaw, she has been damaged and suffered losses in an amount to be determined at trial.

110. As a direct and proximate result of Defendants' failure to indemnify Plaintiff Shaw, she has incurred and continues to incur attorneys' fees, costs and interest in an amount to be determined at trial, and seeks them pursuant to this Labor Code section.

111. Similarly, Defendants, and each of them, had a duty to indemnify Plaintiff under Corporations Code section 317 for those amounts actually reasonably incurred while she was their employee, and to pay for all monetary amounts incurred in having to file and litigate this case, which she seeks as well, in an amount to be determined.

**SEVENTH CAUSE OF ACTION**

**FAILURE TO PROVIDE AN ACCURATE, ITEMIZED WAGE STATEMENT AND**

**MAINTAIN ACCURATE RECORDS**

**VIOLATION OF LABOR CODE § 226**

**(Plaintiff Shaw Against NIKE and Doe Defendants, 1-100)**

112. Plaintiff hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 111, as though fully set forth herein.

113.    Labor Code section 226(a) sets forth reporting requirements for employers regarding wage statements:

> "(a) An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment..."

and, Labor Code Section 226 (b) states that:

> "(b) An employer that is required by this code or any regulation adopted pursuant to this code to keep the information required by subdivision (a) shall afford current and former employees the right to inspect or receive a copy of records pertaining to their employment, upon reasonable request to the employer..."

114.    Defendants knowingly and intentionally failed to accurately record the true reporting information required of them on the wage statement much, less provide any wage statement at all for this purpose to Plaintiff Shaw, including but not limited to, showing the accurate gross wages earned, the accurate net wages earned, all deductions and the name and address of the legal entity of the employer(s).

115.    Defendants knowingly and intentionally failed to furnish Plaintiff Shaw with an accurate itemized statement meeting the statutory requirements upon each or any payment of wages.

116.    Plaintiff Shaw was damaged by these failures because, among other issues, the failures led Plaintiff Shaw to believe that she was not entitled to be paid as an employee. Also, Defendants' failure to comply with Labor Code § 226(a) hindered Plaintiff Shaw from determining the amounts owed her.

117.    As a direct and proximate result of Defendants' refusing to pay Plaintiff Shaw for her work as a District Service Captain, and their subsequent failure to provide Plaintiff Shaw with accurate, itemized wage statements and maintain accurate records, Plaintiff has been damaged in amount to be proven at trial to at least up $4000.00, and is entitled to an award of reasonable attorneys' fee and costs, which she seeks as she has incurred and continues to incur such reasonable attorneys' fees and costs, as a direct and proximate cause of Defendants' violation of this Labor Code section.

118.    Pursuant to this statute Plaintiff seeks injunctive relief in the form of an injunction prohibiting Defendants, and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them from engaging in each of the practices complained of in this cause of action, going forward, especially because the same Managers and Executives remain at NIKE, and made or supported these practices, Therefore the injunction will also have a favorable impact on the interests of the public.

amount to be determined.

## EIGHTH CAUSE OF ACTION

## CONSTRUCTIVE DISCHARGE IN VIOLATIONS OF PUBLIC POLICY

### (Plaintiff Shaw and Hernandez Against NIKE and Doe Defendants, 1-100)

119.    Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 118.

120.    Plaintiffs claim that Defendants forced them to resign for reasons that violate public policy, including but not limited to the afore described violations of the FEHA and the California Constitution.

121.  Plaintiffs were employed by Defendants.

122.  Plaintiffs were subjected to working conditions that violated public policy, including but not limited to being discriminated against, harassed and retaliated against in violation of the FEHA, and Plaintiff Shaw not being paid at all for the work she performed as a trainer for NIKE, which is less than minimum wage.

123.    Defendants intentionally created or knowingly permitted these working conditions.

124.    These working conditions were so intolerable that a reasonable person in Plaintiffs' position would have had no reasonable alternative except to resign.

125.    Plaintiff did resign because of these working conditions;

126.    As a direct and proximate result of Defendants' conduct and the resultant working conditions, Plaintiffs have been damaged in an amount to be determined at trial.

