Nancy B. Anfanger (SBN 225421)
anfangerlaw@aol.com
The Anfanger Law Office
9440 Santa Monica Boulevard
Suite 301
Beverly Hills, California 90210
Telephone: 310.402.8937

UNITED STATES DISTRICT COURT FOR

THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brittney Shaw, an individual, and Edgar Hernandez, an individual,<br><br>          Plaintiffs,<br><br>     vs.<br><br>Nike Retail Services, Inc., an Oregon corporation, Wendy Magee, an individual, and DOES 1 through 100, Inclusive,<br><br>          Defendant(s) | Case No.: 2:21-CV-04322<br><br>PLAINTIFFS BRITTNEY SHAW AND EDGAR HERNANDEZ'S NOTICE AND MOTION FOR REMAND; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF, AND EXHIBITS 1-6<br><br>[*Filed concurrently with the Declaration of Nancy B. Anfanger*]<br><br>Hearing: July 16, 2021<br>Time: 8:30 a.m.<br>Courtroom: 6C<br>Judge:The Hon. Stanley Blumenfeld, Jr.<br><br>(Los Angeles Superior Court Case No. 21STCV13349)<br><br>Complaint filed: April 8, 2021<br>Trial Date:  None Set |

Notice of Motion and Motion to Remand; Memorandum of P&A In Support Thereof

TO THE COURT, DEFENDANT NIKE RETAIL SERVICES, INC., DEFENDANT WENDY MAGEE, AND ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 16, 2021 or as soon thereafter as this matter may be heard, in the United States Courthouse, in Courtroom 6C, located at 350 West 1st Street, Los Angeles, California, 90012, Plaintiffs Brittney Shaw and Edgar Hernandez will move the Court for an order, pursuant to 28 U.S.C. § 1447(c), 28 U.S.C. § 1441 (b)(2), 28 U.S.C. § 1332(a)(2) remanding this action to the Superior Court in and for the County of Los Angeles.

Plaintiffs move for remand on the grounds that:

(1) Plaintiffs' complaint does not raise a federal question that is necessary to resolution of their claims;

(2) Complete diversity jurisdiction does not exist as the forum state Defendant Wendy Magee was named and served;

(3) Nike Retail Services, Inc. has not and cannot meet its burden alleging diversity as to the amount in controversy and complete diversity of citizenship;

(4) Pre-service "snap" removal is improper;

(5) Nike Retail Services, Inc.'s removal of the case to Federal Court is defective, and untimely, in violation of *inter alia* 28 U.S.C. §1446(b)(1).

Plaintiff's motion for remand is based on this notice of motion and motion, the memorandum of law filed in support of this motion, the Declaration of Nancy B. Anfanger, and Exhibits 1- 6 in support thereof, and such further evidence and argument, both written and oral, as may be presented to the Court before the

///

///

///

- 2 –

Notice of Motion and Motion to Remand; Memorandum of P&A In Support Thereof

1   motion is submitted for decision.

2                                                    Respectfully submitted,

3   Dated this 11th day of June, 2021

4                                                    THE ANFANGER LAW OFFICE

5                                                    BY:  _/S/Nancy B. Anfanger_____
                                                         Nancy B. Anfanger
6                                                        Attorney for Plaintiffs Brittney Shaw
                                                         and Edgar Hernandez

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Notice of Motion and Motion to Remand; Memorandum of P&A In Support Thereof

## MEMORANDUM OF POINTS & AUTHORITIES

## <u>INTRODUCTION</u>

Plaintiffs Brittney Shaw and Edgar Hernandez ask this Court to remand this action to State Court for the County of Los Angeles.  Removal to federal court improper because no basis for removal appears on the face of the complaint, and because a California state defendant Wendy Magee has been served, as well as other facts rendering diversity jurisdiction null.

Plaintiff filed this action against Nike Retail Services, Inc., Wendy Magee and Does 1-100, in the Superior Court of California for the County of Los Angeles on April 8, 2021. Defendant Nike Retail Services, Inc. (hereinafter "Defendant") filed a snap notice of removal and removed the case to Federal Court while the parties were involved in resolution discussions, Defendant Magee relentlessly dodged service, as discussed below.

The case is an employment case, (and not one involving patent or copyright), which involves three causes of action filed under California Labor Code statutes; four causes of action filed under the California Fair Employment and Housing Act (hereinafter the "FEHA"); constructive discharge in violation of public policy, (which public policies alleged are all California public policies and include those based on the FEHA and the California State Constitution); negligence; and a state

claim in equity under the California Business & Professions Code. There are not federal questions involved in the complaint.

## ARGUMENT

### I. REMOVAL FROM STATE COURT IS DISFAVORED

Because federal courts are courts of limited jurisdiction and because of federalism concerns, there is a presumption against removal jurisdiction. (*See Kokkonen v. Guardian Life Ins. Co. of Am.* (1994) 511 U.S. 375, 377 [holding that presumption against jurisdiction exists because federal courts are courts of limited jurisdiction]; *Shamrock Oil & Gas Corp. v. Sheets* (1941) 313 U.S. 100, 108-09 [indicating that federalism concerns and Congressional intent mandate strict construction of removal statutes].)

"Removal…statutes are 'strictly construed,' and a 'defendant seeking removal has the burden to establish that the removal is proper and any doubt is resolved against removability.'" *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014) (quoting *Luther v. Countrywide Home Loans Serv. LP*, 533 F3d 1031, 1034 (9th Cir. 2008); *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1042 (9th Cir 2009) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)) ("The 'strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state

court."). Courts should presume that a case lies outside the limited jurisdiction of the federal courts. *Hunter*, 582 F.3d at 1042.

## II.   DEFENDANT HAS NOT MET ITS BURDEN OF DEMONSTRATING THAT REMOVAL IS PROPER

Defendant has not met its burden of demonstrating that removal is proper based on diversity of citizenship. 28 U.S.C. § 1441(b)(2). Original jurisdiction exists in the federal courts where the amount in controversy exceeds $75,000, exclusive of interest and costs, and where the matter in controversy is between citizens of different states. 28 U.S.C. § 1332(a)(1). Yet Defendant has not met its burden based on the amount of controversy threshold required by statute, nor on the complete diversity of citizenship requirement necessary for removal based on diversity jurisdiction, in violation of 28 U.S.C. § 1332(a)(2).

### A.   Removal Is Improper Because Complete Diversity of Citizenship Has Not Been Proven And A Forum State Defendant Was Named And Served In This Case

Defendant asserted diversity jurisdiction as the basis for removal. Complete diversity of citizenship exists when each plaintiff is a citizen of a different state than each of the defendants. *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1025 (9th Cir. 2007). Notably, "[d]efendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum state. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005). That is the litmus test.

Here, Defendant relies on its own interpretation of the language in 28 U.S.C. § 1441(b), (which the *Lincoln* case referenced at *Lincoln*, 546 U.S. at 84), which states that actions based on diversity jurisdiction may only be removed if none of the properly joined and served defendants is a citizen of the state in which the action is brought. Defendant focuses on the language "filed and served," giving inordinate weight to the "served" language, stating neither they nor Wendy Magee were served at the time of removal.

As to service, on April 28, 2021 Plaintiffs' counsel spoke with Defendant's counsel by phone. Defendant's counsel initiated the call. Plaintiffs' counsel had also spoken with Defendant's counsel months earlier when filing of the case was considered. *See* Anfanger Declr., ¶ 4.   Resolution interest was discussed and based on that conversation, Plaintiffs agreed not to serve the complaint until that interest, if any, was determined. Defendant's counsel agreed to apprise Plaintiffs' counsel. Instead, Defendant used Plaintiffs' counsels' good faith as an opportunity to remove the case based on pre-service "snap" removal.  *See* Anfanger Declr., ¶¶ 4, 5. Nike was served on May 27, 2021. *See* Anfanger Declr., ¶ 8, <u>Exhibit 4</u>. A true and correct copy of the Proof of Service on Defendant Nike Retail Services, Inc., is attached hereto as <u>Exhibit 4</u>.

Plaintiffs also named individual Wendy Magee as a defendant in their lawsuit. She is a citizen of the forum state, California, defeating complete diversity of

citizenship.  *See* Anfanger Declr., ¶ 9, and <u>Exhibit 3</u>.  A true and correct copy of the Proof of Service of Summons and Declaration of Diligence and mailing is attached as <u>Exhibit 3</u>.  Throughout the complaint her allegedly bad acts comprise the gravamen of the claimed wrongdoing, in violation of law. She is clearly not a straw person or shill included only to defeat removal.  *See* <u>Exhibit 1</u>.  A true and correct copy of Plaintiffs' complaint is attached hereto as <u>Exhibit 1</u>.

In addition to Defendant's removal tactic, named defendant Wendy Magee was also burdening service substantially.  *See* Anfanger Declr., ¶10.  Due to the pandemic, as well as considerations of costs and burden of service, Plaintiffs' counsel asked Wendy Magee's personal attorney Thomas Borchard, who also represents her in other Nike-related cases, if he would accept service on her behalf utilizing a notice of acknowledgement signed by Ms. Magee. She did not provide that authority, as he declined to have a notice of acknowledgment of receipt signed after consulting with her, and stated she had to be served. He was in possession of the summons, complaint and other necessary documents for service. He also stated that Nike was paying for her defense in this case and another. *See* Anfanger Declr., ¶¶ 11-14.

Plaintiffs' process server made multiple attempts to serve Ms. Magee, and even though people were clearly in the house, they refused to answer the door though the server knocked multiple times.  Eventually she was timely subserved.  On June

Notice of Motion and Motion to Remand; Memorandum of P&A In Support Thereof

10, 2021 she was personally served while fleeing and intentionally almost hit the process server with her car to attempt to avoid service yet again. Exhibit 3 , Exhibit 6. A true and correct copy of the June 10, 2021 service and declaration of diligence is attached as Exhibit 6.

**B. There Is A Split of Decision In The Central District And The Ninth Circuit Court of Appeals Has Not Weighed In Yet Regarding Snap Removal**

The Central District of California Courts are split regarding the jurisdictional issue of snap removal. While it not controlling in this case, one Court held the U.S. District Court for the Central District of California stated that snap removal "would eviscerate the purpose of the forum defendant rule" by permitting "removability to turn on the timing of service rather than the diversity of the parties." *Mass. Mut. Life Ins. Co. v. Mozilo*, No. 2:12-cv-03613-MRP-MAN (C.D. Cal. June 28, 2012). However, another Court in this district, also not controlling, permitted it on the narrow factual circumstances of that case holding in part that the defendants' conduct in that case was not tantamount to gamesmanship. Some courts apparently are fearful that snap removal would promote gamesmanship (especially given electronic docket monitoring). *Zirkin v. Shandy Media, Inc*., No. 2:18-cv-09207-ODW (SSx)(C.D. Cal. Feb. 14, 2019). These cases are not offered to be relied upon but rather are offered only as factual examples of the split in decisions. In this case, there was gamesmanship involved in the snap removal.  Nonetheless, the

United States Supreme Court, as stated above, very specifically stated what diversity of citizenship means.  And of course, such an interpretation permitting snap removal offends federalism.

This Court should also consider the absurdity doctrine which states that a court utilizing the plain meaning of a statute, as one example, that would lead to irrational results should be avoided. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2005).  Here, one way an interpretation of 28 U.S.C. 1441(b)(2) as to the language "properly joined and served" would result in absurd results is evidenced in the circumstances of this case. The named state defendant hid from service and the diverse defendant tricked Plaintiffs into believing resolution was or might be on the table such that Defendant could its their time preparing its removal notice after obtaining agreement from Plaintiffs' counsel regarding service. These activities would also represent a rare coincidence if not coordinated, also given Nike's payment for Ms. Magee's defense(s).  Indeed, both named defendants, are defendants in a non-employment federal lawsuit involving only federal question claims, entitled *Stallworth, et al. v. Nike Retail Services, Inc., Wendy Magee, et al.*, Case 2:20-cv-05985-VAP-GJS.  Plaintiff's counsel is also informed and believes that Wendy Magee's counsel accepted service or waived service in that case. *See* Anfanger Declr., ¶ 19.

## C. Removal Is Improper Because The Amount In Controversy Remains In Controversy

Notice of Motion and Motion to Remand; Memorandum of P&A In Support Thereof

In its removal notice, Defendant provided no actual evidence that the amount in controversy would exceed $75,000, and was based only on counsel's speculative assertions. Defendant has not met its burden of satisfactorily demonstrating that the amount in controversy prong essential for removal under diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), was met.

III.   **DEFENDANT'S REMOVAL WAS PROCEDURALLY DEFECTIVE**

### A. Defendant Cannot Use Snap Removal As Both A Shield And A Sword And It Has Not Proffered Any Evidence About The Timeliness Of The Removal Such That It Didn't Meet Its Burden Of Demonstrating That Removal Was Procedurally Proper

Defendant cannot reasonably be able to use pre-service "snap" removal as both a shield and sword, if it can be used at all. In removing the case to Federal Court Defendant asserted without support that the removal was timely, simply because Plaintiffs had not served the Summons or Complaint. Exhibit 2, page 12, ¶ 25. Yet the plain reading, (which Defendant relies on for snap removal), of 28 U.S.C. 1446(b)(1) clearly states that "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, **through service or otherwise**, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based…" (emphasis added). In addition to Defendant having access to electronic docket alerts which would have permitted receipt of pleading immediately, on April 8, 2021, within hours after the

Notice of Motion and Motion to Remand; Memorandum of P&A In Support Thereof

filing Bloomberg Law published notice of the filing of the case nationally. Moreover, Bloomberg Law not only published the case and case information that same day, they *contacted* Defendant as well about the case but "Nike didn't immediately respond to Bloomberg Law's Request for comment." A true and correct copy Plaintiffs' counsel copied from the internet is attached as <u>Exhibit 5</u>. *See* Anfanger Declr, ¶ 21. Moreover, Defendant's counsel and Plaintiff's counsel discussed the filed case on April 28, 2021 telephonically, and much earlier, prior to filing it. *See* Anfanger Declr, ¶ 22. Defendant's removal notice, which also reasonably took time to prepare was not made until May 24, 2021. Accordingly, Defendant had the filing at least four days before the case was removed, rendering the removal untimely, and removed long after the 30-day time period had expired. "If a case is removable from the outset, it must be removed within the initial thirty-day period specified by § 1446(b)…" *Samura v. Kaiser Foundation Health Plan, Inc.*, 715 F.Supp. 970, (N.D. California 1989), quoting *Hubbard v. Union Oil Company*, 601 F. Supp. 790, 795 (S.D.W. Va. 1985) It wasn't.

### A. Defendant Did Not Include All State Court Documents In Its Notice of Removal In Abrogation of 28. U.S.C. 1446

Defendant asserts in its removal notice that it provided the "material that comprise 'all process, pleadings, and orders' filed in the State Court Action…but which constitute the entirety of the record in the State Court" as they state 28 U.S.C. 1446(a) demands. <u>Exhibit 2</u>, page 3. A true and correct copy of Defendant's

Notice of Removal, and supporting documents is attached hereto as <u>Exhibit 2</u>, which is the proof of personal service on Defendant.  That is mistaken. Specifically, Defendant did not include the <u>material</u> documents issued by the State Court including its First Amended General Order and its Voluntary Efficient Litigation Stipulations Packet in its notice, in abrogation of 28 U.S.C. 1446(a). <u>Exhibit 4</u>, page 1. *See* Anfanger Declr., ¶ 20.

This motion is made following an informal telephonic conference with Defendant's counsel which took place on or about May 25, 2021.  Counsel spoke again about it on June 9, 2021.  *See* Anfanger Declr., ¶¶ 7, 18.

## IV.  CONCLUSION

Neither the principles of federalism, nor the United Supreme Court ruling cited above, defining diversity of citizenship, are served by permitting removal of what is clearly a state case to federal court. Nor should Defendants be rewarded for gamesmanship. For these and the other reasons stated above, or on the Court's own motion, Plaintiffs respectfully request that this Court remand the case to Superior Court of California for the County of Los Angeles, where it was originally filed.

Dated this 11th day of June, 2021      Respectfully submitted,

THE ANFANGER LAW OFFICE

BY:  */S/Nancy B. Anfanger*
      Nancy B. Anfanger
      Attorney for Plaintiffs Brittney Shaw
      and Edgar Hernandez

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years of age and not a party to the within action.  My business address is 9440 Santa Monica Boulevard, Suite 301, Beverly Hills, California 90210.

On June 11, 2021, I served, in the manner indicated below, the foregoing document described as "PLAINTIFFS BRITTNEY SHAW AND EDGAR HERNANDEZ'S NOTICE AND MOTION FOR REMAND; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF" on the interested parties who have appeared in this action by placing true copies thereof attached to an email, at Beverly Hills, California, addressed as follows (or as stated on the attached Proof of Service Mailing List):

SEE ATTACHED SERVICE LIST

[X]* (BY ELECTRONIC MAIL) On June 11, 2021 the document listed above was transmitted via electronic mail to the e-mail addresses set forth below as stated on the attached Proof of Service Mailing List, agreed upon and stipulated to by counsel.  The transmission was reported as complete and without error

[X]** (BY US MAIL): On June 11, 2021 I caused such envelopes with postage thereon fully prepaid to be placed in the United States mail at Beverly Hills, California.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter is more than one (1) day after date of deposit for mailing in affidavit.

\* \* \* \* \*

[X]  (FEDERAL) I declare that I am a member of the bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

EXECUTED on June 11, 2021 at Beverly Hills, California.

*/S/Nancy B. Anfanger*
Nancy B. Anfanger

Notice of Motion and Motion to Remand; Memorandum of P&A In Support Thereof

SERVICE LIST

Paul W. Sweeney, Jr.*
paul.sweeney@klgates.com
Vannie Karapetian*
vannie.karapetian@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067

*Served via email only

Wendy Magee
24352 Nan Court
Diamond Bar, California 91765

**Served via U.S. mail on June 11, 2021

Notice of Motion and Motion to Remand; Memorandum of P&A In Support Thereof

# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles on 04/08/2021 09:26 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez, Deputy Clerk
Case 2:21-cv-04322-SB-MRW   Document 1-4   Filed 06/11/21   Page 17 of 161   Page ID #:162
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Yolanda Orozco

Nancy B. Anfanger [SBN 225421]
THE ANFANGER LAW OFFICE
9440 Santa Monica Boulevard
Suite 301
Beverly Hills, California 90210
Telephone: (310) 402-8937

Attorney for Plaintiffs Brittney Shaw and
    Edgar Hernandez

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| Brittney Shaw, an individual, and Edgar Hernandez, an individual,<br><br>      Plaintiffs,<br><br>vs.<br><br>Nike Retail Services, Inc., an Oregon corporation, Wendy Magee, an individual, and DOES 1 through 100, inclusive,<br><br>      Defendants. | Case No.:  21STCV13349<br><br>Assigned to the Hon.<br>Department<br><br>**PLAINTIFFS BRITTNEY SHAW AND EDGAR HERNANDEZ'S COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE RELIEF**<br><br>1. Violation of the FEHA (discrimination based on race and/or sexual preference)<br>2. Violation of the FEHA (harassment)<br>3. Violation of the FEHA (retaliation)<br>4. Violation of the FEHA (failure to prevent discrimination, harassment, retaliation)<br>5. Failure to Pay Wages (Violation of Labor Code § 1194/1197 *et seq.*)<br>6. Failure to Indemnify (Violation of Labor Code § 2802)<br>7. Failure to Provide an Accurate, Itemized Wage Statement/Keep Accurate Records (Violation of Labor Code § 226)<br>8. Wrongful Constructive Termination in Violation of Public Policy<br>9. Negligent Supervision<br>10. Unfair Business Practices (Violation of California Business and Professions Code § 17200 *et seq.*) |

---

)
)   **DEMAND FOR A JURY TRIAL**
)
)

Come now Plaintiffs Brittney Shaw and Edgar Hernandez who allege and complain against Defendants Nike Retail Services, Inc., (hereinafter "NIKE"), and Wendy Magee, ((hereinafter "MAGEE"), and DOES 1 through 100, inclusive (hereinafter collectively "Defendants"):

## I.
## JURISDICTION AND VENUE

1.      Jurisdiction and venue are proper in this Court because some or all of the claims alleged herein arose in Los Angeles County and some or all of the parties were and/or are residents of Los Angeles County or are doing or did business in Los Angeles County at all times relevant herein.

2.      The amount in controversy in this matter exceeds the sum of $25,000.00 exclusive of costs and interest.

## II.
## PARTIES

3.      At all times herein mentioned Plaintiffs Brittney Shaw and Edgar Hernandez were and are individuals conducting business, in the County of Los Angeles, State of California.

## PLAINTIFF BRITTNEY SHAW

4.      Brittney Shaw ("Plaintiff Shaw") began working for NIKE in or around 2007 as a part-time employee, while she was in college.   She eventually became a full-time employee and the full-time manager at NIKE'S Santa Monica retail store.   She was a manager for seven years prior to her constructive termination. She was successful in her tenure and received numerous accolades for her work by NIKE, and in addition to her other managerial duties, she was chosen to be a trainer in NIKE'S pilot program called District Service Captain wherein she was responsible for the training of hundreds of new NIKE employees over an approximately 2-year period at approximately 8

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE RELIEF
-2-

different NIKE stores for which she was not paid, and for which she incurred expenses, other than for mileage.  Plaintiff Shaw is an African-American female, who is a lesbian.

5.      During the entirety of her tenure with NIKE, Plaintiff Shaw fully and satisfactorily performed her career agent duties, except as to those duties, which were waived, excused, prevented by Defendants, or any of them, until she was forced out of the company in or around July, 2019. Plaintiff Shaw exhausted her administrative remedies for her FEHA claims by timely making complaints to the DFEH and obtaining right to sue letters.  Defendants NIKE and MAGEE were considered Plaintiff Shaw's employers pursuant to Labor Code Section 18 and I.W.C. wage order 4-2001, as periodically amended.

**PLAINTIFF EDGAR HERNANDEZ**

6.      Plaintiff Edgar Hernandez began working for NIKE in or around 1996, and eventually became a manager at NIKE'S Santa Monica retail store.  During the course of his tenure with NIKE Plaintiff Hernandez worked with approximately 10 different supervisors and got along with all of them as well as with his co-workers and customers, until MAGEE became his supervisor. Plaintiff Hernandez is Latino.

7.      During the entirety of his tenure with NIKE, Plaintiff Shaw fully and satisfactorily performed his career agent duties, except as to those duties, which were waived, excused, prevented by Defendants, or any of them, until he was forced out of the company in or around April 9, 2019 or after.  Defendants NIKE and MAGEE were considered Plaintiff Hernandez's employers pursuant to Labor Code Section 18 and I.W.C. wage order 4-2001, as periodically amended.

**CORPORATE DEFENDANT:**

8.      NIKE, a retail establishment, is an Oregon Corporation, whose principal place of business, Plaintiffs are informed and believe and thereupon allege, is California, and who, Plaintiffs are

informed and believe and thereupon allege, employs hundreds of workers as employees and/or representatives, and is and was doing business in the State of California, County of Los Angeles, at all relevant times.

9.      Defendants NIKE and MAGEE were considered Plaintiff Hernandez's employers pursuant to Labor Code Section 18 and I.W.C. wage order 4-2001, as periodically amended, and were at all relevant times subject to the California Labor Code and California Fair Employment and housing Act, (hereinafter the "FEHA"), among California's other laws.

**INDIVIDUAL DEFENDANT**

10.      MAGEE is an individual who worked for NIKE for a number of year and eventually became a Head Coach at NIKE'S Santa Monica store, and the supervisor of Plaintiffs Shaw and Hernandez. From the time she became the Head Coach, over a period of a few months, Plaintiffs allege she was responsible for the departure of approximately 80-90% of the NIKE Santa Monica store's management, by creating a such pervasively hostile and abusive work environment that the managers were forced to resign or were actually fired.  Almost all of those managers were forced out or fired during her tenure were people of color, and the majority of whom were replaced by white women.

11.      Plaintiffs are informed and believe and thereupon allege that MAGEE was fired for racially profiling an African American couple, and their young son, who she followed out of the Santa Monica store and accused of theft of a basketball, getting the police involved, causing a spectacle only to find out after the fact that the couple had a receipt for the basketball as they had purchased it earlier in the day prior to going to the beach.  They later had returned to the store to look at other NIKE products.