127.    The working conditions were a substantial factor in causing Plaintiffs' harm.

128.    As a proximate cause of Defendants' willful, knowing, and intentional decision Plaintiff have sustained and continue to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

129.    As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional conduct toward Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach, depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

130.    As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional conduct toward Plaintiff Hernandez, he has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as substantial digestive issues, depression, anxiety, sleeplessness, inability to concentrate, and kidney stones, among other physical and emotional injuries, all to his damage in a sum according to proof.

131.    Plaintiffs have incurred and continues to incur attorneys' fees and costs in a sum according to proof as a result of Defendants' conduct that violates public policy.

132.    As a proximate result of Defendants' willful, knowing, and intentional wrongful constructive discharge against Plaintiffs seek declaratory relief that Defendants that they were unlawfully constructively discharged in violation of public policy, to reaffirm their standing among their coworkers, the NIKE community, and the public, and to condemn NIKE'S and MAGEE'S intolerable employment policies and/or practices.

133.    As a proximate result of Defendants willful, knowing, and intentional failure to unlawful constructive discharge of Plaintiffs, against public policy, they seek injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, who made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

134.    Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiffs with an improper and intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiffs' rights.  Accordingly, they request the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## NINTH CAUSE OF ACTION
## NEGLIGENT HIRING, SUPERVISION AND RETENTION
### (Both Plaintiffs Against NIKE)

135.   Plaintiffs hereby restate, re-allege and incorporate by reference herein, paragraphs 1 through 134 of this complaint as though fully set forth herein.

136.   Plaintiffs claim that they were harmed by NIKE and that NIKE is responsible for that harm because NIKE negligently hired, supervised and retained MAGEE.

137.   Plaintiffs are informed and believes and thereupon alleges that NIKE hired MAGEE who was their employee.

138.   MAGEE was or became unfit to perform the work for which she was hired, which included but was not limited to, managing and hiring other employees to work for Defendants.

139.   NIKE knew or should have known that MAGEE was unfit or became unfit to do her job, and that this unfitness created a particular risk to others, including Plaintiffs, other employees and customers.

140.   NIKE's negligence in hiring, supervising and retaining MAGEE harmed Plaintiffs Shaw and Hernandez.

141.   NIKE's negligence in hiring, supervising and retaining MAGEE was a substantial factor in causing Plaintiffs Shaw and Hernandez's harm.

142.   As a proximate result of NIKE'S negligence, Plaintiffs have suffered and continue to suffer

143.   As a proximate result of NIKE'S despicable conduct, which was done with a willful and knowing disregard of the rights and safety of Plaintiffs, Plaintiffs have sustained and continue to sustain substantial losses in earnings and other benefits.

144.   Defendant has committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiffs with an improper and intentional motive amounting to fraud, malice and in conscious disregard of Plaintiff's rights.  Accordingly, Plaintiffs request the assessment of punitive damages against them, in an amount appropriate to punish and make an example of them.

## TENTH CAUSE OF ACTION

## VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 *et seq.*

### (All Plaintiffs Against All Defendants)

145.    Plaintiffs hereby restate, re-allege and incorporate by reference herein, paragraphs 1 through 144 of this complaint as though fully set forth herein.

146.    Defendants, and each of them, are "persons" as defined under Business & Professions Code §§ 17021 and 17203.

147.    Each Defendant is equally responsible for the acts of the others as set forth in the Business and Professions Code §§ 17022 and 17024.

148.    Beginning at an exact date unknown to Plaintiff but at least as of April 2017, Defendants have committed acts of unfair competition, as defined by the Business and Professions Code § 17200, *et seq.*, in California, by engaging in the following practices: (1) discriminating against Plaintiffs in violation of the FEHA; (2) harassing Plaintiffs in violation of the FEHA; (3) retaliating against Plaintiffs in violation of the FEHA; (4) failing to prevent discrimination and/or harassment and/or retaliation in violation of the FEHA; (5) failing to pay Plaintiff Shaw all wages due and to do so timely in violation of the Labor Code; (6) failing to indemnify Plaintiff Shaw's expenses and losses in discharging her duties or in obedience to the directions of Defendants; (7) failure to provide accurate itemized wage statements to Plaintiff Shaw, and to maintain accurate records in violation of the Labor Code; (8) constructively terminating Plaintiffs in violation of the public policy, including but not limited to violating their civil rights, in violation of the FEHA and the California Constitution; and (9) negligently hiring, retaining and supervising managers such that employee are harmed.  Plaintiffs suffered injury in fact caused by these practices.