**DOE DEFENDANTS:**

12.     The true names and capacities, whether individual, official, corporate, associate, or otherwise, or precise participation of Defendant DOES 1 through 100, inclusive, are not known to the Plaintiff herein at the time of the filing of this complaint and, therefore, these Defendants are being sued by such fictitious names, and Plaintiff will seek leave of court to amend this complaint to show their true names and/or capacities and precise participation when the same have been ascertained.  Plaintiff is informed and believes and thereupon alleges, that each Defendant designated herein as a DOE was intentionally, negligently, or in some other actionable manner, responsible or liable for the acts, occurrences, omissions and damages alleged in this complaint.

**AGENCY/CO-CONSPIRATOR STATUS OF EACH DEFENDANT**

13.     Plaintiff is informed and believes and based thereon alleges that at all times herein, Defendants, and each of them, were the agents, servants, employees, partners, successors in interest, predecessors in interest, co-venturers, co-conspirators or alter egos of every other Defendant, and that all acts and omissions herein complained of were performed within the course and scope of said relationships.  In addition, each of the acts and omissions of the Defendants, and clearly each of them, was engaged in with the full authorization and satisfaction of each of them.  All Defendants were acting as co-conspirators, and/or individually, regarding each of the acts, occurrences, omissions, damages, and causes of action alleged in this complaint.

14.     At all times herein, mentioned Defendants were and are subject to the laws of the State of California, and were considered employers pursuant to, *inter alia*, Labor Code § 18 and I.W.C. Wage Order 4-2001, as periodically amended.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

15.     From the beginning of MAGEE'S tenure at NIKE'S Santa Monica store where Plaintiffs worked, she began treating the managers of color, including Plaintiffs differently, and less well.

16.     Early in MAGEE'S tenure MAGEE was faced with racist language from an employee. In that instance two employees were a stockroom; one employee was African American and the other was not. The one who was not African American used the "N" word, which caused the African American employee to report the incident to his manager and then to MAGEE. Manager Ernesto documented the incident in NIKE'S PAR system. In response this outrageous comment MAGEE took no action whatsoever against the employee who used that word.

17.     MAGEE took every opportunity to disparage Plaintiff Shaw, who was the only African American manager at that store. She critiqued her performance negatively as District Service Captain, despite the work not being under her purview.

18.     MAGEE took it upon herself to study Plaintiff Shaw's social media and personal life, having nothing to do with her work for NIKE, and counseled her because in her spare time she sold Herbalife products for extra money, which she had done for years and which Plaintiff Shaw's prior manager Christine, among others were well aware of.

19.     Despite the fact that Plaintiff Shaw was hand-picked as District Service Captain, for large NIKE stores such as the ones at the Grove and Fashion Island, and despite the fact Plaintiff Shaw was not compensated for that work by NIKE, MAGEE began harassing her stating that between Herbalife and NIKE trainer, she was not dedicated enough to her job to be a successful manager.

20.     MAGEE also harassed Plaintiff Shaw about her other non-managerial work activities concerning her creative endeavors. Plaintiff Shaw had approached NIKE, prior to MAGEE becoming her boss about marketing tops and hats whose design, including words, were intended to

empowered woman, which NIKE considered, but after which MAGEE became involved never came to fruition.

21.     At one point Plaintiff Shaw was permitted to lead a five-day NIKE training session at the NIKE Culver City office, away from the Santa Monica NIKE store.  Plaintiff Shaw only had access to NIKE email when she was at the Santa Monica NIKE store, and not while she was participating in the five-day training.  During her absence the Head Coach at NIKE'S Orange Factory emailed her, copying MAGEE, stating that they would like to interview her for an assistant manager position.  Despite speaking with MAGEE multiple times during her training absence, MAGEE never mentioned it.  Upon her return to the Santa Monica store, she found out about the opportunity but the window had passed. MAGEE intentionally sabotaged her chances for promotion.

22.     Out of the blue, without having spoken with her first, MAGEE called Plaintiff Shaw into her office and got Human Resources on the phone, which was not in keeping with the protocols of management, wherein MAGEE raised another extra-work, private activity that had occurred two years before and was never flagged as a problem, involving attending the birthday celebration of a person she had known since middle school who subsequently became a NIKE employee.

23.     That person, whose name was Kris, was a former school friend.  When he interviewed for the NIKE position, she recused herself from the hiring process because of their former friendship.

24.     MAGEE accused her of having an inappropriate sexual relationship with Kris, a male, even though Plaintiff Shaw is a lesbian, and other store employees had met her girlfriend many times. While they were flirtatious with each other it was just their relationship over many years, and was in jest.

25.     Kris also utilized the services of Plaintiff Shaw's mother for his son as her mother ran a day care.  Accordingly, Kris and Plaintiff Shaw had a preexisting relationship, and she attended his

birthday party, not knowing no other NIKE manager would be there – and, again, that took place two years before MAGEE forced the human resources meeting out of the blue. Everyone knew about it before, it wasn't a secret, and it only became an issue when MAGEE made it one, and misrepresented it.

26.     Subsequently, Plaintiff Shaw is informed and believes and thereupon alleges another NIKE employee who was managed by MAGEE entered into a romantic relationship with another NIKE employee, which MAGEE knew about, and which she did not condemn.

27.     Throughout this time period Plaintiff Shaw became increasingly anxious, depressed and upset due the abusive and intolerable way MAGEE treated her, and others, which progressed to such an extent that she was forced to go on disability leave.  Plaintiff Shaw raised the romantic relationship, that was against company policy, with Human Resources while she was on disability leave.  Eventually she was forced out of the company she had successfully worked at for over 11 years. During her exit interview with Human Resources, Plaintiff Shaw asked if she could be relocated to a different store so she did not have to work with MAGEE.  H.R. told her no but asked if she would like to have a sit down with MAGEE to talk to her (again) about how she was being treated.  Plaintiff Shaw declined because MAGEE was far too abusive and would never change, having tried that before.

28.     Rather than view Plaintiff Shaw as the dynamic, inspirational and dedicated NIKE employee that she was, MAGEE sabotaged and diminished her at every turn, nitpicked her performance and sabotaged her likely promotions.

29. Meanwhile, MAGEE had not limited herself to only harassing Plaintiff Shaw, she also harassed another long-term NIKE manager, Roberto, a Latino male. He was similarly maligned and harassed,

and critiqued by MAGEE, and became so upset that he left NIKE after approximately 24 years and relocated to San Francisco.

30.     Another manager Cindy, Latina, became so harassed by MAGEE that she wanted to leave the store for another NIKE location also.  She went to NIKE'S District Manager to complain about MAGEE but rather than find any support in upper management she too was forced out of the store and asked for a transfer, which she was given.

31.     Next, Ernesto, Filipino gay male manager met with his demise as a long-term NIKE manager due to MAGEE, as Plaintiffs are informed and believe and thereupon allege.  As was her pattern, MAGEE involved herself in his personal life and questioned his dedication to NIKE because he too had a side interest in creating hats.  He eventually established a relationship with NIKE regarding those hats, as Plaintiffs are informed and believe, but was made to leave his managerial position and NIKE. MAGEE nitpicked his performance, created opportunities for failure based on the work of other people, and made his life at NIKE so unbearable he suffered undue emotional distress.

32.     Another Latino manager was also run out of the NIKE store by MAGEE, whose name was Nohan.  He tried to get another job at NIKE which he eventually did, but when MAGEE found out, as Plaintiffs are informed and believe and thereupon allege, she tried to sabotage him and prevent him from getting it, but failed.

33. Over the course of months form her arrival at the Santa Monica NIKE store, MAGEE did her best to divide what had been a well-oiled management team for the most part, and set most of them up for termination. She became cliquish and would not let many into her management life.  Instead, she would spend time laughing and joking with primarily three others – two while woman and one

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE RELIEF
-9-

woman who appeared white but who was not of European descent, as Plaintiffs are informed and believe and thereupon allege.  Their names were Molly, Monica and Rebecca.

34.  Molly, Monica and Rebecca were permitted to work in MAGEE'S office while she was there, whereas the other managers weren't.  They bought Starbuck's coffee and sandwiches for each other but excluded the managers of color.  Even after the three would clock out for the day, the remained frequently remain in MAGEE'S office.  MAGEE held them out as role models for dedication to NIKE.

35.     From the beginning of MAGEE'S tenure at the Santa Monica NIKE store Plaintiff Hernandez was able to see what was going on and how the people of color were being treated.  He too was excluded from socializing or even speaking with MAGEE for months.

36.     Plaintiff Hernandez's experience with new managers was that they would sit down and get to know the subordinate managers in a short time period, tell them their expectations, let them know their management style, which Plaintiff was always open to. Over the course of about 20 years with NIKE he never had a problem with other managers or co-workers.

37.     When he would go to her office, she would not have eye contact with him even when he spoke to her – EVER.  Instead, she would look at her computer or anywhere else, essentially treating him like a non-human and dismissing him.  Even at management meeting s wherein the managers all took turns talking about different topics, MAGEE would not acknowledge him or look him in the eyes.

38.     Moreover, for months MAGEE refused to meet with him officially.  Observing her demeanor and conduct he did his best to avoid her wrath.  Eventually he decided that he should make the first contact and set up a meeting with her, to discuss the issues and try to resolve them.

She apologized and said she had just not had time to get to him and that he was doing his job so she didn't need to meet with him before that.

39. Shortly thereafter, she began the slide into abuse and harassment. She repeatedly criticized his work thereafter, kept moving the goal posts about performance and duties, and lied about him. She wrote him up.

40.     Then she looked into his private life as well, wherein she felt the need to meet with him, disparage him and question his commitment to NIKE because of his extra-circular activities while not at his hourly-paying, managerial job. Plaintiff Hernandez had worked for NIKE for over 20 years. He loved it so much, and was so inspired by the brand, (which turned out to be superficial and false), that he used his private time to coach High School Basketball part time and mentored in a youth basketball program. None of that ever conflicted with his managerial work, and prior supervisors were happy to work his schedule around game days. She wasn't. MAGEE scheduled him to work on days he asked to have off, as part of his two days off per week, including game days. She held him to a higher standard than her white-woman clique, for example. He stopped posting on social media about his personal activities he had been proud of, because he knew she was trolling him and looking for anything she could find to hurt him professionally.

41.     Finally, she told Ernesto, to write Plaintiff Hernandez up for some concocted performance issue and threatened to reach out to the District Manager for termination. But Ernesto, as stated, had his own harassment from her, and he left before he had written Plaintiff up unjustly.

42.     Once Plaintiff Shaw was out on disability the NIKE Santa Monica store assistant manager position that she had applied for went to Molly, a white woman. It turned out that an African American woman from a New York NIKE store had also interviewed for the assistant manager

position but didn't get it. – because the white woman got it.  Instead, she was given a management position under MAGEE, which was as Plaintiff Hernandez's supervisor.  Her name was Ernia.

43.     Plaintiff Hernandez immediately went to Ernia and told him of his abusive experiences at the hands of MAGEE.  He asked her to please correct him if he did something wrong so he could fix it rather than going to MAGEE to complain, because he believed he too was being set up to be fired.  She agreed and appeared to be supportive.  Instead, she turned on him and the tow called him into MAGEE's office wherein they reprimanded him over things he had not done and threatened to fire him.

44.     By this time Plaintiff Hernandez had been experiencing deep anxiety, due to all the stress produced by the hostile work environment.  He started feeling sick and he developed intense stomach issues and eventually kidney stones.  When he had to go to the doctor, he would bring notes to ensure he was not accused of faking illness.  Eventually the abuse became so bad that he went out on medical leave.  When he was able to come back the abuse continued so he was forced to give two weeks' notice to corporate for the sake of his health.  When asked why, he said it was because of MAGEE and the hostile work environment she created and told them to ask others.  They apparently didn't care and refused to investigate all the allegations of racism and discrimination.

45.     It was not until months later when the video of her harassing, and publicly falsely accusing a Black family of theft at Santa Monica Pier went public, and then went viral, was she fired.

46.     By then MAGEE had managed to abuse and remove 80-90% of her store's managerial staff, most of whom were replaced by white women.  NIKE did not care at all about her discrimination, harassment or retaliation of their store until it threatened to affect their reputation due to the recording.

## FIRST CAUSE OF ACTION

---

## VIOLATION OF FEHA FOR RACIAL AND/OR SEXUAL PREFERENCE DISCRIMINATION,

## GOVERNMENT CODE § 12940 (a) *et seq.*

### (By Plaintiff Shaw Against NIKE, and Doe Defendants, 1-100)

47.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 46 of this complaint as though fully set forth herein.

48.     Plaintiff Shaw claims that Defendants wrongfully discriminated against her.

49.     Defendants, including NIKE were Plaintiff Shaw's employer.  Plaintiff Shaw was a managerial employee of Defendants and NIKE;

50.     Defendants, including NIKE, refused to promote Plaintiff Shaw twice and then constructively discharged her.

51.     Plaintiff Shaw's race and/or sexual preference was a substantial motivating reason for Defendants' constructive termination and refusal to hire.

52.     As a proximate cause of Defendants' willful, knowing, and intentional conduct Plaintiff Shaw has sustained and continues to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

53.     As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional conduct toward Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach, depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

54.     Plaintiff Shaw has incurred and continues to incur attorneys' fees and costs as a proximate cause of Defendants' discrimination against Plaintiff, in amount to be proven and seeks attorneys' fees pursuant to the FEHA.

55.     As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff Shaw, Plaintiff Shaw seeks declaratory relief that she was discriminated against by Defendants, including NIKE, to reaffirm Plaintiff Shaw's standing among her coworkers, the NIKE community, and the public, and to condemn NIKE'S discriminatory, and abusive employment policies and/or practices.

56.     As a proximate result of NIKE'S willful, knowing, and intentional discrimination against Plaintiff Shaw, she seeks injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, and made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

57.     Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff Shaw with an improper and intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiff Shaw's rights.  Accordingly, she requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## SECOND CAUSE OF ACTION

### VIOLATION OF FEHA FOR WORK ENVIRONMENT HARASSMENT, GOVERNMENT CODE §§ 12923, 12940, *et seq.*

**(By Plaintiff Against all Defendants)**

58.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 57 of this complaint as though fully set forth herein.

59.     Plaintiff Shaw was a person providing service under an implied in fact contract with Defendants.

60.     Plaintiff Shaw alleges that Defendants subjected her to harassment based on her race and/or sexual preference while she worked for Defendants, and that this harassment created a work environment that was hostile, intimidating, offensive, oppressive and abusive.

61.     Plaintiff Shaw was subjected to harassing conduct because of her race and/or sexual preference. The harassing conduct was severe and pervasive.

62.     Plaintiff alleges that as reasonable African American woman or lesbian in Plaintiff Shaw's circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive and abusive.

63.     Plaintiff Shaw considered the work environment to be hostile, intimidating, offensive, oppressive, and abusive.

64.     NIKE and MAGEE participated in the harassing conduct.

65.     As a proximate cause of Defendants' willful, knowing, and intentional harassment, Plaintiff Shaw has sustained and continues to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

66.     As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional harassing conduct toward Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach, depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

67.     Plaintiff Shaw has incurred and continues to incur attorneys' fees and costs as a proximate cause of Defendants' harassment of Plaintiff, in amount to be proven and seeks attorneys' fees pursuant to the FEHA.

68.     As a proximate result of Defendants' willful, knowing, and intentional harassment Plaintiff Shaw, Plaintiff Shaw seeks declaratory relief that she was unlawfully harassed by Defendants,

including NIKE and MAGEE, to reaffirm Plaintiff Shaw's standing among her coworkers, the NIKE community, and the public, and to condemn NIKE'S and MAGEE'S harassing and abusive employment policies and/or practices.

69.     As a proximate result of Defendants', including NIKE'S and MAGEE'S willful, knowing, and intentional harassment of Plaintiff Shaw, she seeks injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, and made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

70.     Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff Shaw with an improper and intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiff Shaw's rights.  Accordingly, she requests the assessment of punitive damages against Defendants, including NIKE and MAGEE, in an amount appropriate to punish and make an example of them.

## THIRD CAUSE OF ACTION
## VIOLATION OF FEHA FOR RETALIATION,
## GOVERNMENT CODE § 12940 (h) *et seq.*
### (By Plaintiff Shaw Against NIKE, and Doe Defendants, 1-100)

71.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 70 of this complaint as though fully set forth herein.

72.     Plaintiff Shaw alleges that Defendants retaliated against her.

73.     Plaintiff Shaw complained to her supervisors about unlawful discriminatory conduct against her.

74.     Defendants then twice refused to promote her and then constructively discharged her.

75.     Plaintiff's complaints regarding the discriminatory conduct were a substantially motivating factor in Defendants' decisions to retaliate against her, by refusing to promote her twice, and then constructively discharging her.

76.     As a proximate cause of Defendants' willful, knowing, and intentional retaliatory decisions Plaintiff Shaw has sustained and continues to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

77.     As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional retaliation against Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach, depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

78.     Plaintiff Shaw has incurred and continues to incur attorneys' fees and costs as a proximate cause of Defendants' discrimination against Plaintiff, in amount to be proven and seeks attorneys' fees pursuant to the FEHA.

79.     As a proximate result of Defendants' willful, knowing, and intentional retaliation against Plaintiff Shaw, Plaintiff Shaw seeks declaratory relief that she was unlawfully retaliated against by Defendants, including NIKE, to reaffirm Plaintiff Shaw's standing among her coworkers, the NIKE community, and the public, and to condemn NIKE'S unlaw retaliatory employment policies and/or practices.

80.     As a proximate result of NIKE'S willful, knowing, and intentional retaliation against Plaintiff Shaw, she seeks injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, and made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

81.     Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff Shaw with an improper and

intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiff Shaw's rights.  Accordingly, she requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## FOURTH CAUSE OF ACTION
## VIOLATION OF FEHA FOR FAILURE TO PREVENT DISCRIMINATION,
## HARASSSMENT AND RETALIATION,
## GOVERNMENT CODE § 12940 (k) *et seq.*
### (By Plaintiff Shaw Against NIKE, and Doe Defendants, 1-100)

82.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 81 of this complaint as though fully set forth herein.

83.     Plaintiff Shaw alleges that Defendants failed to take all reasonable steps to prevent discrimination, harassment, and retaliation based on her race and/or sexual preference.

84.     Plaintiff Shaw was an employee of Defendants providing services under an implied in fact contract.  She also applied for two promotions there, but was rejected.

85.     She was subjected to discrimination, harassment and retaliation in the course of that employment.

86.     Defendants failed to all reasonable steps to prevent the discrimination, harassment and retaliation.

87.     As a proximate cause of Defendants' willful, knowing, and intentional decision Plaintiff Shaw has sustained and continues to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

88.     As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional conduct toward Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach,

depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

89.     Plaintiff Shaw has incurred and continues to incur attorneys' fees and costs as a proximate cause of Defendants' failure to prevent discrimination, harassment and retaliation against Plaintiff, in amount to be proven and seeks attorneys' fees pursuant to the FEHA.

90.     As a proximate result of Defendants' willful, knowing, and intentional failure to prevent discrimination, harassment and retaliation against Plaintiff Shaw, Plaintiff Shaw seeks declaratory relief that Defendants failed to take reasonable steps to prevent discrimination, harassment and retaliation against Plaintiff, including NIKE and MAGEE, to reaffirm Plaintiff Shaw's standing among her coworkers, the NIKE community, and the public, and to condemn NIKE'S and MAGEE'S discriminatory, and abusive employment policies and/or practices.

91.     As a proximate result of Defendants willful, knowing, and intentional failure to prevent discrimination, harassment and retaliation against Plaintiff Shaw, she seeks injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, and made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

92.     Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff Shaw with an improper and intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiff Shaw's rights.  Accordingly, she requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## FIFTH CAUSE OF ACTION

### FAILURE TO PAY WAGES – VIOLATION OF LABOR CODE §§ 200, *et seq.*, and/or 1194/1197 *et seq.*

### (Plaintiff Shaw Against NIKE and Doe Defendants, 1-100)

93.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 92, as though fully set forth herein.

94.     Defendants and each of them were employers of Plaintiff Shaw pursuant to, *inter alia*, Labor Code § 18 and I.W.C. Wage Order 4-2001, which defines an employer for *wage claim* purposes. *Martinez v. Combs*, 49 Cal. 4th 35 (2010), and Labor Code section 2750.5.

95.     Each Defendant was an "employer" of Plaintiff under Labor Code section 18 and IWC Wage Order 4-2001, as periodically amended, as defined in Section 2 (H), because each was a "person" who controlled the wages, hours or working conditions of Plaintiff Shaw.  Defendants controlled Plaintiff Shaw's compensation by retaining the right to pay the compensation, up to and including complete forfeiture of all compensation, at their *sole* discretion, at any time. In addition to maintaining the right to control these wages, they actually controlled them by changing the compensation structure at their sole discretion and depriving Plaintiff of her compensation. Defendants also controlled the hours and place Plaintiff Shaw would conduct NIKE's training.

96.     Defendants intentionally failed to pay Plaintiff compensation, though they suffered and permitted her to work as their District Service Captain for approximately two years without pay, in violation of California Labor Code sections 203, 200, 1194, 1197.

97.     California Labor Code § 200 states in pertinent part that wages include all amounts for labor performed by employees of every description, while Labor Code § 201 states that wages for a discharged employee are due immediately.

98.     Defendants, and each of them, failed to pay Plaintiff all of her wages while she worked for Defendants, as well as upon her termination.

99.     No accounting was provided to Plaintiff upon his departure, nor during her tenure and she was not paid all compensation that was due her.

100.    As a direct and proximate result of Defendants' failure to pay Plaintiff for her work as a trainer, and to do so timely, Plaintiff Shaw has been damaged in an amount to be determined at trial.

101.    As a proximate result of Defendants' willful, knowing, and intentional failure to pay her proper wages, and to do so timely, Plaintiff seeks declaratory relief that she was wrongfully was not.

paid all wages timely due her, to reaffirm Plaintiff's standing among her coworkers, the NIKE community, and the public, and to condemn unlawful employment policies and/or practices of failure to pay wages.

102.    As a proximate result of Defendants' willful, knowing, and intentional failure to pay Plaintiff all wages due or and to do so timely, Plaintiff seeks injunctive relief to stop the practices, especially because the same and Managers and Executives and made or supported these practices, remain at NIKE. Therefore, the injunction will also have a favorable impact on the interests of the other employees and the public.

103.    Plaintiff has incurred and continues to incur legal expenses, costs of suit and attorneys' fees in a sum according to proof at trial, which he seeks pursuant to Labor Code sections 218.5 and interest pursuant to Labor Code section 218.6, as well as sections 1194 and 1197.

104.    Plaintiff additionally seeks liquidated damages pursuant to the Labor Code section 1194.2.

**SIXTH CAUSE OF ACTION**

**FAILURE TO INDEMNIFY –**

**VIOLATION OF LABOR CODE § 2802**
**(Plaintiff Shaw Against NIKE and Doe Defendants, 1-100)**

105.    Plaintiff hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 104, as though fully set forth herein.

106.    Pursuant to California Law, as set forth in Labor Code § 2802(a):

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or his duties, or of his or his obedience to directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Cal. Lab. Code § 2802

---

107.     Plaintiff Shaw paid all necessary expenses and incurred necessary losses for her employment as a District Service Captain in obedience to the directions of Defendants, and in direct consequence of the discharge of her duties, believing the directions lawful, including but not limited to gas, cell phone use and computer use.

108.     Plaintiff Shaw obeyed the directions of Defendants, to pay for all necessary expenses.

109.     As a direct and proximate result of Defendants' failure to indemnify Plaintiff Shaw, she has been damaged and suffered losses in an amount to be determined at trial.

110.     As a direct and proximate result of Defendants' failure to indemnify Plaintiff Shaw, she has incurred and continues to incur attorneys' fees, costs and interest in an amount to be determined at trial, and seeks them pursuant to this Labor Code section.

111.     Similarly, Defendants, and each of them, had a duty to indemnify Plaintiff under Corporations Code section 317 for those amounts actually reasonably incurred while she was their employee, and to pay for all monetary amounts incurred in having to file and litigate this case, which she seeks as well, in an amount to be determined.