149.    These acts, patterns and practices as described in the paragraph above, violate Business & Professions Code section 17200 in the following respect in California:

150.    Defendants' policy and practice of discriminating against Plaintiffs based on their race and/or sexual preference and /or ancestry violates the FEHA as well as the California Constitution.

This discrimination consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

151.     The harm to Plaintiffs, and the other NIKE managers who are of the same race and/or sexual preference and /or ancestry, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of such discrimination constitutes an unfair business act of practice within the meaning of Business & Professions Code section 17200, *et seq.*  Any person, including Plaintiffs who wants to be a NIKE manager in California and invests his or her time and resources would be unavoidably deceived as to what treatment they are entitled to by law, and based on the substantial public policies of California that workers should not be discriminated against.  Defendants' practice of discrimination abrogates those policies rendering Defendants' practice of discriminating unfair.

152.     Defendants' policy/practice of unlawful discrimination against NIKE managers, including Plaintiffs, is likely to deceive and/or create confusion by the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*. It would also be deceptive and confusing to the general public might be a member of a protected class who would then be discriminated against if hired.

153.     Defendants' policy and practice of harassing Plaintiffs based on their race and/or sexual preference and /or ancestry violates the FEHA.  This harassment consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

154.     The harm to Plaintiffs, and the other NIKE managers who are of the same race and/or sexual preference and /or ancestry, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of such harassment based on protected characteristics constitutes an unfair business act of practice within the meaning of Business & Professions Code section 17200, *et seq*. Any person, including Plaintiffs who wants to be a NIKE manager in California and invests his or her time and resources would be unavoidably deceived as to what treatment they are entitled to by law, and based on the substantial public policies of California that workers should not be unlawfully

harassed. Defendants' practice of unlawful harassment abrogates those policies rendering Defendants' practice of discriminating unfair.

155.    Defendants' policy/practice of unlawful harassment against NIKE managers, including Plaintiffs, is likely to deceive and/or create confusion by the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*. It would also be deceptive and confusing to the general public who might be a member of a protected class who would then be unlawfully harassed if hired.

156.    Defendants' policy and practice of retaliating against Plaintiffs for complaining about unlawful discrimination and harassment violates the FEHA. This retaliation consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

157.    The harm to Plaintiffs, and the other NIKE managers who are of the same race and/or sexual preference and /or ancestry, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of such retaliation constitutes an unfair business act of practice within the meaning of Business & Professions Code section 17200, *et seq*. Any person, including Plaintiffs who wants to be a NIKE manager in California and invests his or her time and resources would be unavoidably deceived as to what treatment they are entitled to by law, and based on the substantial public policies of California that workers should not be unlawfully retaliated against. Defendants' practice of unlawful retaliation abrogates those policies rendering Defendants' practice of such retaliation unfair.

158.    Defendants' policy/practice of unlawful retaliation against NIKE managers, including Plaintiffs, is likely to deceive and/or create confusion by the public when NIKE claims to adhere to state and federal law and support minorities, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*. It would also be deceptive and confusing to the general public who might be a member of a protected class who

would then be unlawfully retaliated against if they complain about unlawful discrimination or harassment.

159.    Defendants' policy and practice of failing to prevent discrimination, harassment and/or retaliation based on race and/or sexual preference and /or ancestry violates the FEHA.  This failure consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

160.    The harm to Plaintiffs, and the other NIKE managers who are of the same race and/or sexual preference and /or ancestry, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of failing to prevent discrimination, harassment and/or retaliation based on race and/or sexual preference and /or ancestry constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq*.  Any person, including Plaintiffs who wants to be a NIKE manager in California and invests his or her time and resources would be unavoidably deceived as to what treatment they are entitled to by law, and based on the substantial public policies of California which state that workers should not be unlawfully discriminated against, harassed or retaliated against, as well.  Defendants' practice of unlawfully failing to prevent discrimination, harassment and/or retaliation based on race and/or sexual preference and /or ancestry abrogates those policies rendering Defendants' practice of failing to prevent such discrimination, harassment and/or retaliation, unfair.