**SEVENTH CAUSE OF ACTION**

**FAILURE TO PROVIDE AN ACCURATE, ITEMIZED WAGE STATEMENT AND**

**MAINTAIN ACCURATE RECORDS**

**VIOLATION OF LABOR CODE § 226**

**(Plaintiff Shaw Against NIKE and Doe Defendants, 1-100)**

112.     Plaintiff hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 111, as though fully set forth herein.

113.    Labor Code section 226(a) sets forth reporting requirements for employers regarding wage statements:

> "(a) An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment..."

and, Labor Code Section 226 (b) states that:

> "(b) An employer that is required by this code or any regulation adopted pursuant to this code to keep the information required by subdivision (a) shall afford current and former employees the right to inspect or receive a copy of records pertaining to their employment, upon reasonable request to the employer..."

114.    Defendants knowingly and intentionally failed to accurately record the true reporting information required of them on the wage statement much, less provide any wage statement at all for this purpose to Plaintiff Shaw, including but not limited to, showing the accurate gross wages earned, the accurate net wages earned, all deductions and the name and address of the legal entity of the employer(s).

115.    Defendants knowingly and intentionally failed to furnish Plaintiff Shaw with an accurate itemized statement meeting the statutory requirements upon each or any payment of wages.

---

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE
RELIEF
-23-

116.    Plaintiff Shaw was damaged by these failures because, among other issues, the failures led Plaintiff Shaw to believe that she was not entitled to be paid as an employee.  Also, Defendants' failure to comply with Labor Code § 226(a) hindered Plaintiff Shaw from determining the amounts owed her.

117.    As a direct and proximate result of Defendants' refusing to pay Plaintiff Shaw for her work as a District Service Captain, and their subsequent failure to provide Plaintiff Shaw with accurate, itemized wage statements and maintain accurate records, Plaintiff has been damaged in amount to be proven at trial to at least up $4000.00, and is entitled to an award of reasonable attorneys' fee and costs, which she seeks as she has incurred and continues to incur such reasonable attorneys' fees and costs, as a direct and proximate cause of Defendants' violation of this Labor Code section.

118.    Pursuant to this statute Plaintiff seeks injunctive relief in the form of an injunction prohibiting Defendants, and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them from engaging in each of the practices complained of in this cause of action, going forward, especially because the same Managers and Executives remain at NIKE, and made or supported these practices, Therefore the injunction will also have a favorable impact on the interests of the public.

amount to be determined.

## EIGHTH CAUSE OF ACTION

## CONSTRUCTIVE DISCHARGE IN VIOLATIONS OF PUBLIC POLICY

### (Plaintiff Shaw and Hernandez Against NIKE and Doe Defendants, 1-100)

119.    Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 118.

120.     Plaintiffs claim that Defendants forced them to resign for reasons that violate public policy, including but not limited to the afore described violations of the FEHA and the California Constitution.

121.  Plaintiffs were employed by Defendants.

122.  Plaintiffs were subjected to working conditions that violated public policy, including but not limited to being discriminated against, harassed and retaliated against in violation of the FEHA, and Plaintiff Shaw not being paid at all for the work she performed as a trainer for NIKE, which is less than minimum wage.

123.     Defendants intentionally created or knowingly permitted these working conditions.

124.     These working conditions were so intolerable that a reasonable person in Plaintiffs' position would have had no reasonable alternative except to resign.

125.     Plaintiff did resign because of these working conditions;

126.     As a direct and proximate result of Defendants' conduct and the resultant working conditions, Plaintiffs have been damaged in an amount to be determined at trial.

127.     The working conditions were a substantial factor in causing Plaintiffs' harm.

128.     As a proximate cause of Defendants' willful, knowing, and intentional decision Plaintiff have sustained and continue to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

129.     As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional conduct toward Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach, depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

130.    As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional conduct toward Plaintiff Hernandez, he has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as substantial digestive issues, depression, anxiety, sleeplessness, inability to concentrate, and kidney stones, among other physical and emotional injuries, all to his damage in a sum according to proof.

131.    Plaintiffs have incurred and continues to incur attorneys' fees and costs in a sum according to proof as a result of Defendants' conduct that violates public policy.

132.    As a proximate result of Defendants' willful, knowing, and intentional wrongful constructive discharge against Plaintiffs seek declaratory relief that Defendants that they were unlawfully constructively discharged in violation of public policy, to reaffirm their standing among their coworkers, the NIKE community, and the public, and to condemn NIKE'S and MAGEE'S intolerable employment policies and/or practices.

133.    As a proximate result of Defendants willful, knowing, and intentional failure to unlawful constructive discharge of Plaintiffs, against public policy, they seek injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, who made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

134.    Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiffs with an improper and intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiffs' rights.  Accordingly, they request the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## NINTH CAUSE OF ACTION

## NEGLIGENT HIRING, SUPERVISION AND RETENTION

### (Both Plaintiffs Against NIKE)

135.    Plaintiffs hereby restate, re-allege and incorporate by reference herein, paragraphs 1 through 134 of this complaint as though fully set forth herein.

136.    Plaintiffs claim that they were harmed by NIKE and that NIKE is responsible for that harm because NIKE negligently hired, supervised and retained MAGEE.

137.    Plaintiffs are informed and believes and thereupon alleges that NIKE hired MAGEE who was their employee.

138.    MAGEE was or became unfit to perform the work for which she was hired, which included but was not limited to, managing and hiring other employees to work for Defendants.

139.    NIKE knew or should have known that MAGEE was unfit or became unfit to do her job, and that this unfitness created a particular risk to others, including Plaintiffs, other employees and customers.

140.    NIKE's negligence in hiring, supervising and retaining MAGEE harmed Plaintiffs Shaw and Hernandez.

141.    NIKE's negligence in hiring, supervising and retaining MAGEE was a substantial factor in causing Plaintiffs Shaw and Hernandez's harm.

142.    As a proximate result of NIKE'S negligence, Plaintiffs have suffered and continue to suffer

143.    As a proximate result of NIKE'S despicable conduct, which was done with a willful and knowing disregard of the rights and safety of Plaintiffs, Plaintiffs have sustained and continue to sustain substantial losses in earnings and other benefits.

144.    Defendant has committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiffs with an improper and intentional motive amounting to fraud, malice and in conscious disregard of Plaintiff's rights.  Accordingly, Plaintiffs request the assessment of punitive damages against them, in an amount appropriate to punish and make an example of them.

**TENTH CAUSE OF ACTION**

## VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 *et seq.*

### (All Plaintiffs Against All Defendants)

145.    Plaintiffs hereby restate, re-allege and incorporate by reference herein, paragraphs 1 through 144 of this complaint as though fully set forth herein.

146.    Defendants, and each of them, are "persons" as defined under Business & Professions Code §§ 17021 and 17203.

147.    Each Defendant is equally responsible for the acts of the others as set forth in the Business and Professions Code §§ 17022 and 17024.

148.    Beginning at an exact date unknown to Plaintiff but at least as of April 2017, Defendants have committed acts of unfair competition, as defined by the Business and Professions Code § 17200, *et seq.*, in California, by engaging in the following practices: (1) discriminating against Plaintiffs in violation of the FEHA; (2) harassing Plaintiffs in violation of the FEHA; (3) retaliating against Plaintiffs in violation of the FEHA; (4) failing to prevent discrimination and/or harassment and/or retaliation in violation of the FEHA; (5) failing to pay Plaintiff Shaw all wages due and to do so timely in violation of the Labor Code; (6) failing to indemnify Plaintiff Shaw's expenses and losses in discharging her duties or in obedience to the directions of Defendants; (7) failure to provide accurate itemized wage statements to Plaintiff Shaw, and to maintain accurate records in violation of the Labor Code; (8) constructively terminating Plaintiffs in violation of the public policy, including but not limited to violating their civil rights, in violation of the FEHA and the California Constitution; and (9) negligently hiring, retaining and supervising managers such that employee are harmed.  Plaintiffs suffered injury in fact caused by these practices.

149.    These acts, patterns and practices as described in the paragraph above, violate Business & Professions Code section 17200 in the following respect in California:

150.    Defendants' policy and practice of discriminating against Plaintiffs based on their race and/or sexual preference and /or ancestry violates the FEHA as well as the California Constitution.

This discrimination consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

151.    The harm to Plaintiffs, and the other NIKE managers who are of the same race and/or sexual preference and /or ancestry, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of such discrimination constitutes an unfair business act of practice within the meaning of Business & Professions Code section 17200, *et seq.*  Any person, including Plaintiffs who wants to be a NIKE manager in California and invests his or her time and resources would be unavoidably deceived as to what treatment they are entitled to by law, and based on the substantial public policies of California that workers should not be discriminated against.  Defendants' practice of discrimination abrogates those policies rendering Defendants' practice of discriminating unfair.

152.    Defendants' policy/practice of unlawful discrimination against NIKE managers, including Plaintiffs, is likely to deceive and/or create confusion by the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq.* It would also be deceptive and confusing to the general public might be a member of a protected class who would then be discriminated against if hired.

153.    Defendants' policy and practice of harassing Plaintiffs based on their race and/or sexual preference and /or ancestry violates the FEHA.  This harassment consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

154.    The harm to Plaintiffs, and the other NIKE managers who are of the same race and/or sexual preference and /or ancestry, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of such harassment based on protected characteristics constitutes an unfair business act of practice within the meaning of Business & Professions Code section 17200, *et seq.* Any person, including Plaintiffs who wants to be a NIKE manager in California and invests his or her time and resources would be unavoidably deceived as to what treatment they are entitled to by law, and based on the substantial public policies of California that workers should not be unlawfully

harassed. Defendants' practice of unlawful harassment abrogates those policies rendering Defendants' practice of discriminating unfair.

155.    Defendants' policy/practice of unlawful harassment against NIKE managers, including Plaintiffs, is likely to deceive and/or create confusion by the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*. It would also be deceptive and confusing to the general public who might be a member of a protected class who would then be unlawfully harassed if hired.

156.    Defendants' policy and practice of retaliating against Plaintiffs for complaining about unlawful discrimination and harassment violates the FEHA. This retaliation consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

157.    The harm to Plaintiffs, and the other NIKE managers who are of the same race and/or sexual preference and /or ancestry, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of such retaliation constitutes an unfair business act of practice within the meaning of Business & Professions Code section 17200, *et seq*. Any person, including Plaintiffs who wants to be a NIKE manager in California and invests his or her time and resources would be unavoidably deceived as to what treatment they are entitled to by law, and based on the substantial public policies of California that workers should not be unlawfully retaliated against. Defendants' practice of unlawful retaliation abrogates those policies rendering Defendants' practice of such retaliation unfair.

158.    Defendants' policy/practice of unlawful retaliation against NIKE managers, including Plaintiffs, is likely to deceive and/or create confusion by the public when NIKE claims to adhere to state and federal law and support minorities, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*. It would also be deceptive and confusing to the general public who might be a member of a protected class who

would then be unlawfully retaliated against if they complain about unlawful discrimination or harassment.

159.    Defendants' policy and practice of failing to prevent discrimination, harassment and/or retaliation based on race and/or sexual preference and /or ancestry violates the FEHA.  This failure consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

160.    The harm to Plaintiffs, and the other NIKE managers who are of the same race and/or sexual preference and /or ancestry, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of failing to prevent discrimination, harassment and/or retaliation based on race and/or sexual preference and /or ancestry constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq*.  Any person, including Plaintiffs who wants to be a NIKE manager in California and invests his or her time and resources would be unavoidably deceived as to what treatment they are entitled to by law, and based on the substantial public policies of California which state that workers should not be unlawfully discriminated against, harassed or retaliated against, as well.  Defendants' practice of unlawfully failing to prevent discrimination, harassment and/or retaliation based on race and/or sexual preference and /or ancestry abrogates those policies rendering Defendants' practice of failing to prevent such discrimination, harassment and/or retaliation, unfair.

161.    Defendants' policy/practice of unlawful discrimination, harassment and/or retaliation, including against Plaintiffs, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*. It would also be deceptive and confusing to the general public who might be a member of a protected class who would then unlawfully suffer discrimination, harassment and/or retaliation which NIKE did not take reasonable steps to prevent.

162.     Defendants' policy and practice of failing to pay employees all wages due and to do so timely, violates the Labor Code.  This failure consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

163.     The harm to Plaintiffs, and the other NIKE managers who are suffered and permitted to work for NIKE without pay, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of failing to failing to pay employees all wages due constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq.* Any person, including Plaintiffs who wants to be a work for NIKE in California and invests his or her time and resources would be unavoidably deceived as to what payment they are entitled to by law, and based on the substantial public policies of California which state that workers should be paid for all hours worked.  Defendants' practice of unlawfully failing to pay employees all wages due abrogates those policies rendering Defendants' practice unfair.

164.     Defendants' policy/practice of failing to pay employees all wages due, including against Plaintiff Shaw, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq.* It would also be deceptive and confusing to the general public who might be a not want to support businesses who don't pay their employees lawfully.

165.     Defendants' policy and practice of indemnify their employees for expenses incurred for their jobs violates the Labor Code.  This failure consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

166.     The harm to Plaintiffs, and the other NIKE managers who are suffered and permitted to pay NIKE'S expenses and not be reimbursed for them, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq.* Any person, including Plaintiffs who wants to be a work for NIKE in California and invests resources at the direction of NIKE would be unavoidably deceived as to what indemnification they are entitled to by law, and

based on the substantial public policies of California which state that workers should be indemnified.  Defendants' practice of unlawfully failing to indemnify their employees renders NIKE'S practice unfair.

167.     NIKE's policy/practice of failing to indemnify their employees, including against Plaintiff Shaw, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, and consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*. It would also be deceptive and confusing to the general public who might be a not want to support businesses who don't indemnify their employees lawfully.

168.     Defendants' policy and practice of failing to give employees accurate itemized wage statements and maintain accurate records, violates the Labor Code.  This failure consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

169.     The harm to Plaintiffs, and the other NIKE managers who are not provided with the accurate itemized wage statements and whose records are maintained, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of give employees accurate itemized wage statements and maintain accurate records constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq*.  Any person, including Plaintiffs who works for NIKE in California and invests his or her time and resources would be unavoidably deceived as to what payments they are entitled to by law, which could not be documented in a wage statement or accurate records.  Defendants' practice of abrogates the law rendering Defendants' practice unfair.

170.     Defendants' policy/practice of give employees accurate itemized wage statements and maintain accurate records, including against Plaintiff Shaw, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*.

171.   Defendants' policy and practice of wrongfully constructively terminating managers, including Plaintiffs, in violation of public policy, violates the law.  This practice consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

172.   The harm to Plaintiffs, and the other NIKE managers who NIKE wrongfully, terminates against public policy outweighs the utility of NIKE'S policy/practice and, consequently, Defendants' practice constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq*.

173.   Defendants' policy/practice of wrongfully constructively terminating managers, including Plaintiffs, in violation of public policy, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*.

174.   Defendants' policy and practice of negligently hiring, retaining and supervising unfit senior managers, including MAGEE, who then harm their subordinates, violates the law.  This practice consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

175.   The harm to Plaintiffs, and the other NIKE managers who are harmed by unfit senior management who are negligently hired, retained and/or supervised, outweighs the utility of NIKE'S policy/practice and, consequently, Defendants' practice constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq*.

176.   Defendants' policy/practice of negligently hiring, retaining and supervising unfit senior managers, including MAGEE, who then harm their subordinates, including Plaintiffs, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*.

177.   NIKE'S and/or MAGEE'S unlawful, unfair and fraudulent business practices, described above, present a continuing threat to members of the public and those who become NIKE managers, as examples.

178.   Plaintiffs and the other members of the general public have no other adequate remedy at law to vindicate these §17200 equitable UCL claims.

179.   As a result of the aforementioned acts and practices, Plaintiffs have lost money and/or property and suffered injury in fact, in an amount to be determined at trial.

180.   Defendants' acts and practices constitute continuing and ongoing unfair, fraudulent and/or unlawful activity prohibited by Business & Professions Code § 17200 *et seq*., and justify the issuance of an injunction, restitution and other equitable relief enjoining Defendants from continued unfair competition practices and from withholding Plaintiffs' money.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for relief and judgment against Defendants as follows:

## FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION
## [FOR PLAINTIFF SHAW]

1.   For back pay, according to proof;

2.   For reinstatement under different managers or front pay, according to proof;

3.   For judgment interest on any monetary award at the legal rate under the Civil Code;

4.   For attorneys' fees and costs pursuant to the FEHA;

5.   For compensatory damages for pain and suffering;

6.   For punitive damages;

7.   For injunctive and/or declaratory relief;

## FIFTH, SIXTH, AND SEVENTH, CAUSES OF ACTION
## [FOR PLAINTIFF SHAW]

8.      For unpaid wages, according to proof;

9.      For special damages, according to proof;

10.     For interest on any monetary award at the legal rate;

11.     For attorneys' fees pursuant to statute as laid out above;

12.     For liquidated damages, according to proof;

13.     For damages for failure to receive and accurate wage statement and to maintain records, in a sum according to proof up to $4000;

14.     For injunctive relief and declaratory relief;

## EIGHTH CAUSE OF ACTION

### [FOR PLAINTIFFS SHAW AND HERNANDEZ]

15.     For back pay, according to proof;

16.     For reinstatement under different managers or front pay, according to proof;

17.     For judgment interest on any monetary award at the legal rate under the Civil Code section 3289;

18.     For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5;

19.     For costs of suit under the Code of Civil Procedure;

20.     For compensatory damages for pain and suffering;

21.     For punitive damages;

22.     For injunctive and/or declaratory relief;

## NINTH CAUSE OF ACTION

### [FOR PLAINTIFFS SHAW AND HERNANDEZ]

23.     For general damages;

24.     For special damages;

25.     For costs of suit;

26.     For interest on any monetary award at the legal rate;

27.     For punitive damages

### SIXTEENTH CAUSE OF ACTION

28.     For restitution;

29.     For declaratory and injunctive relief as laid out above;

30.     For reinstatement;

31.     Pursuant to Business & Professions Code § 17203, and pursuant to the equitable powers of this Court, Plaintiff prays for restitution such that Defendants be ordered to restore to Plaintiff all funds acquired by means of any act or practice declared by this Court to be unlawful, or fraudulent or to constitute unfair competition affecting Plaintiffs, pursuant to Business & Professions Code § 17200 *et seq.,* and as restitution;

32.     In addition to any other remedy that has been ordered, that the Court order NIKE to prominently display on each of its publicly accessible internet websites, in an area that is accessible to all NIKE and employees, and to the general public, in California, notice that sets forth all of the following:

        (a)     That the Court has found that Defendants, or any of them if less that all, committed a serious violation of the law by engaging in willful unlawful discrimination, harassment and retaliation of managerial employees;

        (b)     That Defendants, or any of them if less than all, has changed its business practices in order to avoid committing further civil rights violations;

        (c)     That any employee who believes that he or she is being unlawfully discriminated against, harassed or retaliated against may contact the Department of Fair Employment and Housing, or an attorney. The notice shall include the mailing address, email address and telephone number of the agency.

        (d)     That notice is being posted pursuant to a California state order.

        (e)     In addition, including the specified information listed above, Defendants, or any of them if less that all:

---

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE
RELIEF
-37-

I.      An officer shall sign the notice;

II.      It or they shall post the notice for one year commencing with the date of the final decision and order.

33.   For costs of suit;

34.   For attorney fees, pursuant to Code of Civil Procedure § 1021.5 or the statutes stated above;

## ALL CAUSES OF ACTION

35.   For such other and further relief as the Court may deem just and proper, including but not limited to injunctive and declaratory relief and attorneys' fees.

Dated this 8th of April, 2021

THE ANFANGER LAW OFFICE

Nancy B. Anfanger
Attorney for Plaintiffs
Brittney Shaw and Edgar Hernandez

---

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE
RELIEF
-38-

1

2
## DEMAND FOR JURY TRIAL

3
Plaintiffs demand a jury trial on all causes of action, with the exception of the equitable

4
claims.

5
Dated this 8th of April, 2021

6
THE ANFANGER LAW OFFICE

7

8
Nancy B. Anfanger

9
Attorney for Plaintiffs
Brittney Shaw and Edgar Hernandez

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE

27
RELIEF
-39-

28

# EXHIBIT 2

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Vannie Karapetian (SBN 324274)
vannie.karapetian@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Attorneys for Defendant
NIKE RETAIL SERVICES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTNEY SHAW, an individual, and EDGAR HERNANDEZ, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE RETAIL SERVICES, INC., an Oregon corporation; WENDY MAGEE, an individual, and DOES 1-100 inclusive,<br><br>Defendants. | Case No.  2:21-CV-04322<br><br>**NIKE RETAIL SERVICES, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446**<br><br>**[DIVERSITY JURISDICTION]**<br><br>(Los Angeles County Superior Court, Case No. 20STCV13349)<br><br>Complaint Filed:  April 8, 2021<br>Trial Date:  None Set<br><br>[Filed concurrently with (i) Declaration of Joshua Simko, (ii) Civil Case Cover Sheet] |

1

**NIKE RETAIL SERVICES, INC.'S NOTICE OF REMOVAL**

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, Defendant NIKE Retail Services, Inc. ("Defendant" or "NIKE") hereby removes the above-entitled action from the Superior Court of the State of California in and for the County of Los Angeles, Stanley Mosk Courthouse, Case No. 21STCV13349 to the United States District Court for the Central District of California.  This Court has diversity jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

**I.  BACKGROUND AND PLEADINGS**

1.  On April 8, 2021, Plaintiffs filed this underlying lawsuit against NIKE and Wendy Magee ("Magee") in the Superior Court of the State of California, County of Los Angeles, Case No. 21STCV13349 (the "State Court Action").  In the Complaint, Plaintiffs allege the following claims for relief against NIKE:  (1) employment discrimination based on race and/or sexual preference in violation of the Fair Employment and Housing Act (the "FEHA"); (2) violation of the FEHA for work environment harassment; (3) violation of the FEHA for retaliation, (4) violation of the FEHA for failure to prevent discrimination, harassment and retaliation; (5) failure to pay wages in violation of California Labor Code Sections 200, *et seq.* and/or Sections 1194/1197, *et seq.*; (6) failure to indemnify in violation of Labor Code Section 2802; (7) failure to provide an accurate, itemized wage statement and maintain accurate records in violation of California Labor Code Section 226; (8) constructive discharge in violation of public policy; (9) negligent hiring, supervision and retention, (10) violation of Business and Professions Code Section 17200, *et seq.* Neither NIKE nor Magee have been served with the Summons or the Complaint.

2.  A true and correct copy of the Complaint filed in the State Court Action and downloaded from the State Court's electronic docket is attached hereto as **Exhibit 1**. A true and correct copy of the Summons filed in the State Court Action and

**NIKE RETAIL SERVICES, INC.'S NOTICE OF REMOVAL**

downloaded from the State Court's electronic docket is attached hereto as **Exhibit 2**. A true and correct copy of the Civil Case Cover Sheet filed in the State Court Action and downloaded from the State Court's electronic docket is attached hereto as **Exhibit 3**. A true and correct copy of the Notice of Case Assignment filed in the State Court Action and downloaded from the State Court's electronic docket is attached hereto as **Exhibit 4**. A true and correct copy of the Notice of Case Management Conference filed in the State Court Action and downloaded from the State Court's electronic docket is attached hereto as **Exhibit 5**. A true and correct copy of NIKE's Answer to the Complaint filed in the State Court Action is attached hereto as **Exhibit 6**. These material comprise "all process, pleadings, and orders" filed in the State Court Action, which have not yet been served on NIKE or Magee, but which constitute the entirety of the record in the State Court Action. *See* 28 U.S.C. § 1446(a).

## II. THIS COURT HAS DIVERSITY JURISDICTION OVER THIS MATTER

3. This Court's subject-matter jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §§ 1332(a) and 1441. This Court has original jurisdiction over all civil actions between citizens of different states or citizens of a state and citizens of a foreign state where the amount in controversy exceeds the sum or value of $75,000.