161.    Defendants' policy/practice of unlawful discrimination, harassment and/or retaliation, including against Plaintiffs, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*. It would also be deceptive and confusing to the general public who might be a member of a protected class who would then unlawfully suffer discrimination, harassment and/or retaliation which NIKE did not take reasonable steps to prevent.

162.    Defendants' policy and practice of failing to pay employees all wages due and to do so timely, violates the Labor Code.  This failure consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

163.    The harm to Plaintiffs, and the other NIKE managers who are suffered and permitted to work for NIKE without pay, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of failing to failing to pay employees all wages due constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq.* Any person, including Plaintiffs who wants to be a work for NIKE in California and invests his or her time and resources would be unavoidably deceived as to what payment they are entitled to by law, and based on the substantial public policies of California which state that workers should be paid for all hours worked.  Defendants' practice of unlawfully failing to pay employees all wages due abrogates those policies rendering Defendants' practice unfair.

164.    Defendants' policy/practice of failing to pay employees all wages due, including against Plaintiff Shaw, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq.* It would also be deceptive and confusing to the general public who might be a not want to support businesses who don't pay their employees lawfully.

165.    Defendants' policy and practice of indemnify their employees for expenses incurred for their jobs violates the Labor Code.  This failure consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

166.    The harm to Plaintiffs, and the other NIKE managers who are suffered and permitted to pay NIKE'S expenses and not be reimbursed for them, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq.*  Any person, including Plaintiffs who wants to be a work for NIKE in California and invests resources at the direction of NIKE would be unavoidably deceived as to what indemnification they are entitled to by law, and

based on the substantial public policies of California which state that workers should be indemnified. Defendants' practice of unlawfully failing to indemnify their employees renders NIKE'S practice unfair.

167.    NIKE's policy/practice of failing to indemnify their employees, including against Plaintiff Shaw, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, and consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq.* It would also be deceptive and confusing to the general public who might be a not want to support businesses who don't indemnify their employees lawfully.

168.    Defendants' policy and practice of failing to give employees accurate itemized wage statements and maintain accurate records, violates the Labor Code. This failure consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

169.    The harm to Plaintiffs, and the other NIKE managers who are not provided with the accurate itemized wage statements and whose records are maintained, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of give employees accurate itemized wage statements and maintain accurate records constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq.* Any person, including Plaintiffs who works for NIKE in California and invests his or her time and resources would be unavoidably deceived as to what payments they are entitled to by law, which could not be documented in a wage statement or accurate records. Defendants' practice of abrogates the law rendering Defendants' practice unfair.

170.    Defendants' policy/practice of give employees accurate itemized wage statements and maintain accurate records, including against Plaintiff Shaw, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq.*

171.    Defendants' policy and practice of wrongfully constructively terminating managers, including Plaintiffs, in violation of public policy, violates the law.  This practice consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

172.    The harm to Plaintiffs, and the other NIKE managers who NIKE wrongfully, terminates against public policy outweighs the utility of NIKE'S policy/practice and, consequently, Defendants' practice constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq.*

173.    Defendants' policy/practice of wrongfully constructively terminating managers, including Plaintiffs, in violation of public policy, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq.*

174.    Defendants' policy and practice of negligently hiring, retaining and supervising unfit senior managers, including MAGEE, who then harm their subordinates, violates the law.  This practice consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

175.    The harm to Plaintiffs, and the other NIKE managers who are harmed by unfit senior management who are negligently hired, retained and/or supervised, outweighs the utility of NIKE'S policy/practice and, consequently, Defendants' practice constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq.*

176.    Defendants' policy/practice of negligently hiring, retaining and supervising unfit senior managers, including MAGEE, who then harm their subordinates, including Plaintiffs, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq.*

177.   NIKE'S and/or MAGEE'S unlawful, unfair and fraudulent business practices, described above, present a continuing threat to members of the public and those who become NIKE managers, as examples.

178.   Plaintiffs and the other members of the general public have no other adequate remedy at law to vindicate these §17200 equitable UCL claims.

179.   As a result of the aforementioned acts and practices, Plaintiffs have lost money and/or property and suffered injury in fact, in an amount to be determined at trial.