### A. Plaintiffs are Citizens of California

4. To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States and (b) a domiciliary of one particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). Here, NIKE is informed and believes that Plaintiffs are, and at all times since the commencement of this action have been, citizens and residents of the State of California. NIKE alleges that at the time the State Court Action was filed and at the time of the filing of this Notice, Plaintiffs were, and still

are, natural persons domiciled and residing in the State of California and are citizens of the State of California.

**B. NIKE is a Citizen of Oregon**

5.  NIKE is not a citizen of California. For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). The "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," i.e., the corporation's "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 81 (2010). The relevant considerations under the "nerve center" test include the following: (a) where the directors and stockholders meet; (b) where the executives live and have their offices; (c) where the administrative and financial offices are located and the records kept; (d) where the corporate income tax return is filed; (e) where the "home office" is located; and (f) where day-to-day control of the business is exercised. *See Unger v. Del E. Webb Corp.*, 233 F. Supp. 713, 716 (N.D. Cal. 1964).

6.  NIKE is a corporation organized under the laws of Oregon. (Declaration of Joshua Simko ("Simko Decl."), ¶ 2, ¶ 6, Ex. 1.) NIKE's principal place of business is located in Oregon as well. (*Id.* at ¶ 4, ¶ 6, Exh. 1) The corporate headquarters in Oregon is the actual center of direction, control and coordination of all major human resources, payroll, and administrative functions for NIKE. (*Id.* at ¶ 4) The respective officers for these departments work in Oregon and are responsible for developing policies and protocols for NIKE's operations. (*Id.* at ¶¶ 4, 5) NIKE's corporate headquarters and nerve center were, at the time of filing of the State Court Action, and remain to date, located in Oregon. As such, NIKE is a citizen of the state of Oregon only, and *not* California. (*See* Complaint, ¶ 8).

7.  For purposes of diversity of citizens, there exists complete diversity of citizenship between NIKE and Plaintiffs. NIKE has not been served with the Summons, Complaint or any other court documents in this matter to date.

**NIKE RETAIL SERVICES, INC.'S NOTICE OF REMOVAL**

**C. Magee is Citizen of California, But She Has Not Been Served with the Complaint**

8.      NIKE is informed and believes that Magee is, and at all times since the commencement of this action was, a citizen and resident of the State of California. NIKE alleges that at the time the State Court Action was filed and at the time of the filing of this Notice, Magee was, and still is, a natural person domiciled and residing in the State of California and is a citizen of the State of California. Magee has not been served with the Summons, Complaint or any other court documents in this matter to date.

**D. If The Forum Defendant Has Not Been Served, The Non-Forum Defendant May Remove the Case**

9.      Under the forum defendant rule, a defendant that is a citizen of the forum state cannot remove a lawsuit to federal court based on diversity jurisdiction.  See, 28 U.S.C. 1441 (b) (2) (civil action may not be removed solely on the basis of Section 1332 "if any of the parties in interest **properly joined and served** as defendants is a citizen of the State in which such action is brought") (emphasis added).   Here, the forum defendant is Magee.  The forum defendant rule, however, does not prevent NIKE removing the case because the forum defendant (Magee) has **not** been "properly served and joined."  In fact, neither NIKE nor Magee have yet been served with the Summons and Complaint.  Consequently, removal is proper and this Court has jurisdiction over the matter.

10.      Federal courts in California have repeatedly held that "a defendant may remove an action prior to receiving proper service, even when the defendant resides in the state in which the plaintiff filed the state claim." *Sherman v. Haynes & Boone*, No. 14-CV-01064-PSG, 2014 WL 4211118, at *1 & n.8 (N.D. Cal. Aug. 22, 2014) (citing cases); *see also Regal Stone Ltd. v. Longs Drug Stores Cal.*, LLC, 881 F. Supp. 2d 1123, 1127 (N.D. Cal. 2012) (holding "that the clear and unambiguous language of

the statute only prohibits removal **after a properly joined forum defendant has been served**")(emphasis added). As recently recognized:

> By its plain language, 28 U.S.C. § 1441(b)(2) permits an in-state defendant who has not been both joined *and served* to remove a case to federal court on the basis of diversity jurisdiction. Here, it is undisputed that Defendants removed Plaintiff's Complaint before any Defendants were served. Thus, Defendants' notice of removal was not procedurally improper, and remand is not warranted.

*Monfort v. Adomani, Inc.*, No. 18-CV-05211-LHK, 2019 WL 131842, at *4 (N.D. Cal. Jan. 8, 2019); *Glob. Indus. Inv. Ltd. v. Chung*, No. 19-CV-07670-LHK, 2020 WL 2027374, at *2 (N.D. Cal. Apr. 28, 2020)(affirming holding in *Monfort*).

The majority of federal circuit courts to consider this matter have all held that "[b]y its text, ... Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as federal district court can assume jurisdiction over the action." *Gibbons v. Bristol Myers Squibb Co.*, 919 F.3d 699, 705 (2nd Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3rd Cir. 2018)("Starting with the text, we conclude that the language of the forum defendant rule in section 1441(b)(2) is unambiguous. Its plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served."); *see Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020); *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001).

Therefore, so long as a forum-state defendant has not yet been served, an out of state defendant—even if served—may properly remove a case to federal court based upon diversity jurisdiction. *See Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d at 486 (denying motion to remand where out of state defendant was served with process and immediately removed the case to federal court before in-state defendants were served with process).

11.     Here, neither NIKE nor Magee have been served with the Summons and the Complaint, therefore removal is proper and this Court has jurisdiction over this matter.

### E. The Citizenship of the Doe Defendants Must Be Disregarded

12.     Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants is disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants 1 through 100, inclusive, does not deprive this Court of jurisdiction.

### F. The Amount in Controversy Exceeds $75,000

13.     This action is a civil action wherein the amount in controversy exceeds $75,000, exclusive of interest and costs, and accordingly, this Court has original jurisdiction under 28 U.S.C. §§ 1332(a). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Defendants can establish the amount in controversy by the allegations in the complaint, or by setting forth facts in the notice of removal that demonstrate that the amount placed in controversy by plaintiffs exceeds the jurisdictional minimum. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). The District Court may consider whether it is facially apparent from the Complaint that the jurisdictional amount is in controversy. *Id.* Therefore, NIKE only needs to show that there is "a reasonable probability that the stakes exceed" $75,000. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). NIKE need not provide this Court with "proof" or "evidence" that Plaintiff actually will recover more than $75,000; rather, removal is proper as long as the amount in controversy can be met. *See Brill*, 427 F.3d at 448-49.

14.     The amount in controversy for purposes of diversity jurisdiction is the total "amount at stake in the underlying litigation." *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005). Moreover, "the amount in controversy is simply an *estimate* of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'n, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (emphasis added). "[I]n assessing the estimated amount in controversy, a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Sasso v. Noble Utah Long Beach*, *LLC*, No. CV 14-09154-AB AJWX, 2015 WL 898468, at *3 (C.D. Cal. Mar. 3, 2015) (internal citations omitted). The ultimate inquiry is what amount is put "in controversy" by the Complaint, not what NIKE will actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).

15.     Where at least one named plaintiff in a lawsuit satisfies the amount in controversy requirement, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over the claims of the other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in Section 1332. *Exxon Mobil Corp. v. Allapattah Svcs, Inc.*, 545 U.S. 546, 549 (2005). In other words, removal is proper even if only one plaintiff has a claim over $75,000 because a federal court can exercise supplemental jurisdiction over any other plaintiff's claims.

16.     Here, although Plaintiffs do not pray for a specific dollar amount, Plaintiff Shaw alleges claims for: (1) employment discrimination based on race and/or sexual preference in violation of the FEHA; (2) violation of the FEHA for work environment harassment; (3) violation of the FEHA for retaliation, (4) violation of the FEHA for failure to prevent discrimination, harassment and retaliation. (*See generally* Complaint).

17.     Nevertheless, the amount in controversy is clearly met here when the potential amount at stake is valued with respect to Shaw's FEHA related claims by themselves, without having to resort to the other claims alleged in the Complaint,

**NIKE RETAIL SERVICES, INC.'S NOTICE OF REMOVAL**

including Plaintiff Hernandez's claims. *See Jackson v. American Bankers Ins. Co.*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997) ("[t]he appropriate measure [of the amount in controversy] is the litigation value of the case assuming that the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint"); *see also Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (amount in controversy is based on assumption that plaintiff prevails on all claims).

18. Here, Shaw seeks the following damages related to the FEHA claims: (1) back pay; (2) reinstatement under different managers or front pay, according to proof; (3) judgment interest on any monetary award at the legal rate under the Civil Code; (4) attorneys' fees and costs pursuant to the FEHA; (5) compensatory damages for pain and suffering; (6) punitive damages; (7) injunctive and/or declaratory relief. (*See* Complaint p. 35-38, "Prayer for Relief").

19. **Back Pay**: Shaw alleges racial and sexual orientation discrimination claims under the FEHA. (*See generally* Complaint.) If these claims are successful, Shaw would be entitled to an award of back pay. *Harrod v. Bass Pro Outdoor World, L.L.C.*, 2018 WL 705541 at *2 (C.D. Cal. Feb. 5, 2018) ("On Plaintiff's FEHA claims, she can seek an award of back pay from the time of the unlawful adverse action until the date of judgment. . .."). Back pay includes "not only the periodic monetary earnings of the employee but also the other benefits" to which the employee is entitled to as part of his or her compensation. *Wise v. Southern Pac. Co.*, 1 Cal. 3d 600, 607 (1970); *see also Andrade v. Arby's Restaurant Group, Inc.*, 225 F. Supp. 1115, 1140 (N.D. Cal. 2016)(explaining that back pay "is lost-wages damages through the time of trial").

While Shaw did not provide a specific dollar amount for her FEHA related claims, conservatively assuming that this matter is resolved by trial within 12 months, Shaw would be entitled to more than two years and ten months worth of back pay and

benefits[1]. In 2017, Shaw's last full-year working at NIKE, Shaw earned a total of $58,913.41 in wages. Therefore, Plaintiff's potential back pay award would be at least $164,957.55[2]. This figure is a conservative estimate and does not take into account Shaw's subsequent pay increase in 2018. Thus, Shaw's back pay alone satisfies the amount in controversy requirement of more than $75,000.

20. **Front Pay**: While any award of front pay is highly speculative, courts that have awarded such damages in FEHA cases have held that a plaintiff could receive at least two years of front pay. *Horsford v. Board of Trustees of Calif. State Univ.*, 132 Cal. App. 4th 359, 388-89 (2005). Therefore, Shaw could potentially recover at least another $117,826.82 in front pay alone, which is more than $75,000 necessary for diversity jurisdiction.[3]

21. **Attorneys' Fees**: Under the FEHA, Plaintiff Shaw has also demanded attorneys' fees. (*See* Prayer for Relief.) Attorneys' fees may be awarded to a prevailing plaintiff in a FEHA action. *See* Cal. Gov't Code § 12965(b); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (where attorneys' fees are allowed by statute, they are considered as part of the amount in controversy calculation). Recent authority has clarified that this must include all attorneys' fees likely to be incurred through trial of an action. *See Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy.") One court in the Central District of California has opined that a reasonable rate for an attorney would be at least $300 per hour and a reasonable number of hours would be at least 100 – 300 hours. *Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-09154-AB AJWX, 2015 WL 898468, at *1 (C.D. Cal. Mar. 3, 2015). Those assumptions would lead to

---

[1] Shaw alleges she was constructively discharged from NIKE in July of 2019. (Complaint, ¶ 5). Assuming this matter is concluded within 12 months of removal in May of 2021, Shaw will have been out of work for approximately 2 years and 10 months.
[2] $58,913.41 total wages in 2017 x 2.8 = $164,957.55.
[3] $58,913.41 total wages in 2017 x 2 years = $117,826.82.

NIKE RETAIL SERVICES, INC.'S NOTICE OF REMOVAL

an attorney's fee award of between $30,000 and $90,000. *Id.* If Plaintiff Shaw alone litigated this case through trial and prevailed, it is reasonable to assume that the recovery of fees itself would exceed $75,000.

22. **Emotional Distress Damages**: Shaw also seeks emotional distress damages for wrongful termination. (*See* Prayer for Relief) A prevailing plaintiff in a wrongful termination action is entitled to seek damages for emotional distress. *See Gantt v. Sentry Insurance*, 1 Cal. 4th 1083, 1098-1101 (1992) (overruled on other grounds by *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 90 (1998)). The emotional distress component of Plaintiffs' alleged damages must be considered in determining whether the amount in controversy requirement has been established. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). A defendant may use damage awards in other cases to establish that the amount in controversy exceeds $75,000. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002). Juries in California have awarded well in excess of $75,000 for emotional distress damages in discrimination and wrongful termination cases, like this one. *See, e.g., Bradley v. Department of Corrections & Rehabilitation*, 158 Cal. App. 4th 1612, 1618 (2008) (awarding a single plaintiff $300,000 in non-economic damages for harassment claim); *Roby v. McKesson*, 47 Cal. 4th 686, 699 (2009) (awarding a single plaintiff $1,600,000 in non-economic damages for three separate counts of wrongful termination (later reduced by stipulation to $800,000), as well as an additional $600,000 in non-economic damages for harassment); *Wang v. Reese Scientific Corp.*, San Francisco Superior Court Case No. CGC-13-528233 (awarding plaintiff $166,302 for emotional distress damages on claims including discrimination and wrongful termination); *Stallworth v. City of L.A., Los Angeles*, Superior Court Case No. BC341480 (awarding $100,000 in emotional distress damages on race discrimination and retaliation claims). Thus, if Shaw is able to prove her claims at trial, it is reasonable to conclude that she will seek, and a jury may award, in excess of $75,000 for emotional distress damages alone.

23.     Based on the foregoing, there is ample evidence that the amount in controversy, based on the totality of Plaintiffs' claims and prayer for relief significantly exceeds $75,000.  *See White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003) ("the lengthy list of compensatory and punitive damages sought by [the plaintiff], when combined with attorney's fees demonstrated that the amount in controversy exceeded $75,000").  Therefore, removal is appropriate and proper.

## III.     THIS REMOVAL NOTICE IS PROCEDURALLY PROPER

24.     **The Removal Venue Is Proper**.  Venue lies in the Central District of California pursuant to 28 U.S.C. §§ 1441, 1446(a), and 84(c)(2).  This action was originally brought within a county encompassed by the Central District of California—the Superior Court of the State of California, County of Los Angeles.

25.     **The Removal is Timely**.  Plaintiffs have not yet served the Summons or Complaint on NIKE. Therefore, pursuant to 28 U.S.C. § 1446(b) and Federal Rules of Civil Procedure 6 and 81(c), time to remove this matter has not yet been triggered.

26.     **NIKE Has Sufficient Consent**.  NIKE is not required to investigate the identity of the unnamed defendants nor to obtain their consent for removal.  *See Necombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998); 28 U.S.C. § 1441(a).  In any event, no Doe defendant has been served.  NIKE is not required to obtain consent to remove from defendants who have not been served.  *See Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984), superseded by statute on other grounds as stated in *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1392 (9th Cir. 1988).  No defendants have been served in this matter. Therefore, NIKE has sufficient consent to remove the State Court Action.

## IV.     NOTICE OF REMOVAL TO PLAINTIFF AND THE STATE COURT

27.     Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of the removal will be served upon counsel for Plaintiffs and a copy of this Notice of

Removal will be filed with the Clerk of the Superior Court of California, County of Los Angeles, as required by 28 U.S.C. § 1446(d).

**V.     CONCLUSION**

28.     For all the reasons identified above, NIKE respectfully requests that this Court proceed with this matter as if the case had been originally filed in the U.S. District Court for the Central District of California.


K&L GATES LLP


Dated: May 24, 2021                    By:    */s/ Vanuhi Karapetian*
                                              Paul W. Sweeney, Jr.
                                              Vanuhi Karapetian

                                              Attorneys for Defendant
                                              NIKE RETAIL SERVICES, INC.

**NIKE RETAIL SERVICES, INC.'S NOTICE OF REMOVAL**

EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles on 04/08/2021 09:26 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez Deputy Clerk
Case 2:21-cv-04322-SB-MRW Document 1 Filed 05/24/21 Page 71 of 161 Page ID #:216
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Yolanda Orozco

Nancy B. Anfanger [SBN 225421]
THE ANFANGER LAW OFFICE
9440 Santa Monica Boulevard
Suite 301
Beverly Hills, California 90210
Telephone: (310) 402-8937

Attorney for Plaintiffs Brittney Shaw and
       Edgar Hernandez

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| Brittney Shaw, an individual, and Edgar Hernandez, an individual,<br><br>     Plaintiffs,<br><br>  vs.<br><br>Nike Retail Services, Inc., an Oregon corporation, Wendy Magee, an individual, and DOES 1 through 100, inclusive,<br><br>     Defendants. | Case No.:   21STCV13349<br><br>Assigned to the Hon.<br>Department<br><br>**PLAINTIFFS BRITTNEY SHAW AND EDGAR HERNANDEZ'S COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE RELIEF**<br><br>1. Violation of the FEHA (discrimination based on race and/or sexual preference)<br>2. Violation of the FEHA (harassment)<br>3. Violation of the FEHA (retaliation)<br>4. Violation of the FEHA (failure to prevent discrimination, harassment, retaliation)<br>5. Failure to Pay Wages (Violation of Labor Code § 1194/1197 *et seq.*)<br>6. Failure to Indemnify (Violation of Labor Code § 2802)<br>7. Failure to Provide an Accurate, Itemized Wage Statement/Keep Accurate Records (Violation of Labor Code § 226)<br>8. Wrongful Constructive Termination in Violation of Public Policy<br>9. Negligent Supervision<br>10. Unfair Business Practices (Violation of California Business and Professions Code § 17200 *et seq.*) |

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE
RELIEF
-1-

)
) **DEMAND FOR A JURY TRIAL**
)
)

Come now Plaintiffs Brittney Shaw and Edgar Hernandez who allege and complain against Defendants Nike Retail Services, Inc., (hereinafter "NIKE"), and Wendy Magee, ((hereinafter "MAGEE"), and DOES 1 through 100, inclusive (hereinafter collectively "Defendants"):

## I.
## JURISDICTION AND VENUE

1.     Jurisdiction and venue are proper in this Court because some or all of the claims alleged herein arose in Los Angeles County and some or all of the parties were and/or are residents of Los Angeles County or are doing or did business in Los Angeles County at all times relevant herein.

2.     The amount in controversy in this matter exceeds the sum of $25,000.00 exclusive of costs and interest.

## II.
## PARTIES

3.     At all times herein mentioned Plaintiffs Brittney Shaw and Edgar Hernandez were and are individuals conducting business, in the County of Los Angeles, State of California.

### PLAINTIFF BRITTNEY SHAW

4.     Brittney Shaw ("Plaintiff Shaw") began working for NIKE in or around 2007 as a part-time employee, while she was in college.   She eventually became a full-time employee and the full-time manager at NIKE'S Santa Monica retail store.  She was a manager for seven years prior to her constructive termination. She was successful in her tenure and received numerous accolades for her work by NIKE, and in addition to her other managerial duties, she was chosen to be a trainer in NIKE'S pilot program called District Service Captain wherein she was responsible for the training of hundreds of new NIKE employees over an approximately 2-year period at approximately 8

different NIKE stores for which she was not paid, and for which she incurred expenses, other than

for mileage. Plaintiff Shaw is an African-American female, who is a lesbian.

5.     During the entirety of her tenure with NIKE, Plaintiff Shaw fully and satisfactorily

performed her career agent duties, except as to those duties, which were waived, excused, prevented

by Defendants, or any of them, until she was forced out of the company in or around July, 2019.

Plaintiff Shaw exhausted her administrative remedies for her FEHA claims by timely making

complaints to the DFEH and obtaining right to sue letters. Defendants NIKE and MAGEE were

considered Plaintiff Shaw's employers pursuant to Labor Code Section 18 and I.W.C. wage order 4-

2001, as periodically amended.

**PLAINTIFF EDGAR HERNANDEZ**

6.     Plaintiff Edgar Hernandez began working for NIKE in or around 1996, and eventually

became a manager at NIKE'S Santa Monica retail store. During the course of his tenure with NIKE

Plaintiff Hernandez worked with approximately 10 different supervisors and got along with all of

them as well as with his co-workers and customers, until MAGEE became his supervisor. Plaintiff

Hernandez is Latino.

7.     During the entirety of his tenure with NIKE, Plaintiff Shaw fully and satisfactorily

performed his career agent duties, except as to those duties, which were waived, excused, prevented

by Defendants, or any of them, until he was forced out of the company in or around April 9, 2019 or

after. Defendants NIKE and MAGEE were considered Plaintiff Hernandez's employers pursuant to

Labor Code Section 18 and I.W.C. wage order 4-2001, as periodically amended.

**CORPORATE DEFENDANT:**

8.     NIKE, a retail establishment, is an Oregon Corporation, whose principal place of business,

Plaintiffs are informed and believe and thereupon allege, is California, and who, Plaintiffs are

informed and believe and thereupon allege, employs hundreds of workers as employees and/or representatives, and is and was doing business in the State of California, County of Los Angeles, at all relevant times.

9.      Defendants NIKE and MAGEE were considered Plaintiff Hernandez's employers pursuant to Labor Code Section 18 and I.W.C. wage order 4-2001, as periodically amended, and were at all relevant times subject to the California Labor Code and California Fair Employment and housing Act, (hereinafter the "FEHA"), among California's other laws.

**INDIVIDUAL DEFENDANT**

10.     MAGEE is an individual who worked for NIKE for a number of year and eventually became a Head Coach at NIKE'S Santa Monica store, and the supervisor of Plaintiffs Shaw and Hernandez. From the time she became the Head Coach, over a period of a few months, Plaintiffs allege she was responsible for the departure of approximately 80-90% of the NIKE Santa Monica store's management, by creating a such pervasively hostile and abusive work environment that the managers were forced to resign or were actually fired. Almost all of those managers were forced out or fired during her tenure were people of color, and the majority of whom were replaced by white women.

11.     Plaintiffs are informed and believe and thereupon allege that MAGEE was fired for racially profiling an African American couple, and their young son, who she followed out of the Santa Monica store and accused of theft of a basketball, getting the police involved, causing a spectacle only to find out after the fact that the couple had a receipt for the basketball as they had purchased it earlier in the day prior to going to the beach. They later had returned to the store to look at other NIKE products.

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE RELIEF
-4-

**DOE DEFENDANTS:**

12.     The true names and capacities, whether individual, official, corporate, associate, or otherwise, or precise participation of Defendant DOES 1 through 100, inclusive, are not known to the Plaintiff herein at the time of the filing of this complaint and, therefore, these Defendants are being sued by such fictitious names, and Plaintiff will seek leave of court to amend this complaint to show their true names and/or capacities and precise participation when the same have been ascertained.  Plaintiff is informed and believes and thereupon alleges, that each Defendant designated herein as a DOE was intentionally, negligently, or in some other actionable manner, responsible or liable for the acts, occurrences, omissions and damages alleged in this complaint.

**AGENCY/CO-CONSPIRATOR STATUS OF EACH DEFENDANT**

13.     Plaintiff is informed and believes and based thereon alleges that at all times herein, Defendants, and each of them, were the agents, servants, employees, partners, successors in interest, predecessors in interest, co-venturers, co-conspirators or alter egos of every other Defendant, and that all acts and omissions herein complained of were performed within the course and scope of said relationships.  In addition, each of the acts and omissions of the Defendants, and clearly each of them, was engaged in with the full authorization and satisfaction of each of them.  All Defendants were acting as co-conspirators, and/or individually, regarding each of the acts, occurrences, omissions, damages, and causes of action alleged in this complaint.

14.     At all times herein, mentioned Defendants were and are subject to the laws of the State of California, and were considered employers pursuant to, *inter alia*, Labor Code § 18 and I.W.C. Wage Order 4-2001, as periodically amended.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

15. From the beginning of MAGEE'S tenure at NIKE'S Santa Monica store where Plaintiffs worked, she began treating the managers of color, including Plaintiffs differently, and less well.

16. Early in MAGEE'S tenure MAGEE was faced with racist language from an employee. In that instance two employees were a stockroom; one employee was African American and the other was not. The one who was not African American used the "N" word, which caused the African American employee to report the incident to his manager and then to MAGEE. Manager Ernesto documented the incident in NIKE'S PAR system. In response this outrageous comment MAGEE took no action whatsoever against the employee who used that word.