180.   Defendants' acts and practices constitute continuing and ongoing unfair, fraudulent and/or unlawful activity prohibited by Business & Professions Code § 17200 *et seq*., and justify the issuance of an injunction, restitution and other equitable relief enjoining Defendants from continued unfair competition practices and from withholding Plaintiffs' money.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for relief and judgment against Defendants as follows:

### FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION
### [FOR PLAINTIFF SHAW]

1.   For back pay, according to proof;
2.   For reinstatement under different managers or front pay, according to proof;
3.   For judgment interest on any monetary award at the legal rate under the Civil Code;
4.   For attorneys' fees and costs pursuant to the FEHA;
5.   For compensatory damages for pain and suffering;
6.   For punitive damages;
7.   For injunctive and/or declaratory relief;

### FIFTH, SIXTH, AND SEVENTH, CAUSES OF ACTION
### [FOR PLAINTIFF SHAW]

8.    For unpaid wages, according to proof;

9.    For special damages, according to proof;

10.   For interest on any monetary award at the legal rate;

11.   For attorneys' fees pursuant to statute as laid out above;

12.   For liquidated damages, according to proof;

13.   For damages for failure to receive and accurate wage statement and to maintain records, in a sum according to proof up to $4000;

14.   For injunctive relief and declaratory relief;

**EIGHTH CAUSE OF ACTION**

**[FOR PLAINTIFFS SHAW AND HERNANDEZ]**

15.   For back pay, according to proof;

16.   For reinstatement under different managers or front pay, according to proof;

17.   For judgment interest on any monetary award at the legal rate under the Civil Code section 3289;

18.   For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5;

19.   For costs of suit under the Code of Civil Procedure;

20.   For compensatory damages for pain and suffering;

21.   For punitive damages;

22.   For injunctive and/or declaratory relief;

**NINTH CAUSE OF ACTION**

**[FOR PLAINTIFFS SHAW AND HERNANDEZ]**

23.   For general damages;

24.   For special damages;

25.   For costs of suit;

26.    For interest on any monetary award at the legal rate;

27.    For punitive damages

## SIXTEENTH CAUSE OF ACTION

28.    For restitution;

29.    For declaratory and injunctive relief as laid out above;

30.    For reinstatement;

31.    Pursuant to Business & Professions Code § 17203, and pursuant to the equitable powers of this Court, Plaintiff prays for restitution such that Defendants be ordered to restore to Plaintiff all funds acquired by means of any act or practice declared by this Court to be unlawful, or fraudulent or to constitute unfair competition affecting Plaintiffs, pursuant to Business & Professions Code § 17200 *et seq.*, and as restitution;

32.    In addition to any other remedy that has been ordered, that the Court order NIKE to prominently display on each of its publicly accessible internet websites, in an area that is accessible to all NIKE and employees, and to the general public, in California, notice that sets forth all of the following:

    (a)    That the Court has found that Defendants, or any of them if less that all, committed a serious violation of the law by engaging in willful unlawful discrimination, harassment and retaliation of managerial employees;

    (b)    That Defendants, or any of them if less than all, has changed its business practices in order to avoid committing further civil rights violations;

    (c)    That any employee who believes that he or she is being unlawfully discriminated against, harassed or retaliated against may contact the Department of Fair Employment and Housing, or an attorney.  The notice shall include the mailing address, email address and telephone number of the agency.

    (d)    That notice is being posted pursuant to a California state order.

    (e)    In addition, including the specified information listed above, Defendants, or any of them if less that all:

I.      An officer shall sign the notice;

II.     It or they shall post the notice for one year commencing with the date of the final decision and order.

33.    For costs of suit;

34.    For attorney fees, pursuant to Code of Civil Procedure § 1021.5 or the statutes stated above;

## ALL CAUSES OF ACTION

35.    For such other and further relief as the Court may deem just and proper, including but not limited to injunctive and declaratory relief and attorneys' fees.

Dated this 8th of April, 2021

THE ANFANGER LAW OFFICE

Nancy B. Anfanger
Attorney for Plaintiffs
Brittney Shaw and Edgar Hernandez

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all causes of action, with the exception of the equitable claims.

Dated this 8th of April, 2021

THE ANFANGER LAW OFFICE

Nancy B. Anfanger
Attorney for Plaintiffs
Brittney Shaw and Edgar Hernandez