17. MAGEE took every opportunity to disparage Plaintiff Shaw, who was the only African American manager at that store. She critiqued her performance negatively as District Service Captain, despite the work not being under her purview.

18. MAGEE took it upon herself to study Plaintiff Shaw's social media and personal life, having nothing to do with her work for NIKE, and counseled her because in her spare time she sold Herbalife products for extra money, which she had done for years and which Plaintiff Shaw's prior manager Christine, among others were well aware of.

19. Despite the fact that Plaintiff Shaw was hand-picked as District Service Captain, for large NIKE stores such as the ones at the Grove and Fashion Island, and despite the fact Plaintiff Shaw was not compensated for that work by NIKE, MAGEE began harassing her stating that between Herbalife and NIKE trainer, she was not dedicated enough to her job to be a successful manager.

20. MAGEE also harassed Plaintiff Shaw about her other non-managerial work activities concerning her creative endeavors. Plaintiff Shaw had approached NIKE, prior to MAGEE becoming her boss about marketing tops and hats whose design, including words, were intended to

empowered woman, which NIKE considered, but after which MAGEE became involved never came to fruition.

21.     At one point Plaintiff Shaw was permitted to lead a five-day NIKE training session at the NIKE Culver City office, away from the Santa Monica NIKE store.  Plaintiff Shaw only had access to NIKE email when she was at the Santa Monica NIKE store, and not while she was participating in the five-day training.  During her absence the Head Coach at NIKE'S Orange Factory emailed her, copying MAGEE, stating that they would like to interview her for an assistant manager position.  Despite speaking with MAGEE multiple times during her training absence, MAGEE never mentioned it.  Upon her return to the Santa Monica store, she found out about the opportunity but the window had passed. MAGEE intentionally sabotaged her chances for promotion.

22.     Out of the blue, without having spoken with her first, MAGEE called Plaintiff Shaw into her office and got Human Resources on the phone, which was not in keeping with the protocols of management, wherein MAGEE raised another extra-work, private activity that had occurred two years before and was never flagged as a problem, involving attending the birthday celebration of a person she had known since middle school who subsequently became a NIKE employee.

23.     That person, whose name was Kris, was a former school friend.  When he interviewed for the NIKE position, she recused herself from the hiring process because of their former friendship.

24.     MAGEE accused her of having an inappropriate sexual relationship with Kris, a male, even though Plaintiff Shaw is a lesbian, and other store employees had met her girlfriend many times.  While they were flirtatious with each other it was just their relationship over many years, and was in jest.

25.     Kris also utilized the services of Plaintiff Shaw's mother for his son as her mother ran a day care.  Accordingly, Kris and Plaintiff Shaw had a preexisting relationship, and she attended his

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE RELIEF
-7-

birthday party, not knowing no other NIKE manager would be there – and, again, that took place two years before MAGEE forced the human resources meeting out of the blue. Everyone knew about it before, it wasn't a secret, and it only became an issue when MAGEE made it one, and misrepresented it.

26.     Subsequently, Plaintiff Shaw is informed and believes and thereupon alleges another NIKE employee who was managed by MAGEE entered into a romantic relationship with another NIKE employee, which MAGEE knew about, and which she did not condemn.

27.     Throughout this time period Plaintiff Shaw became increasingly anxious, depressed and upset due the abusive and intolerable way MAGEE treated her, and others, which progressed to such an extent that she was forced to go on disability leave.  Plaintiff Shaw raised the romantic relationship, that was against company policy, with Human Resources while she was on disability leave.  Eventually she was forced out of the company she had successfully worked at for over 11 years. During her exit interview with Human Resources, Plaintiff Shaw asked if she could be relocated to a different store so she did not have to work with MAGEE.  H.R. told her no but asked if she would like to have a sit down with MAGEE to talk to her (again) about how she was being treated.  Plaintiff Shaw declined because MAGEE was far too abusive and would never change, having tried that before.

28.     Rather than view Plaintiff Shaw as the dynamic, inspirational and dedicated NIKE employee that she was, MAGEE sabotaged and diminished her at every turn, nitpicked her performance and sabotaged her likely promotions.

29. Meanwhile, MAGEE had not limited herself to only harassing Plaintiff Shaw, she also harassed another long-term NIKE manager, Roberto, a Latino male. He was similarly maligned and harassed,

and critiqued by MAGEE, and became so upset that he left NIKE after approximately 24 years and relocated to San Francisco.

30.     Another manager Cindy, Latina, became so harassed by MAGEE that she wanted to leave the store for another NIKE location also.  She went to NIKE'S District Manager to complain about MAGEE but rather than find any support in upper management she too was forced out of the store and asked for a transfer, which she was given.

31.     Next, Ernesto, Filipino gay male manager met with his demise as a long-term NIKE manager due to MAGEE, as Plaintiffs are informed and believe and thereupon allege.  As was her pattern, MAGEE involved herself in his personal life and questioned his dedication to NIKE because he too had a side interest in creating hats.  He eventually established a relationship with NIKE regarding those hats, as Plaintiffs are informed and believe, but was made to leave his managerial position and NIKE. MAGEE nitpicked his performance, created opportunities for failure based on the work of other people, and made his life at NIKE so unbearable he suffered undue emotional distress.

32.     Another Latino manager was also run out of the NIKE store by MAGEE, whose name was Nohan.  He tried to get another job at NIKE which he eventually did, but when MAGEE found out, as Plaintiffs are informed and believe and thereupon allege, she tried to sabotage him and prevent him from getting it, but failed.

33. Over the course of months form her arrival at the Santa Monica NIKE store, MAGEE did her best to divide what had been a well-oiled management team for the most part, and set most of them up for termination. She became cliquish and would not let many into her management life.  Instead, she would spend time laughing and joking with primarily three others – two while woman and one

woman who appeared white but who was not of European descent, as Plaintiffs are informed and believe and thereupon allege. Their names were Molly, Monica and Rebecca.

34. Molly, Monica and Rebecca were permitted to work in MAGEE'S office while she was there, whereas the other managers weren't. They bought Starbuck's coffee and sandwiches for each other but excluded the managers of color. Even after the three would clock out for the day, the remained frequently remain in MAGEE'S office. MAGEE held them out as role models for dedication to NIKE.

35.     From the beginning of MAGEE'S tenure at the Santa Monica NIKE store Plaintiff Hernandez was able to see what was going on and how the people of color were being treated. He too was excluded from socializing or even speaking with MAGEE for months.

36.     Plaintiff Hernandez's experience with new managers was that they would sit down and get to know the subordinate managers in a short time period, tell them their expectations, let them know their management style, which Plaintiff was always open to. Over the course of about 20 years with NIKE he never had a problem with other managers or co-workers.

37.     When he would go to her office, she would not have eye contact with him even when he spoke to her – EVER. Instead, she would look at her computer or anywhere else, essentially treating him like a non-human and dismissing him. Even at management meeting s wherein the managers all took turns talking about different topics, MAGEE would not acknowledge him or look him in the eyes.

38.     Moreover, for months MAGEE refused to meet with him officially. Observing her demeanor and conduct he did his best to avoid her wrath. Eventually he decided that he should make the first contact and set up a meeting with her, to discuss the issues and try to resolve them.

She apologized and said she had just not had time to get to him and that he was doing his job so she

didn't need to meet with him before that.

39. Shortly thereafter, she began the slide into abuse and harassment. She repeatedly criticized his

work thereafter, kept moving the goal posts about performance and duties, and lied about him. She

wrote him up.

40.     Then she looked into his private life as well, wherein she felt the need to meet with him,

disparage him and question his commitment to NIKE because of his extra-circular activities while

not at his hourly-paying, managerial job. Plaintiff Hernandez had worked for NIKE for over 20

years. He loved it so much, and was so inspired by the brand, (which turned out to be superficial

and false), that he used his private time to coach High School Basketball part time and mentored in

a youth basketball program. None of that ever conflicted with his managerial work, and prior

supervisors were happy to work his schedule around game days. She wasn't. MAGEE scheduled

him to work on days he asked to have off, as part of his two days off per week, including game

days. She held him to a higher standard than her white-woman clique, for example. He stopped

posting on social media about his personal activities he had been proud of, because he knew she

was trolling him and looking for anything she could find to hurt him professionally.

41.     Finally, she told Ernesto, to write Plaintiff Hernandez up for some concocted performance

issue and threatened to reach out to the District Manager for termination. But Ernesto, as stated,

had his own harassment from her, and he left before he had written Plaintiff up unjustly.

42.     Once Plaintiff Shaw was out on disability the NIKE Santa Monica store assistant manager

position that she had applied for went to Molly, a white woman. It turned out that an African

American woman from a New York NIKE store had also interviewed for the assistant manager

position but didn't get it. – because the white woman got it. Instead, she was given a management position under MAGEE, which was as Plaintiff Hernandez's supervisor. Her name was Ernia.

43.    Plaintiff Hernandez immediately went to Ernia and told him of his abusive experiences at the hands of MAGEE. He asked her to please correct him if he did something wrong so he could fix it rather than going to MAGEE to complain, because he believed he too was being set up to be fired. She agreed and appeared to be supportive. Instead, she turned on him and the tow called him into MAGEE's office wherein they reprimanded him over things he had not done and threatened to fire him.

44.    By this time Plaintiff Hernandez had been experiencing deep anxiety, due to all the stress produced by the hostile work environment. He started feeling sick and he developed intense stomach issues and eventually kidney stones. When he had to go to the doctor, he would bring notes to ensure he was not accused of faking illness. Eventually the abuse became so bad that he went out on medical leave. When he was able to come back the abuse continued so he was forced to give two weeks' notice to corporate for the sake of his health. When asked why, he said it was because of MAGEE and the hostile work environment she created and told them to ask others. They apparently didn't care and refused to investigate all the allegations of racism and discrimination.

45.    It was not until months later when the video of her harassing, and publicly falsely accusing a Black family of theft at Santa Monica Pier went public, and then went viral, was she fired.

46.    By then MAGEE had managed to abuse and remove 80-90% of her store's managerial staff, most of whom were replaced by white women. NIKE did not care at all about her discrimination, harassment or retaliation of their store until it threatened to affect their reputation due to the recording.

# FIRST CAUSE OF ACTION

## VIOLATION OF FEHA FOR RACIAL AND/OR SEXUAL PREFERENCE DISCRIMINATION,

### GOVERNMENT CODE § 12940 (a) *et seq.*

**(By Plaintiff Shaw Against NIKE, and Doe Defendants, 1-100)**

47.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 46 of this complaint as though fully set forth herein.

48.     Plaintiff Shaw claims that Defendants wrongfully discriminated against her.

49.     Defendants, including NIKE were Plaintiff Shaw's employer.  Plaintiff Shaw was a managerial employee of Defendants and NIKE;

50.     Defendants, including NIKE, refused to promote Plaintiff Shaw twice and then constructively discharged her.

51.     Plaintiff Shaw's race and/or sexual preference was a substantial motivating reason for Defendants' constructive termination and refusal to hire.

52.     As a proximate cause of Defendants' willful, knowing, and intentional conduct Plaintiff Shaw has sustained and continues to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

53.     As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional conduct toward Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach, depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

54.   Plaintiff Shaw has incurred and continues to incur attorneys' fees and costs as a proximate cause of Defendants' discrimination against Plaintiff, in amount to be proven and seeks attorneys' fees pursuant to the FEHA.

55.   As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff Shaw, Plaintiff Shaw seeks declaratory relief that she was discriminated against by Defendants, including NIKE, to reaffirm Plaintiff Shaw's standing among her coworkers, the NIKE community, and the public, and to condemn NIKE'S discriminatory, and abusive employment policies and/or practices.

56.   As a proximate result of NIKE'S willful, knowing, and intentional discrimination against Plaintiff Shaw, she seeks injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, and made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

57.   Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff Shaw with an improper and intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiff Shaw's rights.  Accordingly, she requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## SECOND CAUSE OF ACTION
## VIOLATION OF FEHA FOR WORK ENVIRONMENT HARASSMENT,
## GOVERNMENT CODE §§ 12923, 12940, *et seq.*
### (By Plaintiff Against all Defendants)

58.   Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 57 of this complaint as though fully set forth herein.

59.   Plaintiff Shaw was a person providing service under an implied in fact contract with Defendants.

60.     Plaintiff Shaw alleges that Defendants subjected her to harassment based on her race and/or sexual preference while she worked for Defendants, and that this harassment created a work environment that was hostile, intimidating, offensive, oppressive and abusive.

61.     Plaintiff Shaw was subjected to harassing conduct because of her race and/or sexual preference. The harassing conduct was severe and pervasive.

62.     Plaintiff alleges that as reasonable African American woman or lesbian in Plaintiff Shaw's circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive and abusive.

63.     Plaintiff Shaw considered the work environment to be hostile, intimidating, offensive, oppressive, and abusive.

64.     NIKE and MAGEE participated in the harassing conduct.

65.     As a proximate cause of Defendants' willful, knowing, and intentional harassment, Plaintiff Shaw has sustained and continues to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

66.     As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional harassing conduct toward Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach, depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

67.     Plaintiff Shaw has incurred and continues to incur attorneys' fees and costs as a proximate cause of Defendants' harassment of Plaintiff, in amount to be proven and seeks attorneys' fees pursuant to the FEHA.

68.     As a proximate result of Defendants' willful, knowing, and intentional harassment Plaintiff Shaw, Plaintiff Shaw seeks declaratory relief that she was unlawfully harassed by Defendants,

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE
RELIEF
-15-

including NIKE and MAGEE, to reaffirm Plaintiff Shaw's standing among her coworkers, the NIKE community, and the public, and to condemn NIKE'S and MAGEE'S harassing and abusive employment policies and/or practices.

69.     As a proximate result of Defendants', including NIKE'S and MAGEE'S willful, knowing, and intentional harassment of Plaintiff Shaw, she seeks injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, and made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

70.     Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff Shaw with an improper and intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiff Shaw's rights.  Accordingly, she requests the assessment of punitive damages against Defendants, including NIKE and MAGEE, in an amount appropriate to punish and make an example of them.

## THIRD CAUSE OF ACTION
## VIOLATION OF FEHA FOR RETALIATION,
## GOVERNMENT CODE § 12940 (h) *et seq.*
## (By Plaintiff Shaw Against NIKE, and Doe Defendants, 1-100)

71.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 70 of this complaint as though fully set forth herein.

72.     Plaintiff Shaw alleges that Defendants retaliated against her.

73.     Plaintiff Shaw complained to her supervisors about unlawful discriminatory conduct against her.

74. Defendants then twice refused to promote her and then constructively discharged her.

75. Plaintiff's complaints regarding the discriminatory conduct were a substantially motivating factor in Defendants' decisions to retaliate against her, by refusing to promote her twice, and then constructively discharging her.

76. As a proximate cause of Defendants' willful, knowing, and intentional retaliatory decisions Plaintiff Shaw has sustained and continues to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

77. As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional retaliation against Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach, depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

78. Plaintiff Shaw has incurred and continues to incur attorneys' fees and costs as a proximate cause of Defendants' discrimination against Plaintiff, in amount to be proven and seeks attorneys' fees pursuant to the FEHA.

79. As a proximate result of Defendants' willful, knowing, and intentional retaliation against Plaintiff Shaw, Plaintiff Shaw seeks declaratory relief that she was unlawfully retaliated against by Defendants, including NIKE, to reaffirm Plaintiff Shaw's standing among her coworkers, the NIKE community, and the public, and to condemn NIKE'S unlaw retaliatory employment policies and/or practices.

80. As a proximate result of NIKE'S willful, knowing, and intentional retaliation against Plaintiff Shaw, she seeks injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, and made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

81. Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff Shaw with an improper and

intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiff Shaw's rights. Accordingly, she requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## FOURTH CAUSE OF ACTION
### VIOLATION OF FEHA FOR FAILURE TO PREVENT DISCRIMINATION, HARASSSMENT AND RETALIATION, GOVERNMENT CODE § 12940 (k) *et seq.*
### (By Plaintiff Shaw Against NIKE, and Doe Defendants, 1-100)

82.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 81 of this complaint as though fully set forth herein.

83.     Plaintiff Shaw alleges that Defendants failed to take all reasonable steps to prevent discrimination, harassment, and retaliation based on her race and/or sexual preference.

84.     Plaintiff Shaw was an employee of Defendants providing services under an implied in fact contract. She also applied for two promotions there, but was rejected.

85.     She was subjected to discrimination, harassment and retaliation in the course of that employment.

86.     Defendants failed to all reasonable steps to prevent the discrimination, harassment and retaliation.

87.     As a proximate cause of Defendants' willful, knowing, and intentional decision Plaintiff Shaw has sustained and continues to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

88.     As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional conduct toward Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach,

depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

89.     Plaintiff Shaw has incurred and continues to incur attorneys' fees and costs as a proximate cause of Defendants' failure to prevent discrimination, harassment and retaliation against Plaintiff, in amount to be proven and seeks attorneys' fees pursuant to the FEHA.

90.     As a proximate result of Defendants' willful, knowing, and intentional failure to prevent discrimination, harassment and retaliation against Plaintiff Shaw, Plaintiff Shaw seeks declaratory relief that Defendants failed to take reasonable steps to prevent discrimination, harassment and retaliation against Plaintiff, including NIKE and MAGEE, to reaffirm Plaintiff Shaw's standing among her coworkers, the NIKE community, and the public, and to condemn NIKE'S and MAGEE'S discriminatory, and abusive employment policies and/or practices.

91.     As a proximate result of Defendants willful, knowing, and intentional failure to prevent discrimination, harassment and retaliation against Plaintiff Shaw, she seeks injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, and made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

92.     Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff Shaw with an improper and intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiff Shaw's rights.  Accordingly, she requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## FIFTH CAUSE OF ACTION

## FAILURE TO PAY WAGES – VIOLATION OF LABOR CODE §§ 200, *et seq.*, and/or 1194/1197 *et seq.*

### (Plaintiff Shaw Against NIKE and Doe Defendants, 1-100)

93.     Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 92, as though fully set forth herein.

94.     Defendants and each of them were employers of Plaintiff Shaw pursuant to, *inter alia*, Labor Code § 18 and I.W.C. Wage Order 4-2001, which defines an employer for *wage claim* purposes. *Martinez v. Combs*, 49 Cal. 4th 35 (2010), and Labor Code section 2750.5.

95.     Each Defendant was an "employer" of Plaintiff under Labor Code section 18 and IWC Wage Order 4-2001, as periodically amended, as defined in Section 2 (H), because each was a "person" who controlled the wages, hours or working conditions of Plaintiff Shaw.  Defendants controlled Plaintiff Shaw's compensation by retaining the right to pay the compensation, up to and including complete forfeiture of all compensation, at their *sole* discretion, at any time. In addition to maintaining the right to control these wages, they actually controlled them by changing the compensation structure at their sole discretion and depriving Plaintiff of her compensation. Defendants also controlled the hours and place Plaintiff Shaw would conduct NIKE's training.

96.     Defendants intentionally failed to pay Plaintiff compensation, though they suffered and permitted her to work as their District Service Captain for approximately two years without pay, in violation of California Labor Code sections 203, 200, 1194, 1197.

97.     California Labor Code § 200 states in pertinent part that wages include all amounts for labor performed by employees of every description, while Labor Code § 201 states that wages for a discharged employee are due immediately.

98.     Defendants, and each of them, failed to pay Plaintiff all of her wages while she worked for Defendants, as well as upon her termination.

99.     No accounting was provided to Plaintiff upon his departure, nor during her tenure and she was not paid all compensation that was due her.

100.     As a direct and proximate result of Defendants' failure to pay Plaintiff for her work as a trainer, and to do so timely, Plaintiff Shaw has been damaged in an amount to be determined at trial.

101.     As a proximate result of Defendants' willful, knowing, and intentional failure to pay her proper wages, and to do so timely, Plaintiff seeks declaratory relief that she was wrongfully was not.

---

paid all wages timely due her, to reaffirm Plaintiff's standing among her coworkers, the NIKE community, and the public, and to condemn unlawful employment policies and/or practices of failure to pay wages.

102.    As a proximate result of Defendants' willful, knowing, and intentional failure to pay Plaintiff all wages due or and to do so timely, Plaintiff seeks injunctive relief to stop the practices, especially because the same and Managers and Executives and made or supported these practices, remain at NIKE. Therefore, the injunction will also have a favorable impact on the interests of the other employees and the public.

103.    Plaintiff has incurred and continues to incur legal expenses, costs of suit and attorneys' fees in a sum according to proof at trial, which he seeks pursuant to Labor Code sections 218.5 and interest pursuant to Labor Code section 218.6, as well as sections 1194 and 1197.

104.    Plaintiff additionally seeks liquidated damages pursuant to the Labor Code section 1194.2.

### SIXTH CAUSE OF ACTION
### FAILURE TO INDEMNIFY –
### VIOLATION OF LABOR CODE § 2802
### (Plaintiff Shaw Against NIKE and Doe Defendants, 1-100)

105.    Plaintiff hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 104, as though fully set forth herein.

106.    Pursuant to California Law, as set forth in Labor Code § 2802(a):

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or his duties, or of his or his obedience to directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Cal. Lab. Code § 2802

107.    Plaintiff Shaw paid all necessary expenses and incurred necessary losses for her

employment as a District Service Captain in obedience to the directions of Defendants, and

in direct consequence of the discharge of her duties, believing the directions lawful,

including but not limited to gas, cell phone use and computer use.

108.    Plaintiff Shaw obeyed the directions of Defendants, to pay for all necessary

expenses.

109.    As a direct and proximate result of Defendants' failure to indemnify Plaintiff Shaw,

she has been damaged and suffered losses in an amount to be determined at trial.

110.    As a direct and proximate result of Defendants' failure to indemnify Plaintiff Shaw, she has

incurred and continues to incur attorneys' fees, costs and interest in an amount to be determined at

trial, and seeks them pursuant to this Labor Code section.

111.    Similarly, Defendants, and each of them, had a duty to indemnify Plaintiff under

Corporations Code section 317 for those amounts actually reasonably incurred while she was their

employee, and to pay for all monetary amounts incurred in having to file and litigate this case,

which she seeks as well, in an amount to be determined.

**SEVENTH CAUSE OF ACTION**

**FAILURE TO PROVIDE AN ACCURATE, ITEMIZED WAGE STATEMENT AND**

**MAINTAIN ACCURATE RECORDS**

**VIOLATION OF LABOR CODE § 226**

**(Plaintiff Shaw Against NIKE and Doe Defendants, 1-100)**

112.    Plaintiff hereby restates, re-alleges and incorporates by reference herein, paragraphs 1

through 111, as though fully set forth herein.

113.   Labor Code section 226(a) sets forth reporting requirements for employers regarding wage statements:

"(a) An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment…"

and, Labor Code Section 226 (b) states that:

"(b) An employer that is required by this code or any regulation adopted pursuant to this code to keep the information required by subdivision (a) shall afford current and former employees the right to inspect or receive a copy of records pertaining to their employment, upon reasonable request to the employer…"

114.   Defendants knowingly and intentionally failed to accurately record the true reporting information required of them on the wage statement much, less provide any wage statement at all for this purpose to Plaintiff Shaw, including but not limited to, showing the accurate gross wages earned, the accurate net wages earned, all deductions and the name and address of the legal entity of the employer(s).

115.   Defendants knowingly and intentionally failed to furnish Plaintiff Shaw with an accurate itemized statement meeting the statutory requirements upon each or any payment of wages.

116.    Plaintiff Shaw was damaged by these failures because, among other issues, the failures led Plaintiff Shaw to believe that she was not entitled to be paid as an employee. Also, Defendants' failure to comply with Labor Code § 226(a) hindered Plaintiff Shaw from determining the amounts owed her.

117.    As a direct and proximate result of Defendants' refusing to pay Plaintiff Shaw for her work as a District Service Captain, and their subsequent failure to provide Plaintiff Shaw with accurate, itemized wage statements and maintain accurate records, Plaintiff has been damaged in amount to be proven at trial to at least up $4000.00, and is entitled to an award of reasonable attorneys' fee and costs, which she seeks as she has incurred and continues to incur such reasonable attorneys' fees and costs, as a direct and proximate cause of Defendants' violation of this Labor Code section.

118.    Pursuant to this statute Plaintiff seeks injunctive relief in the form of an injunction prohibiting Defendants, and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them from engaging in each of the practices complained of in this cause of action, going forward, especially because the same Managers and Executives remain at NIKE, and made or supported these practices, Therefore the injunction will also have a favorable impact on the interests of the public.

amount to be determined.

### EIGHTH CAUSE OF ACTION

### CONSTRUCTIVE DISCHARGE IN VIOLATIONS OF PUBLIC POLICY

### (Plaintiff Shaw and Hernandez Against NIKE and Doe Defendants, 1-100)

119.    Plaintiffs hereby restates, re-alleges and incorporates by reference herein, paragraphs 1 through 118.

120.    Plaintiffs claim that Defendants forced them to resign for reasons that violate public policy, including but not limited to the afore described violations of the FEHA and the California Constitution.

121.  Plaintiffs were employed by Defendants.

122.  Plaintiffs were subjected to working conditions that violated public policy, including but not limited to being discriminated against, harassed and retaliated against in violation of the FEHA, and Plaintiff Shaw not being paid at all for the work she performed as a trainer for NIKE, which is less than minimum wage.

123.    Defendants intentionally created or knowingly permitted these working conditions.

124.    These working conditions were so intolerable that a reasonable person in Plaintiffs' position would have had no reasonable alternative except to resign.

125.    Plaintiff did resign because of these working conditions;

126.    As a direct and proximate result of Defendants' conduct and the resultant working conditions, Plaintiffs have been damaged in an amount to be determined at trial.

127.    The working conditions were a substantial factor in causing Plaintiffs' harm.

128.    As a proximate cause of Defendants' willful, knowing, and intentional decision Plaintiff have sustained and continue to sustain substantial losses in earnings and other employment benefits in an amount to be proven at trial, as well as attorney fees and costs.

129.    As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional conduct toward Plaintiff Shaw, she has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as headache, upset stomach, depression, anxiety, sleeplessness, inability to concentrate, among other physical and emotional injuries, all to her damage in a sum according to proof.

130.    As a proximate result of Defendants' extreme and outrageous, willful, knowing, and intentional conduct toward Plaintiff Hernandez, he has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, such as substantial digestive issues, depression, anxiety, sleeplessness, inability to concentrate, and kidney stones, among other physical and emotional injuries, all to his damage in a sum according to proof.

131.    Plaintiffs have incurred and continues to incur attorneys' fees and costs in a sum according to proof as a result of Defendants' conduct that violates public policy.

132.    As a proximate result of Defendants' willful, knowing, and intentional wrongful constructive discharge against Plaintiffs seek declaratory relief that Defendants that they were unlawfully constructively discharged in violation of public policy, to reaffirm their standing among their coworkers, the NIKE community, and the public, and to condemn NIKE'S and MAGEE'S intolerable employment policies and/or practices.

133.    As a proximate result of Defendants willful, knowing, and intentional failure to unlawful constructive discharge of Plaintiffs, against public policy, they seek injunctive relief to stop these unlawful practices, especially because the same Officers and Managers remain at NIKE, who made or supported these practices. Therefore, the injunction will also have a favorable impact on the interests of the public.

134.    Defendants, and each of them, have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiffs with an improper and intentional motive amounting to fraud, and/or malice, and/or oppression and in conscious disregard of Plaintiffs' rights.  Accordingly, they request the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## NINTH CAUSE OF ACTION

## NEGLIGENT HIRING, SUPERVISION AND RETENTION

### (Both Plaintiffs Against NIKE)

135.    Plaintiffs hereby restate, re-allege and incorporate by reference herein, paragraphs 1 through 134 of this complaint as though fully set forth herein.

136.    Plaintiffs claim that they were harmed by NIKE and that NIKE is responsible for that harm because NIKE negligently hired, supervised and retained MAGEE.

137.    Plaintiffs are informed and believes and thereupon alleges that NIKE hired MAGEE who was their employee.

138.    MAGEE was or became unfit to perform the work for which she was hired, which included but was not limited to, managing and hiring other employees to work for Defendants.

139.    NIKE knew or should have known that MAGEE was unfit or became unfit to do her job, and that this unfitness created a particular risk to others, including Plaintiffs, other employees and customers.

140.    NIKE's negligence in hiring, supervising and retaining MAGEE harmed Plaintiffs Shaw and Hernandez.

141.    NIKE's negligence in hiring, supervising and retaining MAGEE was a substantial factor in causing Plaintiffs Shaw and Hernandez's harm.

142.    As a proximate result of NIKE'S negligence, Plaintiffs have suffered and continue to suffer

143.    As a proximate result of NIKE'S despicable conduct, which was done with a willful and knowing disregard of the rights and safety of Plaintiffs, Plaintiffs have sustained and continue to sustain substantial losses in earnings and other benefits.

144.    Defendant has committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiffs with an improper and intentional motive amounting to fraud, malice and in conscious disregard of Plaintiff's rights. Accordingly, Plaintiffs request the assessment of punitive damages against them, in an amount appropriate to punish and make an example of them.

## TENTH CAUSE OF ACTION

## VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 *et seq.*

### (All Plaintiffs Against All Defendants)

145.    Plaintiffs hereby restate, re-allege and incorporate by reference herein, paragraphs 1 through 144 of this complaint as though fully set forth herein.

146.    Defendants, and each of them, are "persons" as defined under Business & Professions Code §§ 17021 and 17203.

147.    Each Defendant is equally responsible for the acts of the others as set forth in the Business and Professions Code §§ 17022 and 17024.

148.    Beginning at an exact date unknown to Plaintiff but at least as of April 2017, Defendants have committed acts of unfair competition, as defined by the Business and Professions Code § 17200, *et seq.*, in California, by engaging in the following practices: (1) discriminating against Plaintiffs in violation of the FEHA; (2) harassing Plaintiffs in violation of the FEHA; (3) retaliating against Plaintiffs in violation of the FEHA; (4) failing to prevent discrimination and/or harassment and/or retaliation in violation of the FEHA; (5) failing to pay Plaintiff Shaw all wages due and to do so timely in violation of the Labor Code; (6) failing to indemnify Plaintiff Shaw's expenses and losses in discharging her duties or in obedience to the directions of Defendants; (7) failure to provide accurate itemized wage statements to Plaintiff Shaw, and to maintain accurate records in violation of the Labor Code; (8) constructively terminating Plaintiffs in violation of the public policy, including but not limited to violating their civil rights, in violation of the FEHA and the California Constitution; and (9) negligently hiring, retaining and supervising managers such that employee are harmed.  Plaintiffs suffered injury in fact caused by these practices.

149.    These acts, patterns and practices as described in the paragraph above, violate Business & Professions Code section 17200 in the following respect in California:

150.    Defendants' policy and practice of discriminating against Plaintiffs based on their race and/or sexual preference and /or ancestry violates the FEHA as well as the California Constitution.

This discrimination consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

151.    The harm to Plaintiffs, and the other NIKE managers who are of the same race and/or sexual preference and /or ancestry, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of such discrimination constitutes an unfair business act of practice within the meaning of Business & Professions Code section 17200, *et seq.*  Any person, including Plaintiffs who wants to be a NIKE manager in California and invests his or her time and resources would be unavoidably deceived as to what treatment they are entitled to by law, and based on the substantial public policies of California that workers should not be discriminated against.  Defendants' practice of discrimination abrogates those policies rendering Defendants' practice of discriminating unfair.

152.    Defendants' policy/practice of unlawful discrimination against NIKE managers, including Plaintiffs, is likely to deceive and/or create confusion by the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*. It would also be deceptive and confusing to the general public might be a member of a protected class who would then be discriminated against if hired.

153.    Defendants' policy and practice of harassing Plaintiffs based on their race and/or sexual preference and /or ancestry violates the FEHA.  This harassment consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

154.    The harm to Plaintiffs, and the other NIKE managers who are of the same race and/or sexual preference and /or ancestry, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of such harassment based on protected characteristics constitutes an unfair business act of practice within the meaning of Business & Professions Code section 17200, *et seq*. Any person, including Plaintiffs who wants to be a NIKE manager in California and invests his or her time and resources would be unavoidably deceived as to what treatment they are entitled to by law, and based on the substantial public policies of California that workers should not be unlawfully

harassed. Defendants' practice of unlawful harassment abrogates those policies rendering Defendants' practice of discriminating unfair.

155.    Defendants' policy/practice of unlawful harassment against NIKE managers, including Plaintiffs, is likely to deceive and/or create confusion by the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*. It would also be deceptive and confusing to the general public who might be a member of a protected class who would then be unlawfully harassed if hired.

156.    Defendants' policy and practice of retaliating against Plaintiffs for complaining about unlawful discrimination and harassment violates the FEHA. This retaliation consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

157.    The harm to Plaintiffs, and the other NIKE managers who are of the same race and/or sexual preference and /or ancestry, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of such retaliation constitutes an unfair business act of practice within the meaning of Business & Professions Code section 17200, *et seq*. Any person, including Plaintiffs who wants to be a NIKE manager in California and invests his or her time and resources would be unavoidably deceived as to what treatment they are entitled to by law, and based on the substantial public policies of California that workers should not be unlawfully retaliated against. Defendants' practice of unlawful retaliation abrogates those policies rendering Defendants' practice of such retaliation unfair.

158.    Defendants' policy/practice of unlawful retaliation against NIKE managers, including Plaintiffs, is likely to deceive and/or create confusion by the public when NIKE claims to adhere to state and federal law and support minorities, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*. It would also be deceptive and confusing to the general public who might be a member of a protected class who

would then be unlawfully retaliated against if they complain about unlawful discrimination or harassment.

159.  Defendants' policy and practice of failing to prevent discrimination, harassment and/or retaliation based on race and/or sexual preference and /or ancestry violates the FEHA.  This failure consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

160.  The harm to Plaintiffs, and the other NIKE managers who are of the same race and/or sexual preference and /or ancestry, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of failing to prevent discrimination, harassment and/or retaliation based on race and/or sexual preference and /or ancestry constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq.* Any person, including Plaintiffs who wants to be a NIKE manager in California and invests his or her time and resources would be unavoidably deceived as to what treatment they are entitled to by law, and based on the substantial public policies of California which state that workers should not be unlawfully discriminated against, harassed or retaliated against, as well.  Defendants' practice of unlawfully failing to prevent discrimination, harassment and/or retaliation based on race and/or sexual preference and /or ancestry abrogates those policies rendering Defendants' practice of failing to prevent such discrimination, harassment and/or retaliation, unfair.

161.  Defendants' policy/practice of unlawful discrimination, harassment and/or retaliation, including against Plaintiffs, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq.* It would also be deceptive and confusing to the general public who might be a member of a protected class who would then unlawfully suffer discrimination, harassment and/or retaliation which NIKE did not take reasonable steps to prevent.

162.   Defendants' policy and practice of failing to pay employees all wages due and to do so timely, violates the Labor Code. This failure consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

163.   The harm to Plaintiffs, and the other NIKE managers who are suffered and permitted to work for NIKE without pay, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of failing to failing to pay employees all wages due constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq.* Any person, including Plaintiffs who wants to be a work for NIKE in California and invests his or her time and resources would be unavoidably deceived as to what payment they are entitled to by law, and based on the substantial public policies of California which state that workers should be paid for all hours worked. Defendants' practice of unlawfully failing to pay employees all wages due abrogates those policies rendering Defendants' practice unfair.

164.   Defendants' policy/practice of failing to pay employees all wages due, including against Plaintiff Shaw, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq.* It would also be deceptive and confusing to the general public who might be a not want to support businesses who don't pay their employees lawfully.

165.   Defendants' policy and practice of indemnify their employees for expenses incurred for their jobs violates the Labor Code. This failure consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

166.   The harm to Plaintiffs, and the other NIKE managers who are suffered and permitted to pay NIKE'S expenses and not be reimbursed for them, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq.* Any person, including Plaintiffs who wants to be a work for NIKE in California and invests resources at the direction of NIKE would be unavoidably deceived as to what indemnification they are entitled to by law, and

based on the substantial public policies of California which state that workers should be indemnified. Defendants' practice of unlawfully failing to indemnify their employees renders NIKE'S practice unfair.

167.    NIKE's policy/practice of failing to indemnify their employees, including against Plaintiff Shaw, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, and consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*. It would also be deceptive and confusing to the general public who might be a not want to support businesses who don't indemnify their employees lawfully.

168.    Defendants' policy and practice of failing to give employees accurate itemized wage statements and maintain accurate records, violates the Labor Code. This failure consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

169.    The harm to Plaintiffs, and the other NIKE managers who are not provided with the accurate itemized wage statements and whose records are maintained, outweighs the utility of Defendants' policy/practice and, consequently, Defendants' practice of give employees accurate itemized wage statements and maintain accurate records constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq*. Any person, including Plaintiffs who works for NIKE in California and invests his or her time and resources would be unavoidably deceived as to what payments they are entitled to by law, which could not be documented in a wage statement or accurate records. Defendants' practice of abrogates the law rendering Defendants' practice unfair.

170.    Defendants' policy/practice of give employees accurate itemized wage statements and maintain accurate records, including against Plaintiff Shaw, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq*.

171.    Defendants' policy and practice of wrongfully constructively terminating managers, including Plaintiffs, in violation of public policy, violates the law.  This practice consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

172.    The harm to Plaintiffs, and the other NIKE managers who NIKE wrongfully, terminates against public policy outweighs the utility of NIKE'S policy/practice and, consequently, Defendants' practice constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq.*

173.    Defendants' policy/practice of wrongfully constructively terminating managers, including Plaintiffs, in violation of public policy, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq.*

174.    Defendants' policy and practice of negligently hiring, retaining and supervising unfit senior managers, including MAGEE, who then harm their subordinates, violates the law.  This practice consequently constitutes an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*

175.    The harm to Plaintiffs, and the other NIKE managers who are harmed by unfit senior management who are negligently hired, retained and/or supervised, outweighs the utility of NIKE'S policy/practice and, consequently, Defendants' practice constitutes an unfair business act or practice within the meaning of Business & Professions Code section 17200, *et seq.*

176.    Defendants' policy/practice of negligently hiring, retaining and supervising unfit senior managers, including MAGEE, who then harm their subordinates, including Plaintiffs, is likely to deceive and/or create confusion with the public when NIKE claims to adhere to state and federal law, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code section 17200 *et seq.*

177.   NIKE'S and/or MAGEE'S unlawful, unfair and fraudulent business practices, described above, present a continuing threat to members of the public and those who become NIKE managers, as examples.

178.   Plaintiffs and the other members of the general public have no other adequate remedy at law to vindicate these §17200 equitable UCL claims.

179.   As a result of the aforementioned acts and practices, Plaintiffs have lost money and/or property and suffered injury in fact, in an amount to be determined at trial.

180.   Defendants' acts and practices constitute continuing and ongoing unfair, fraudulent and/or unlawful activity prohibited by Business & Professions Code § 17200 *et seq.*, and justify the issuance of an injunction, restitution and other equitable relief enjoining Defendants from continued unfair competition practices and from withholding Plaintiffs' money.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for relief and judgment against Defendants as follows:

## FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION
## [FOR PLAINTIFF SHAW]

1.   For back pay, according to proof;

2.   For reinstatement under different managers or front pay, according to proof;

3.   For judgment interest on any monetary award at the legal rate under the Civil Code;

4.   For attorneys' fees and costs pursuant to the FEHA;

5.   For compensatory damages for pain and suffering;

6.   For punitive damages;

7.   For injunctive and/or declaratory relief;

## FIFTH, SIXTH, AND SEVENTH, CAUSES OF ACTION
## [FOR PLAINTIFF SHAW]

8. For unpaid wages, according to proof;

9. For special damages, according to proof;

10. For interest on any monetary award at the legal rate;

11. For attorneys' fees pursuant to statute as laid out above;

12. For liquidated damages, according to proof;

13. For damages for failure to receive and accurate wage statement and to maintain records, in a sum according to proof up to $4000;

14. For injunctive relief and declaratory relief;

### EIGHTH CAUSE OF ACTION

### [FOR PLAINTIFFS SHAW AND HERNANDEZ]

15. For back pay, according to proof;

16. For reinstatement under different managers or front pay, according to proof;

17. For judgment interest on any monetary award at the legal rate under the Civil Code section 3289;

18. For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5;

19. For costs of suit under the Code of Civil Procedure;

20. For compensatory damages for pain and suffering;

21. For punitive damages;

22. For injunctive and/or declaratory relief;

### NINTH CAUSE OF ACTION

### [FOR PLAINTIFFS SHAW AND HERNANDEZ]

23. For general damages;

24. For special damages;

25. For costs of suit;

---

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE RELIEF
-36-

26.    For interest on any monetary award at the legal rate;

27.    For punitive damages

### SIXTEENTH CAUSE OF ACTION

28.    For restitution;

29.    For declaratory and injunctive relief as laid out above;

30.    For reinstatement;

31.    Pursuant to Business & Professions Code § 17203, and pursuant to the equitable powers of this Court, Plaintiff prays for restitution such that Defendants be ordered to restore to Plaintiff all funds acquired by means of any act or practice declared by this Court to be unlawful, or fraudulent or to constitute unfair competition affecting Plaintiffs, pursuant to Business & Professions Code § 17200 *et seq.,* and as restitution;

32.    In addition to any other remedy that has been ordered, that the Court order NIKE to prominently display on each of its publicly accessible internet websites, in an area that is accessible to all NIKE and employees, and to the general public, in California, notice that sets forth all of the following:

(a)    That the Court has found that Defendants, or any of them if less that all, committed a serious violation of the law by engaging in willful unlawful discrimination, harassment and retaliation of managerial employees;

(b)    That Defendants, or any of them if less than all, has changed its business practices in order to avoid committing further civil rights violations;

(c)    That any employee who believes that he or she is being unlawfully discriminated against, harassed or retaliated against may contact the Department of Fair Employment and Housing, or an attorney.  The notice shall include the mailing address, email address and telephone number of the agency.

(d)    That notice is being posted pursuant to a California state order.

(e)    In addition, including the specified information listed above, Defendants, or any of them if less that all:

---

I.       An officer shall sign the notice;

II.      It or they shall post the notice for one year commencing with the date of the final decision and order.

33.    For costs of suit;

34.    For attorney fees, pursuant to Code of Civil Procedure § 1021.5 or the statutes stated above;

## ALL CAUSES OF ACTION

35.    For such other and further relief as the Court may deem just and proper, including but not limited to injunctive and declaratory relief and attorneys' fees.

Dated this 8th of April, 2021

THE ANFANGER LAW OFFICE

Nancy B. Anfanger
Attorney for Plaintiffs
Brittney Shaw and Edgar Hernandez

PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE RELIEF
-38-

1

2                                    **DEMAND FOR JURY TRIAL**

3           Plaintiffs demand a jury trial on all causes of action, with the exception of the equitable

4    claims.

5    Dated this 8th of April, 2021

6                                                    THE ANFANGER LAW OFFICE

7

8                                                    Nancy B. Anfanger
                                                     Attorney for Plaintiffs
9                                                    Brittney Shaw and Edgar Hernandez

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27              PLAINTIFFS' COMPLAINT FOR DAMAGES, RESTITUTION AND OTHER EQUITABLE
                                                    RELIEF
28                                                   -39-

EXHIBIT 2

Electronically FILED by Superior Court of California, County of Los Angeles on 04/08/2021 09:26 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez, Deputy Clerk

Case 2:21-cv-04312-SB-JPR Document 24 Filed 05/24/21 Page 2 of 2 Page ID #:256

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

## NOTICE TO DEFENDANT:
### *(AVISO AL DEMANDADO):*

Nike Retail Services, Inc., an Oregon corporation, Wendy Magee, an individual, and DOES 1 through 100, inclusive

## YOU ARE BEING SUED BY PLAINTIFF:
### *(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Brittney Shaw, an individual, and Edgar Hernandez, an individual,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Los Angeles Superior Court, Central District, Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, California 90012 | CASE NUMBER: *(Número del Caso):* 21STCV13349 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Nancy B. Anfanger, The Anfanger Law Office, 9440 Santa Monica Blvd., Suite 301, Beverly Hills, California 90210

DATE: *(Fecha)* 04/08/2021

Sherri R. Carter Executive Officer / Clerk of Court
Clerk, by *(Secretario)* N. Alvarez , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

## NOTICE TO THE PERSON SERVED: You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form    Save this form    Clear this form

# EXHIBIT 3

Electronically FILED by Superior Court of California, County of Los Angeles on 04/08/2021 09:26 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez, Deputy Clerk

Case 2:21-cv-04322-SB-MRW Document 34 Filed 05/24/21 Page 113 of Page ID #:258

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Nancy B. Anfanger (225421)<br>**The Anfanger Law Office**<br>9440 Santa Monica Boulevard, Suite 301, Beverly Hills, California 90210<br><br>TELEPHONE NO.: 310.402.8937   FAX NO. *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiffs Shaw and Hernandez | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Central Division, Stanley Mosk Courthouse

CASE NAME:
Shaw, et al. v Nike Retail Services, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 21STCV13349 |
| | | | | JUDGE: |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [x] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more
         issues that will be time-consuming to resolve                courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence                court
                                                                 f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify)*: 10: 4 FEHA claims; 3 Wage Claims; 1 Constructive Discharge; 1 Negligence; 1 B&P 17200
5. This case [ ] is [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: April 8, 2021

Nancy B. Anfanger
_____         _____
(TYPE OR PRINT NAME)                               (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
    Wrongful Death
  Product Liability *(not asbestos or
  toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
    Physicians & Surgeons
    Other Professional Health Care
    Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
    and fall)
    Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
    Intentional Infliction of
    Emotional Distress
    Negligent Infliction of
    Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
  Practice (07)
  Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
  Defamation (e.g., slander, libel)
  (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
    *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
    Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
    Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
  book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
    Case
  Insurance Coverage *(not provisionally
  complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
  Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
    Case Matter
    Writ–Other Limited Court Case
    Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
    County)
    Confession of Judgment *(non-
    domestic relations)*
    Sister State Judgment
    Administrative Agency Award
    *(not unpaid taxes)*
    Petition/Certification of Entry of
    Judgment on Unpaid Taxes
    Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
  above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
    harassment)*
    Mechanics Lien
    Other Commercial Complaint
    Case *(non-tort/non-complex)*
    Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
  Governance (21)
  Other Petition *(not specified
  above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
    Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
    Claim
    Other Civil Petition

---

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

For your protection and privacy, please press the Clear
This Form button after you have printed the form. | Print this form | Save this form | | Clear this form

| SHORT TITLE: Shaw, et al. v Nike Retail Services, Inc., et al. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

> **Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 1, 11 |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Shaw, et al. v Nike Retail Services, Inc., et al. | CASE NUMBER |
|---|---|

| **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons – See Step 3<br>Above |
|---|---|---|
| Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| Other Employment (15) | ☒ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | ☐ A6109  Labor Commissioner Appeals | 10 |
| Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | ☐ A6032  Quiet Title | 2, 6 |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

Row group labels (left margin, top to bottom): Non-Personal Injury/Property Damage/Wrongful Death Tort · Employment · Contract · Real Property · Unlawful Detainer

| SHORT TITLE: Shaw, et al. v Nike Retail Services, Inc., et al. | | CASE NUMBER | |
|---|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons – See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus<br>☐ A6152 Writ - Mandamus on Limited Court Case Matter<br>☐ A6153 Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141 Sister State Judgment<br>☐ A6160 Abstract of Judgment<br>☐ A6107 Confession of Judgment (non-domestic relations)<br>☐ A6140 Administrative Agency Award (not unpaid taxes)<br>☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112 Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only<br>☐ A6040 Injunctive Relief Only (not domestic/harassment)<br>☐ A6011 Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121 Civil Harassment With Damages<br>☐ A6123 Workplace Harassment With Damages<br>☐ A6124 Elder/Dependent Adult Abuse Case With Damages<br>☐ A6190 Election Contest<br>☐ A6110 Petition for Change of Name/Change of Gender<br>☐ A6170 Petition for Relief from Late Claim Law<br>☐ A6100 Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

LASC CIV 109 Rev. 12/18

For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3

Page 3 of 4

| SHORT TITLE: Shaw, et al. v Nike Retail Services, Inc., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☐ 1. ☑ 2. ☑ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9.   10   11. | ADDRESS:<br>395 Santa Monica Place |
|---|---|
| CITY:<br>Santa Monica | STATE:<br>CA | ZIP CODE:<br>90401 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Central_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 4.8.21

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

EXHIBIT 4

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>04/08/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ N. Alvarez _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>21STCV13349 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Yolanda  Orozco | 31 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 04/08/2021
    (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By N. Alvarez , Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

# EXHIBIT 5

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>04/09/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ T. De La Paz _____ Deputy |
| PLAINTIFF:<br>Brittney Shaw  et al | |
| DEFENDANT:<br>Nike Retail Services, Inc., an Oregon corporation et al | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>21STCV13349 |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date:<br>08/06/2021 | Time:<br>9:00 AM | Dept.:<br>31 |
|---|---|---|

NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT  FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC, Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: _04/09/2021_____

_____Yolanda Orozco / Judge___
Judicial Officer

---

**CERTIFICATE OF SERVICE**

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in _Los Angeles_____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Nancy B. Anfanger
9440 Santa Monica Boulevard
Suite 301
Beverly Hills, CA 90210

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: _04/09/2021_____

By _____ T. De La Paz _____
Deputy Clerk

LACIV 132 (Rev. 07/13)
LASC Approved 10-03
For Optional Use

**NOTICE OF**
**CASE MANAGEMENT CONFERENCE**

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter Three

EXHIBIT 6

Electronically FILED by Superior Court of California, County of Los Angeles on 05/24/2021 01:31 PM Sherri R. Carter, Executive Officer/Clerk of Court, by V. Delgadillo, Deputy Clerk

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Vannie Karapetian (SBN 324274)
vannie.karapetian@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Attorneys for Defendant
NIKE RETAIL SERVICES, INC.

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

| | |
|---|---|
| BRITTNEY SHAW, an individual, and EDGAR HERNANDEZ, an individual, | Case No. 21STCV13349 |
| Plaintiffs, | **NIKE RETAIL SERVICES, INC.'S ANSWER TO UNVERIFIED COMPLAINT** |
| vs. | |
| NIKE RETAIL SERVICES, INC., an Oregon corporation; WENDY MAGEE, an individual, and DOES 1-100 inclusive, | [Assigned for all purposes to Hon. Yolanda Orozco] |
| Defendants. | |

1

NIKE RETAIL SERVICES, INC.'S ANSWER TO UNVERIFIED COMPLAINT

Defendant Nike Retail Services, Inc. ("Defendant") hereby answers the allegations of Plaintiffs Brittney Shaw and Edgar Hernandez (collectively, "Plaintiffs") unverified Complaint as follows:

## GENERAL DENIAL

Pursuant to California Code of Civil Procedure section 431.30(d), Defendant denies generally each and every allegation of the Complaint in this action, specifically denies that it has damaged Plaintiffs in any amount or manner whatsoever, specifically denies that Plaintiffs are entitled to the relief they seek in their Complaint, including, but not limited to, damages, costs, and attorneys' fees, and allege the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

As a separate and independent affirmative defense, Defendant alleges that each and every cause of action in Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

(No Impermissible Factors)

As a separate and independent affirmative defense, Defendant alleges that Plaintiffs' claim is barred in whole or in part because even if Defendant was found to have considered any impermissible factors in any decisions or action with respect to Plaintiffs, which Defendant denies, no such decisions were motivated by any impermissible factors.

## THIRD AFFIRMATIVE DEFENSE

(Statute of Limitations)

As a separate and independent affirmative defense to Plaintiffs' Complaint and each purported cause of action therein, Defendant alleges that Plaintiffs' Complaint and each purported cause of action therein is barred by the applicable statutes of limitation, including, but not limited to, California Code of Civil Procedure §§ 337, 337a, 338(a), 338(d), 339, 340(a), and 343.

**NIKE RETAIL SERVICES, INC.'S ANSWER TO UNVERIFIED COMPLAINT**

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver)

As a separate and independent affirmative defense, Defendant alleges that by reason of their own actions, Plaintiffs have waived any right to seek damages pursuant to any purported cause of action stated against Defendant.

## FIFTH AFFIRMATIVE DEFENSE

### (Estoppel)

As a separate and independent affirmative defense, Defendant alleges that Plaintiffs' claims are barred, in whole or in part, by the equitable doctrine of estoppel.

## SIXTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

As a separate and independent affirmative defense, Defendant alleges that Plaintiffs' claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

As a separate and independent affirmative defense, Defendant alleges that if Plaintiffs sustained damages by reason of the allegations in the Complaint, which allegations are denied, then Plaintiffs may not recover for such damages because by their own acts and omissions, they have failed to properly mitigate such damages.

## EIGHTH AFFIRMATIVE DEFENSE

### (After-Acquired Evidence)

As a separate and independent affirmative defense, to the extent that Defendant acquired any evidence of wrongdoing by Plaintiffs, which wrongdoing would have materially affected the terms and conditions of Plaintiffs' employment or would have resulted in Plaintiffs either being demoted, disciplined, or terminated, such after-acquired evidence shall bar Plaintiffs on liability or damages or shall reduce such claims as provided by law.

1

## NINTH AFFIRMATIVE DEFENSE

2

(Lack of Causation)

3      As a separate and independent affirmative defense, Defendant alleges that to the extent

4 Plaintiffs have incurred any damages, which Defendant expressly denies, such alleged damages were

5 not proximately or legally caused by Defendant.

6

## TENTH AFFIRMATIVE DEFENSE

7

(Legitimate Business Reasons)

8      As a separate and independent affirmative defense, Defendant alleges that any acts alleged to

9 be performed by Defendant, if performed at all, are non-actionable and/or privileged because they

10 were taken for legitimate business reasons and not in violation of any law or statute.

11

## ELEVENTH AFFIRMATIVE DEFENSE

12

(At-Will Employment)

13      As a separate and independent affirmative defense, Defendant alleges that Plaintiffs' claims

14 fail because their employment was terminable at the will of either Plaintiffs or Defendant under

15 California Labor Code Section 2922.

16

## TWELFTH AFFIRMATIVE DEFENSE

17

(No Attorneys' Fees)

18      As a separate and independent affirmative defense, Defendant alleges that Plaintiffs can state

19 no claim for attorneys' fees against Defendant.

20

## THIRTEENTH AFFIRMATIVE DEFENSE

21

(No Claim for Damages)

22      As a separate and independent affirmative defense, Defendant alleges that Plaintiffs have not

23 sustained any damages as a consequence of the conduct alleged in their Complaint and can state no

24 claim for damages based thereon.

25

## FOURTEENTH AFFIRMATIVE DEFENSE

26

(Cal. Labor Code §§ 2854, 2856)

27 As a separate and independent affirmative defense to Plaintiffs' Complaint and each purported cause

28

---

4

of action therein, Defendant alleges that Plaintiffs' causes of action are barred under California Labor Code Sections 2854 and 2856, respectively, in that Plaintiffs failed to use ordinary care and diligence in the performance of their duties and failed to comply substantially with the reasonable directions of their employer.

### FIFTEENTH AFFIRMATIVE DEFENSE

(No Emotional Distress Damages)

As a separate and independent affirmative defense to Plaintiffs' Complaint and each purported cause of action therein, Defendant alleges that damages for emotional distress, if any, are barred in that conduct by Defendant neither contravenes public policy nor exceeded the inherent risks of employment.

### SIXTEENTH AFFIRMATIVE DEFENSE

(Failure to Support Claim for Punitive Damages)

As a separate and independent affirmative defense to Plaintiffs' Complaint and each purported cause of action therein, Defendant alleges that Plaintiffs' Complaint fails to state facts sufficient to support a claim for punitive damages against Defendant.

### SEVENTEENTH AFFIRMATIVE DEFENSE

(Punitive Damages – No Ratification)

As a separate and independent affirmative defense to Plaintiffs' Complaint and each purported cause of action therein, Defendant alleges that Plaintiffs' claims for punitive damages are barred in whole or in part because even if Defendant's alleged conduct rose to the level of oppression, fraud, or malice, which Defendant denies, such conduct was prohibited by Defendant's policies and was not committed, countenanced, ratified, or approved by an officer, director, or managing agent of Defendant.

### EIGHTEENTH AFFIRMATIVE DEFENSE

(Constitutional Limit on Punitive Damages)

As a separate and independent affirmative defense to Plaintiffs' Complaint and each purported cause of action therein, Defendant alleges that Plaintiffs' claims for punitive damages are barred by the contract clause (Article I, Section 10, clause 1), the due process clause (Fifth

Amendment; Fourteenth Amendment, Section 1), and the excessive fines clause (Eighth Amendment) of the U.S. Constitution and the corresponding provisions of the Constitution of the State of California.

### NINETEENTH AFFIRMATIVE DEFENSE

#### (Mixed Motive)

As a separate and independent affirmative defense to Plaintiffs' Complaint and each purported cause of action therein, Defendant alleges that if Plaintiffs are able to prove that both lawful and unlawful factors motivated the employment decisions complained of, though Defendant denies any unlawful motivating factors, Defendant asserts that it would have taken the same employment action(s) absent the unlawful motivating factor(s).

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Failure to Exhaust Administrative Remedies)

As a separate and independent affirmative defense, Defendant alleges that Plaintiffs have failed to make full and proper use of and failed to exhaust their administrative remedies and procedures provided in the California Labor Code section 98.7, *et seq*.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (No Substantial Limitation)

As a separate and independent affirmative defense to Plaintiffs' Complaint and each purported cause of action therein, Defendant alleges that Plaintiffs' claims are barred in whole or in part because Plaintiffs are not substantially limited in the ability to work in a class or broad range of jobs or occupations.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

#### (Privilege/Justification)

As a separate and independent affirmative defense, Defendant alleges that its conduct was a just and proper exercise of managerial discretion, undertaken for fair and honest reasons, comporting with good faith under the circumstances then existing, and was privileged and justified.

**NIKE RETAIL SERVICES, INC.'S ANSWER TO UNVERIFIED COMPLAINT**

## TWENTY-THIRD AFFIRMATIVE DEFENSE

(Comparative Fault)

As a separate and independent affirmative defense, Defendant alleges that if Plaintiffs suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the conduct, acts, omissions, activities, negligence, and/or intentional misconduct of Plaintiffs, thereby completely or partially barring Plaintiffs' recovery herein.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

(Acts/Omissions of Third Parties)

As a separate and independent affirmative defense to Plaintiffs' Complaint and each purported cause of action therein, Defendant alleges that Plaintiffs' damages, if any, were caused by the acts or omissions of third parties for whom Defendant is not legally responsible.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

(Consent)

As a separate and independent affirmative defense to Plaintiffs' Complaint and each purported cause of action therein, Defendant alleges that the causes of action alleged in Plaintiffs' Complaint are barred, in whole or in part, because Plaintiffs consented to and approved all the acts and omissions about which they now complains.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

(Workers' Compensation Exclusive Remedy)

As a separate and independent affirmative defense to Plaintiffs' Complaint and each purported cause of action therein, Defendant alleges that to the extent Plaintiffs seek damages or makes a claim on account of alleged physical and/or emotional injury arising from their employment, Plaintiffs' exclusive remedy is provided by the California Workers' Compensation Act, California Labor Code, section 3600, *et seq.*, which acts as a complete bar to Plaintiffs' civil claims.

/ / /

/ / /

/ / /

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

(Failure to Utilize Preventative/Corrective Measures; Avoidable Consequences)

As a separate and independent affirmative defense to Plaintiffs' Complaint and each purported cause of action therein, Defendant alleges that it took reasonable preventative and corrective measures, including having proper discrimination and harassment policies and complaint procedures in place; that Plaintiffs unreasonably failed to utilize the preventative and corrective measures that Defendant provided; and reasonable use by Plaintiffs of Defendant's procedures would have prevented at least some of the harm that Plaintiffs allege they suffered, which allegations Defendant denies, and Plaintiffs' alleged damages should be limited or reduced accordingly.

**ADDITIONAL AFFIRMATIVE DEFENSES**

Defendant has insufficient information upon which to form a belief as to whether it may have additional unstated affirmative defenses. Defendant reserves the right to assert additional affirmative defenses in the event discovery indicates they are appropriate.

WHEREFORE, Defendant requests relief as follows:

1. That Plaintiffs take nothing by reason of their Complaint and that judgment be entered in favor of Defendant as appropriate;

2. For costs of suit, including reasonable attorneys' fees; and

3. For such other and further relief as the Court may deem proper.

K&L GATES LLP

Dated: May 24, 2021         By: _Vanuhi Karapetian_____
                                 Paul W. Sweeney, Jr.
                                 Vanuhi Karapetian

                                 Attorneys for Defendant
                                 NIKE RETAIL SERVICES, INC.

**PROOF OF SERVICE**

Case No. 21STCV13349

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is K&L GATES LLP, 10100 Santa Monica Boulevard, Eighth Floor, Los Angeles, California 90067.

On **May 24, 2021**, I served the document(s) described as:

- **NIKE RETAIL SERVICES, INC.'S ANSWER TO UNVERIFIED COMPLAINT**

on the person or person(s) below, as follows:

| | |
|---|---|
| **THE ANFANGER LAW OFFICE** | *Attorney for Plaintiffs* |
| Nancy B. Anfanger | Brittney Shaw and Edgar Hernandez |

9440 Santa Monica Boulevard
Suite 301
Beverly Hills, California 90210
Telephone: (310) 402-8937

The documents were served by the following means:

☒ **MAIL:**  I placed for collection and processing such envelope(s) to be deposited in the mail at Los Angeles, California, with postage thereon fully prepaid to the office of the addressee(s) as indicated above.  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day, with postage fully prepaid, in the ordinary course of business herein attested to (C.C.P. § 1013(a)).  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **May 24, 2021**, at Los Angeles, California.

*Vanuhi Karapetian*
Vanuhi Karapetian

RECYCLED PAPER

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Vannie Karapetian (SBN 324274)
vannie.karapetian@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Attorneys for Defendant
NIKE RETAIL SERVICES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTNEY SHAW, an individual, and EDGAR HERNANDEZ, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE RETAIL SERVICES, INC., an Oregon corporation; WENDY MAGEE, an individual, and DOES 1-100 inclusive,<br><br>Defendants. | Case No. 2:21-CV-04322<br><br>**DECLARATION OF JOSHUA SIMKO IN SUPPORT OF NIKE RETAIL SERVICES, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446**<br><br>**[DIVERSITY JURISDICTION]**<br><br>(Los Angeles County Superior Court, Case No. 20STCV13349)<br><br>Complaint Filed: April 8, 2021<br>Trial Date: None Set<br><br>[Filed concurrently with (i) Notice of Removal, and (ii) Civil Case Cover Sheet] |

**DECLARATION OF JOSHUA SIMKO**

## DECLARATION OF JOSHUA SIMKO

I, Joshua Simko, declare under penalty of perjury as follows:

1.      I am the Vice President, Corporate Governance & Securities Counsel of NIKE, Inc. In this role, I am familiar with the corporate structure and operations of Defendant NIKE Retail Services, Inc. and I have access to corporate records and documents regarding the corporate structure and operations of Defendant NIKE Retail Services, Inc.  I make this declaration based on personal knowledge and my review of documents and records kept in the regular course of business of Defendant NIKE Retail Services, Inc.  If called as a witness, I could and would testify competently thereto.

2.      Defendant NIKE Retail Services, Inc. is and at all relevant times was, a corporation incorporated under the laws of Oregon.

3.      NIKE Retail Services, Inc. is 100% owned by NIKE USA, Inc., and NIKE USA, Inc. is 100% owned by NIKE, Inc.

4.      Defendant NIKE Retail Services, Inc.'s principal place of business and principal office is located at Beaverton, Oregon.  Its corporate headquarters in Oregon is the center of direction, control, and coordination of all of NIKE Retail Services, Inc.'s major corporate and administrative functions including human resources, finance, and accounting.  NIKE Retail Services, Inc.'s corporate officers and heads of finance, accounting, and human resources maintain their officers at NIKE Retail Services, Inc.'s headquarters in Beaverton, Oregon.

5.      From its headquarters in Beaverton, Oregon, NIKE Retail Services, Inc. makes and implements company-wide operating, financial, employee relations, development, corporate care, accounting, income tax, and policy decisions.

6.      Attached hereto as **Exhibit A** is a true and correct copy of NIKE Retail Services, Inc.'s filing with the California Secretary of State indicating that NIKE Retail Services, Inc. is an Oregon company.

**DECLARATION OF JOSHUA SIMKO**

I declare under penalty of perjury under the laws of the United States of America and the State of Oregon that the foregoing is true and correct.

Executed May 20, 2021, at Beaverton, Oregon.

_____
Joshua Simko

**DECLARATION OF JOSHUA SIMKO**

# EXHIBIT A



FILED
Secretary of State
State of California

**California Secretary of State**
Electronic Filing

# Corporation - Statement of Information

| | |
|---|---|
| Entity Name: | NIKE RETAIL SERVICES, INC. |

| | |
|---|---|
| Entity (File) Number: | C1643623 |
| File Date: | 07/16/2020 |
| Entity Type: | Corporation |
| Jurisdiction: | OREGON |
| Document ID: | GH05434 |

**Detailed Filing Information**

1. Entity Name:

    NIKE RETAIL SERVICES, INC.

2. Business Addresses:
    a. Street Address of Principal
       Office in California:

    b. Mailing Address:

       One Bowerman Drive
       Beaverton, Oregon 97005
       United States of America

    c. Street Address of Principal
       Executive Office:

       One Bowerman Drive
       Beaverton, Oregon 97005
       United States of America

3. Officers:
    a. Chief Executive Officer:

       Ann Stoffer Hebert
       One Bowerman Drive
       Beaverton, Oregon 97005
       United States of America

    b. Secretary:

       Ann Marie Miller
       One Bowerman Drive
       Beaverton, Oregon 97005
       United States of America

Document ID: GH05434

# California Secretary of State
## Electronic Filing

Officers (cont'd):

    c.  Chief Financial Officer:                   Nitesh  Sharan
One Bowerman Drive
Beaverton, Oregon 97005
United States of America

4.  Director:                              Not Applicable

Number of Vacancies on the Board of Directors:      Not Applicable

5.  Agent for Service of Process:      UNITED AGENT GROUP INC.
(C3886943)

6.  Type of Business:              RETAIL SALES OF FOOTWEAR,
APPAREL AND EQUIPMENT

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:   Jon-Michael Sanchez, Special Secretary

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Document ID: GH05434

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

BRITTNEY SHAW; EDGAR HERNANDEZ

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

NIKE RETAIL SERVICES, INC.; WENDY MAGEE

**(b) County of Residence of First Listed Plaintiff**  LOS ANGELES
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**County of Residence of First Listed Defendant**
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

THE ANFANGER LAW OFFICE; 9440 Santa Monica Blvd., Suite 301, Beverly Hills, CA 90210; Telephone (310) 402-8937; Nancy B. Anfanger (SNB225421)

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

K&L Gates LLP; 10100 Santa Monica Blvd., 8th Floor, Los Angeles, CA 90067; Telephone (310) 552-5000; Paul W. Sweeney, Jr. (paul.sweeney@klgates.com); Vanuhi Karapetian (vannie.karapetian@klgates.com)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding

☒ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multidistrict Litigation - Transfer

☐ 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No  **MONEY DEMANDED IN COMPLAINT:** $  None Stated

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. §§ 1332, 1441, and 1446.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 835 Patent - Abbreviated New Drug Application |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **TORTS** | ☐ 535 Death Penalty | ☐ 880 Defend Trade Secrets Act of 2016 (DTSA) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | **PERSONAL PROPERTY** | **Other:** | |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☐ 540 Mandamus/Other | **SOCIAL SECURITY** |
| ☐ 470 Racketeer Influ-enced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 861 HIA (1395ff) |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 862 Black Lung (923) |
| ☐ 485 Telephone Consumer Protection Act | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 490 Cable/Sat TV | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | | ☐ 864 SSID Title XVI |
| ☐ 850 Securities/Com-modities/Exchange | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 865 RSI (405 (g)) |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **FEDERAL TAX SUITS** |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 690 Other | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 440 Other Civil Rights | **LABOR** | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☒ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**  Case Number:

CV-71 (10/20)  CIVIL COVER SHEET  Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☒ Yes    ☐ No | ☒ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes    ☐ No | | ☐ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes    ☐ No | | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | **A.** Orange County | **B.** Riverside or San Bernardino County | **C.** Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| **D.1. Is there at least one answer in Column A?** | **D.2. Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes    ☐ No | ☐ Yes    ☐ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. |
| | Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN ▼ |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes    ☒ No |

CV-71 (10/20)                         CIVIL COVER SHEET                         Page 2 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**:  Has this action been previously filed **in this court**?     ☒ NO     ☐ YES

If yes, list case number(s):  _____

**IX(b). RELATED CASES**:  Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☒ NO     ☐ YES

If yes, list case number(s):  _____

**Civil cases** are related when they (check all that apply):

☐   A. Arise from the same or a closely related transaction, happening, or event;

☐   B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐   C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note:  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐   A. Arise from the same or a closely related transaction, happening, or event;

☐   B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐   C.  Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   /S/ Vanuhi Karapetian          DATE:   May 24, 2021

**Notice to Counsel/Parties:**  The submission of this Civil Cover Sheet is required by Local Rule 3-1.  This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Vannie Karapetian (SBN 324274)
vannie.karapetian@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Attorneys for Defendant
NIKE RETAIL SERVICES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTNEY SHAW, an individual, and EDGAR HERNANDEZ, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE RETAIL SERVICES, INC., an Oregon corporation; WENDY MAGEE, an individual, and DOES 1-100 inclusive,<br><br>Defendants. | Case No.   2:21-CV-04322<br><br>**NIKE RETAIL SERVICES, INC.'S NOTICE OF AND CERTIFICATION OF INTERESTED ENTITIES OR PERSONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 7.1 AND LOCAL RULE 7.1-1**<br><br>(Los Angeles County Superior Court, Case No. 20STCV13349)<br><br>Complaint Filed:  April 8, 2021<br>Trial Date:  None Set |

1

**NIKE RETAIL SERVICES, INC.'S  FEDERAL RULE OF CIVIL PROCEDURE 7.1 AND LOCAL RULE 7.1-1 CERTIFICATION**

**TO THE COURT AND ALL PARTIES APPEARING OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to Federal Rule of Civil Procedure 7.1 and Local Rule 7.1-1 of the United States District Court for the Central District, Defendant NIKE Retail Services, Inc. files this Notice and Certificate of Interested Entities or Persons in the above-captioned matter.

The undersigned counsel of record for NIKE Retail Services, Inc. certifies that the following listed parties may have a pecuniary interest in the outcome of this case. These representations are made to enable to the Court to evaluate possible disqualification or recusal.

1. Plaintiff Brittney Shaw;

2. Plaintiff Edgar Hernandez;

3. Defendant Wendy Magee;

4. Defendant NIKE Retail Services, Inc.

5. NIKE USA, Inc. NIKE USA, Inc. is a corporation organized under the laws of Oregon and it owns 100% of Defendant NIKE Retail Services, Inc. NIKE USA, Inc., is a subsidy of NIKE, Inc., which is a publicly held corporation organized under the laws of Oregon. NIKE, Inc. has no parent corporation and no publicly held corporation owns 10% or more of NIKE, Inc.

K&L GATES LLP

Dated: May 24, 2021         By: _/s/ Vanuhi Karapetian_
                                 Paul W. Sweeney, Jr.
                                 Vanuhi Karapetian

                                 Attorneys for Defendant
                                 NIKE RETAIL SERVICES, INC.

2

# PROOF OF SERVICE

Case No. 21STCV13349

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is K&L GATES LLP, 10100 Santa Monica Boulevard, Eighth Floor, Los Angeles, California 90067.

On **May 25, 2021**, I served the document(s) described as:

- **NIKE RETAIL SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

- **NIKE RETAIL SERVICES, INC.'S NOTICE TO ADVERSE PARTIES OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

on the person or person(s) below, as follows:

| | |
|---|---|
| **THE ANFANGER LAW OFFICE** | *Attorney for Plaintiffs* |
| Nancy B. Anfanger | Brittney Shaw and Edgar Hernandez |

9440 Santa Monica Boulevard
Suite 301
Beverly Hills, California 90210
Telephone: (310) 402-8937

The documents were served by the following means:

☒    **BY PERSONAL SERVICE:** I caused such envelope(s) to be hand-delivered to the offices of the addressee(s) as indicated above.  A proof of service will be executed by process server upon completion.

.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **May 25, 2021**, at Los Angeles, California.

*Vanuhi Karapetian*
Vanuhi Karapetian

RECYCLED PAPER

# EXHIBIT 3

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Nancy B. Anfanger | SBN: 225421<br>The Anfanger Law Office<br>9440 Santa Monica Blvd Suite 301  301 Beverly Hills, CA 902104610<br><br>TELEPHONE NO.: (310) 402-8937 | FAX NO. (310) 276-1046 | E-MAIL ADDRESS *(Optional)*: anfangerlaw@aol.com<br>ATTORNEY FOR *(Name):* Plaintiffs: Brittney Shaw and Edgar Hernandez | |

**LOS ANGELES COUNTY SUPERIOR COURT**

STREET ADDRESS: 111 NORTH HILL ST.

MAILING ADDRESS:

CITY AND ZIP CODE: LOS ANGELES, CA 90012

BRANCH NAME: STANLEY MOSK COURTHOUSE

| PLAINTIFF: Brittney Shaw, et al | CASE NUMBER: |
|---|---|
| DEFENDANT: Nike Retail Services, Inc., et al | 21STCV13349 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>Shaw, et al v Nike, et al |
|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet  *(served in complex cases only)*
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents):* **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum; Notice of Case Assignment-Unlimited Civil Case; First Amended General Order; Voluntary Efficient Litigation Stipulations Packet**
3. a. Party served *(specify name of party as shown on documents served):*
   **Wendy Magee, an individual**

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
4. Address where the party was served:  **24352 Nan Ct**
   **Diamond Bar, CA 91765-4387**
5. I served the party *(check proper box)*
   a. ☐ **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*   (2) at *(time):*

   b. ☑ **by substituted service.** On *(date):* **6/3/2021** at *(time):* **7:00 PM** I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*
   **(John Doe) - Spouse**

   | Age: 56 - 60 | Weight: 161-180 Lbs | Hair: Bald | Sex: Male |
   |---|---|---|---|
   | Height: 5'1 - 5'6 | Eyes: Brown | Race: Latino | |

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him of her of the general nature of the papers.

   (2) ☑ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him or her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*   from *(city):*   **or** ☑ a declaration of mailing is attached.

   (5) ☑ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

POS010-1/157260A

PETITIONER: Brittney Shaw, et al.

RESPONDENT: Nike Retail Services, Inc., et al

CASE NUMBER:
**21STCV13349**

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*                                            (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) *(Code Civ. Proc., § 415.30.)*

(4) ☐ to an address outside California with return receipt requested. *(Code Civ. Proc., § 415.40.)*

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☑ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☐ On behalf of *(specify):*

under the following Code of Civil Procedure section:

☐ 416.10 (corporation)                    ☐ 415.95 (business organization, form unknown)
☐ 416.20 (defunct corporation)           ☐ 416.60 (minor)
☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
☐ 416.40 (association or partnership)     ☐ 416.90 (authorized person)
☐ 416.50 (public entity)                  ☐ 415.46 (occupant)
                                          ☐ other:

7. **Person who served papers**

a. Name: **Charles Edward Wallace - DDS Legal Support**

b. Address: **2900 Bristol Street  Costa Mesa, CA 92626**

c. Telephone number: **(714) 662-5555**

d. **The fee** for service was: **$ 291.40**

e. I am:

(1) ☐ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☑ registered California process server:

(i) ☐ owner   ☐ employee   ☑ independent contractor.

(ii) Registration No.: **2018288101**

(iii) County: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **6/4/2021**

**DDS Legal Support**
**2900 Bristol Street**
**Costa Mesa, CA 92626**
**(714) 662-5555**
**www.ddslegal.com**

---
**Charles Edward Wallace**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

---

| | | |
|---|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Nancy B. Anfanger \| SBN: 225421<br>The Anfanger Law Office<br>9440 Santa Monica Blvd Suite 301  301 Beverly Hills, CA 902104610<br><br>TELEPHONE NO.: (310) 402-8937 \| FAX NO. (310) 276-1046 \| E-MAIL ADDRESS *(Optional):* anfangerlaw@aol.com<br>ATTORNEY FOR *(Name):* Plaintiffs: Brittney Shaw and Edgar Hernandez | | FOR COURT USE ONLY |

**LOS ANGELES COUNTY SUPERIOR COURT**

STREET ADDRESS: 111 NORTH HILL ST.

MAILING ADDRESS:

CITY AND ZIP CODE: LOS ANGELES, CA 90012

BRANCH NAME: STANLEY MOSK COURTHOUSE

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Brittney Shaw, et al | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Nike Retail Services, Inc., et al | 21STCV13349 |
| **DECLARATION OF DILIGENCE** | Ref. No. or File No.:<br>Shaw, et al v Nike, et al |

I, Charles Edward Wallace , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: Wendy Magee, an individual as follows:
Documents:

**Summons; Complaint; Alternative Dispute (ADR) package; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum; Notice of Case Assignment-Unlimited Civil Case; First Amended General Order; Voluntary Efficient Litigation Stipulations Packet;**

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|---|---|---|---|
| 5/25/2021 | 2:45 PM | Home | No answer at door. Quiet inside. No vehicles observed. - Charles Edward Wallace<br>24352 Nan Ct,  Diamond Bar, CA 917654387 |
| 5/25/2021 | 4:50 PM | Home | Returned to location and arrived on site for stakeout; can see movement inside no noise no cars in driveway. - Charles Edward Wallace<br>24352 Nan Ct,  Diamond Bar, CA 917654387 |
| 5/25/2021 | 6:45 PM | Home | Lights turned on inside can see movement upstairs. Still no cars. - Charles Edward Wallace<br>24352 Nan Ct,  Diamond Bar, CA 917654387 |
| 5/25/2021 | 8:00 PM | Home | Approached and knocked on door. Can hear tv noise from inside but did not observe any movement and inside lights are on. No one answered the door, knocked at the door for about five minutes. No response. Ended stakeout. Left location. - Charles Edward Wallace<br>24352 Nan Ct,  Diamond Bar, CA 917654387 |
| 6/3/2021 | 7:00 PM | Home | Stakeout 430pm to 7pm walked perimeter of house can see dogs inside. cameras on garage door. At 657 pm a car with plate #8R6K716 pulled into driveway and a Hispanic male exited car. I approached vehicle and asked for Wendy Magee. He was hesitant to stand and talk and refused to provide his name. He walked up towards the front door and the server followed. He stated Wendy Magee is his wife and confirmed she is a resident at the property but was not in town.  After confirming the documents are not for him personally service was announced and the documents were left at the door. - Charles Edward Wallace<br>24352 Nan Ct,  Diamond Bar, CA 917654387 |

Fee for Service: **$ 291.40**
County:  **Los Angeles**
Registration No.:  **2018288101**
**DDS Legal Support**
**2900 Bristol Street E-106**
**Costa Mesa, CA 92626**
**(714) 662-5555**

**Continued on Next Page**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on  June 4, 2021.

Signature:_____

**Charles Edward Wallace**

---

**AFFIDAVIT OF REASONABLE DILIGENCE**

Order#: 157260A

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar Number, and Address)* | FOR COURT USE ONLY |
|---|---|
| Nancy B. Anfanger \| SBN: 225421<br>The Anfanger Law Office<br>9440 Santa Monica Blvd Suite 301  301 Beverly Hills, CA 902104610<br><br>TELEPHONE NO.: (310) 402-8937 \| FAX NO. (310) 276-1046 \| E-MAIL ADDRESS *(Optional):* anfangerlaw@aol.com<br>ATTORNEY FOR *(Name):* Plaintiffs: Brittney Shaw and Edgar Hernandez | |

| **LOS ANGELES COUNTY SUPERIOR COURT** | |
|---|---|
| STREET ADDRESS: 111 NORTH HILL ST. | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: LOS ANGELES, CA 90012 | |
| BRANCH NAME: STANLEY MOSK COURTHOUSE | |

| PLAINTIFF/PETITIONER:  Brittney Shaw, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Nike Retail Services, Inc., et al | 21STCV13349 |

| **DECLARATION OF DILIGENCE** | Ref. No. or File No.:<br>Shaw, et al v Nike, et al |
|---|---|

I, Charles Edward Wallace , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: Wendy Magee, an individual as follows:
Documents:

**Summons; Complaint; Alternative Dispute (ADR) package; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum; Notice of Case Assignment-Unlimited Civil Case; First Amended General Order; Voluntary Efficient Litigation Stipulations Packet;**

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|---|---|---|---|
| | | | **Continued from Previous Page** |
| 6/3/2021 | 7:00 PM | Home | Substituted service on: Wendy Magee, an individual; 24352 Nan Ct, Diamond Bar, CA 91765-4387; by serving: (John Doe) - Spouse, Latino Male 56 - 60 161-180 Lbs Bald 5'1 - 5'6 Brown. |

Fee for Service: **$ 291.40**
    County:  **Los Angeles**
    Registration No.:  **2018288101**
    **DDS Legal Support**
    **2900 Bristol Street E-106**
    **Costa Mesa, CA 92626**
    **(714) 662-5555**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on  June 4, 2021.

Signature: _____

**Charles Edward Wallace**

**AFFIDAVIT OF REASONABLE DILIGENCE**

Order#: 157260A

| | | | | FOR COURT USE ONLY |
|---|---|---|---|---|
| *Attorney or Party without Attorney:*<br>Nancy B. Anfanger, SBN:  225421<br>The Anfanger Law Office<br>9440 Santa Monica Blvd Suite 301  301<br>Beverly Hills, CA 902104610<br><span style="font-size:smaller">E-MAIL ADDRESS (Optional):</span> anfangerlaw@aol.com<br><span style="font-size:smaller">TELEPHONE No.:</span> (310) 402-8937    <span style="font-size:smaller">FAX No. (Optional):</span> (310) 276-1046 | | | | |

*Attorney for:* Plaintiffs Brittney Shaw and Edgar Hernandez

| | *Ref No. or File No.:*<br>Shaw, et al v Nike, et al |
|---|---|

*Insert name of Court, and Judicial District and Branch Court:*

LOS ANGELES COUNTY SUPERIOR COURT - STANLEY MOSK COURTHOUSE

*Plaintiff:* **Brittney Shaw, et al**

*Defendant:* **Nike Retail Services, Inc., et al**

| **PROOF OF SERVICE<br>BY MAIL** | HEARING DATE: | TIME: | DEPT.:<br>31 | CASE NUMBER:<br>21STCV13349 |
|---|---|---|---|---|

1. I am over the age of 18 and not a party to this action.  I am employed in the county where the mailing occured.

2. I served copies of the Summons; Complaint; Alternative Dispute (ADR) package; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum; Notice of Case Assignment-Unlimited Civil Case; First Amended General Order; Voluntary Efficient Litigation Stipulations Packet;

3. By placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Costa Mesa, California, addressed as  follows:

    a. Date of Mailing:               June 4, 2021
    b. Place of Mailing:            Costa Mesa, CA
    c. Addressed as follows:      Wendy Magee, an individual
                                 24352 Nan Ct
                                 Diamond Bar, CA 91765-4387

I am readily familiar with the firm's practice for collection and processing of documents for mailing.  Under that practice, it would be  deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid at Costa Mesa, California in the ordinary course of  business.

Fee for Service: **$ 291.40**
 **DDS Legal Support
2900 Bristol Street
Costa Mesa, CA 92626
(714) 662-5555
Ref: Shaw, et al v Nike, et al**

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on  **June 4, 2021**.

Signature: _____

                    **Monica Figueroa**

**PROOF OF SERVICE BY MAIL**

Order#: **157260A/mailproof**

DDS Legal Support
2900 Bristol St., Ste E-106
Costa Mesa, CA 92626

Wendy Magee, an individual
24352 Nan Ct
Diamond Bar, CA 91765





US POSTAGE
$02.80º
FIRST-CLASS
Mailed From 92626
0920A 0061818847

# EXHIBIT 4

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Nancy B. Anfanger \| SBN:  225421<br>The Anfanger Law Office<br>9440 Santa Monica Blvd Suite 301  301 Beverly Hills, CA 902104610<br><br>TELEPHONE NO.: (310) 402-8937 \| FAX NO. (310) 276-1046 \| E-MAIL ADDRESS *(Optional):* anfangerlaw@aol.com<br>ATTORNEY FOR *(Name):*  Plaintiffs: Brittney Shaw and Edgar Hernandez | |

**LOS ANGELES COUNTY SUPERIOR COURT**

STREET ADDRESS: 111 NORTH HILL ST.

MAILING ADDRESS:

CITY AND ZIP CODE: LOS ANGELES, CA 90012

BRANCH NAME: STANLEY MOSK COURTHOUSE

| PLAINTIFF:  Brittney Shaw, et al | CASE NUMBER: |
|---|---|
| DEFENDANT:  Nike Retail Services, Inc., et al | 21STCV13349 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>Shaw, et al v Nike, et al |
|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   - a. ☑ Summons
   - b. ☑ Complaint
   - c. ☑ Alternative Dispute Resolution (ADR) package
   - d. ☐ Civil Case Cover Sheet  *(served in complex cases only)*
   - e. ☐ Cross-complaint
   - f. ☑ other *(specify documents):* **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum; Notice of Case Assignment-Unlimited Civil Case; First Amended General Order; Voluntary Efficient Litigation Stipulations Packet**

3. a.  Party served *(specify name of party as shown on documents served):*
   **Nike Retail Services, Inc., an Oregon corporation**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **Tiffany Phillips - Authorized Agent**

   | **Age: 41-45** | **Weight: 181-200 Lbs** | **Hair: Black** | **Sex: Female** |
   |---|---|---|---|
   | **Height: 5'7 - 6'0** | **Eyes:** | **Race: African American** | |

4. Address where the party was served:  **4640 Admiralty Way Fl 5**
   **Marina del Rey, CA 90292-6636**

5. I served the party *(check proper box)*
   - a. ☑ **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **5/27/2021**     (2) at *(time):* **2:16 PM**

   - b. ☐ **by substituted service.** On *(date):*  at  *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

     - (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him of her of the general nature of the papers.

     - (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

     - (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him or her of the general nature of the papers.

     - (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*  from *(city):*                              **or** ☐ a declaration of mailing is attached.

     - (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br><br>POS010-1/157260B |
|---|---|---|

PETITIONER: Brittney Shaw, et al

RESPONDENT: Nike Retail Services, Inc., et al

CASE NUMBER: **21STCV13349**

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                       (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of *(specify):* **Nike Retail Services, Inc., an Oregon corporation**

    under the following Code of Civil Procedure section:

    ☑ 416.10 (corporation)                ☐ 415.95 (business organization, form unknown)

    ☐ 416.20 (defunct corporation)         ☐ 416.60 (minor)

    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)

    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)

    ☐ 416.50 (public entity)               ☐ 415.46 (occupant)

                                    ☐ other:

7. **Person who served papers**

    a. Name: **Brian Fecher - DDS Legal Support**

    b. Address: **2900 Bristol Street  Costa Mesa, CA 92626**

    c. Telephone number: **(714) 662-5555**

    d. **The fee** for service was: **$ 103.90**

    e. I am:

      (1) ☐ not a registered California process server.

      (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

      (3) ☑ registered California process server:

         (i) ☐ owner    ☐ employee    ☑ independent contractor.

         (ii) Registration No.: **6402**

         (iii) County: **LOS ANGELES**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **5/27/2021**

**DDS Legal Support**
**2900 Bristol Street**
**Costa Mesa, CA 92626**
**(714) 662-5555**
**www.ddslegal.com**

*DDS*

_____

**Brian Fecher**

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

# EXHIBIT 5

≡ **Bloomberg**
BROWSE **Law**

🔍 *Search US Law Week News*          | Advanced Search ▾    Go    👤 Login

**US Law Week**



A person carries a Nike Inc. branded shoe box while entering a store in San Francisco.
Photographer: David Paul Morris/Bloomberg

# Nike 'Shopping While Black' Store Now Faces Worker Bias Suit

April 8, 2021, 4:03 PM                    🔊 Listen  🖨 ✉        f  in  🐦

- **COURT:** Cal. Super. Ct.

- **TRACK DOCKET:** No. 21stcv13349

- **COMPANY:** Nike Retail Services Inc. (Bloomberg Law Subscription)

The former Nike manager accused of racially profiling Black shoppers in Santa Monica also harassed and discriminated against Black employees in the store, a lawsuit filed Thursday in Los Angeles alleges.

Brittney Shaw and Edgar Hernandez, former employees of the southern California location, sued Nike and manager Wendy Magee alleging race discrimination, harassment, and retaliation, among other state-law violations.

Magee created a pervasively hostile and abusive work environment that forced many employees of color to resign, the complaint says. The majority of those employees were replaced by White women, it says.

According to Shaw and Hernandez, employees of color were passed over for promotions in favor of White employees, and Magee consistently disparaged and critiqued Black and Latino employees.

Magee was fired following an incident in which she followed a Black family out of the store and falsely accused them of theft, involving local police, the complaint says. Those shoppers sued the company and Magee. The claims against Magee were dismissed in that case, but the plaintiffs named her in an amended complaint.

**Causes of action:** Fair Employment and Housing Act; Labor Code; wrongful constructive termination; negligent supervision, California Business and Professions Code.

**Relief:** Restitution; reinstatement; back pay; punitive damages; compensatory damages; injunctive relief; attorneys' fees; costs.

**Response:** Nike didn't immediately respond to Bloomberg Law's request for comment.

**Attorneys:** Anfanger Law Office represents the employees.

The case is Shaw v. Nike Retail Servs. Inc., Cal. Super. Ct., No. 21stcv13349, 4/8/21.

To contact the reporter on this story: Maeve Allsup in San Francisco at mallsup@bloomberglaw.com

To contact the editors responsible for this story: Rob Tricchinelli at rtricchinelli@bloomberglaw.com; Peggy Aulino at maulino@bloomberglaw.com

---

**Maeve Allsup**
Legal Reporter                     ✉

## Related Articles

Nike Sued Over Alleged Bias, Illegal Detention of Black Shoppers
July 6, 2020, 10:57 AM

Nike Store Manager Gets Shopper's Race Bias Claims Dismissed
Dec. 10, 2020, 11:41 AM

## Topics

promotion of employee
resignation from employment
employment discrimination
hostile work environment
racial harassment
retaliatory discharge

# EXHIBIT 6

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Nancy B. Anfanger \| SBN: 225421<br>The Anfanger Law Office<br>9440 Santa Monica Blvd Suite 301  301 Beverly Hills, CA 902104610<br><br>TELEPHONE NO.: (310) 402-8937 \| FAX NO. (310) 276-1046 \| E-MAIL ADDRESS *(Optional):* anfangerlaw@aol.com<br>ATTORNEY FOR *(Name):* Plaintiffs: Brittney Shaw and Edgar Hernandez | |

**LOS ANGELES COUNTY SUPERIOR COURT**

STREET ADDRESS: 111 NORTH HILL ST.

MAILING ADDRESS:

CITY AND ZIP CODE: LOS ANGELES, CA 90012

BRANCH NAME: STANLEY MOSK COURTHOUSE

| PLAINTIFF: Brittney Shaw, et al | CASE NUMBER: |
|---|---|
| DEFENDANT: Nike Retail Services, Inc., et al | 21STCV13349 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>Shaw, et al v Nike, et al |
|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet  *(served in complex cases only)*
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents):* **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum; Notice of Case Assignment-Unlimited Civil Case; First Amended General Order; Voluntary Efficient Litigation Stipulations Packet**
3. a. Party served *(specify name of party as shown on documents served):*
   **Wendy Magee, an individual**

   | Age: 46-50 | Weight: 121-140 lbs | Hair: Blond | Sex: Female |
   |---|---|---|---|
   | Height: 5'1-5'6 | Eyes: - | Race: Caucasian | |

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:  **24352 Nan Ct**
   **Diamond Bar, CA 91765-4387**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.**   I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **6/10/2021**   (2) at *(time):* **7:30 AM**

   b. ☐ **by substituted service.** On *(date):*   at *(time):*   I left the documents listed in item 2 with or
   in the presence of *(name and title or relationship to person indicated in item 3b):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*   from *(city):*   **or** ☐ a declaration of mailing is attached.

   (5) ☑ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>**POS010-1/157260A2** |
|---|---|---|

PETITIONER: Brittney Shaw, et al.

RESPONDENT: Nike Retail Services, Inc., et al

CASE NUMBER: 21STCV13349

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                          (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)             ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)        ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)              ☐ 415.46 (occupant)
                                      ☐ other:

7. **Person who served papers**
  a. Name: **Charles Edward Wallace - DDS Legal Support**
  b. Address: **2900 Bristol Street  Costa Mesa, CA 92626**
  c. Telephone number: **(714) 662-5555**
  d. **The fee** for service was: **$ 178.90**
  e. I am:

    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☑ registered California process server:
        (i) ☐ owner   ☐ employee   ☑ independent contractor.
        (ii) Registration No.: **2018288101**
        (iii) County: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **6/10/2021**

**DDS Legal Support**
**2900 Bristol Street**
**Costa Mesa, CA 92626**
**(714) 662-5555**
**www.ddslegal.com**

**DDS**

_____
**Charles Edward Wallace**     ▶    *[signature]*
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Nancy B. Anfanger | SBN: 225421
The Anfanger Law Office
9440 Santa Monica Blvd Suite 301  301 Beverly Hills, CA 902104610

TELEPHONE NO.: (310) 402-8937 | FAX NO. (310) 276-1046 | E-MAIL ADDRESS (Optional): anfangerlaw@aol.com
ATTORNEY FOR (Name): Plaintiffs: Brittney Shaw and Edgar Hernandez

**LOS ANGELES COUNTY SUPERIOR COURT**

STREET ADDRESS: 111 NORTH HILL ST.

MAILING ADDRESS:

CITY AND ZIP CODE: LOS ANGELES, CA 90012

BRANCH NAME: STANLEY MOSK COURTHOUSE

PLAINTIFF/PETITIONER:  Brittney Shaw, et al

DEFENDANT/RESPONDENT:  Nike Retail Services, Inc., et al

CASE NUMBER:

21STCV13349

**DECLARATION OF DILIGENCE**

Ref. No. or File No.: Shaw, et al v Nike, et al

I, Charles Edward Wallace , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: Wendy Magee, an individual as follows:
Documents:
   **Summons; Complaint; Alternative Dispute Resolution (ADR) package; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum; Notice of Case Assignment-Unlimited Civil Case; First Amended General Order; Voluntary Efficient Litigation Stipulations Packet;**

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|---|---|---|---|
| 6/10/2021 | 6:30 AM | Home | Arrived on site for stakeout. No activity or movement. - Charles Edward Wallace<br>24352 Nan Ct,  Diamond Bar, CA 917654387 |
| 6/10/2021 | 7:25 AM | Home | Garage door opened and as I approached the house, a Gray midsize SUV pulled out of the driveway too fast to get the make/model/plate # but confirmed the driver was Wendy Magee who matched the description from a photo provided by the attorney. She refused to stop and almost hit me but I was able to announce service and I left the documents at the door. - Charles Edward Wallace<br>24352 Nan Ct,  Diamond Bar, CA 917654387 |
| 06/10/2021 | 07:30 AM | **Home** | **Personal service on: Wendy Magee, an individual; 25352 Nan Ct., Diamond Bar, CA 91765-4387: , Caucasian Female 46-50yrs 5'1-5'6 121-140lbs Blond** |

Fee for Service: **$ 178.90**
       County:  **Los Angeles**
       Registration No.:  **2018288101**
       **DDS Legal Support**
       **2900 Bristol Street E-106**
       **Costa Mesa, CA 92626**
       **(714) 662-5555**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on  June 10, 2021.

Signature: _____
        **Charles Edward Wallace**

**AFFIDAVIT OF REASONABLE DILIGENCE**        Order#: 157260A2